Michael Rubin (SBN 80618)
Connie K. Chan (SBN 284230)
Raphael N. Rajendra (SBN 255096)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
cchan@altber.com
rrajendra@altber.com

Cliff Palefsky (SBN 77683)
Keith Ehrman (SBN 106985)
MCGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 421-9292
Facsimile: (415) 403-0202
CP@mhpsf.com
keith@mhpsf.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN BERMAN, BO KANG, KHASHAYAR MIRFAKHRAEI, THANG VAN VU, DONNA VIERA-CASTILLO, GIRISH RAMESH, PATRICK HANLEY, ILANA SHTERNSHAIN and MANDY SCHWARZ,<br><br>Plaintiffs,<br><br>v.<br><br>MICROCHIP TECHNOLOGY INCORPORATED, a corporation; ATMEL CORPORATION, a corporation; and ATMEL CORPORATION U.S. SEVERANCE GUARANTEE BENEFIT PROGRAM, an employee benefit plan,<br><br>Defendants | Case No.<br><br>**ERISA COMPLAINT FOR BENEFITS, EQUITABLE RELIEF AND TO PREVENT DEFENDANTS' CONTINUED INTERFERENCE WITH PLAINTIFFS' EXERCISE OF ERISA RIGHTS** |

**INTRODUCTION**

1.      This is an ERISA action brought by nine former employees of defendants Atmel Corporation ("Atmel") and Microchip Technology, Inc. ("Microchip"), the company that acquired Atmel by merger on April 4, 2016.  Plaintiffs allege that Atmel and Microchip breached their ERISA fiduciary duties to plaintiffs, deprived plaintiffs of severance benefits guaranteed by defendants' ERISA-covered severance plan, and interfered with plaintiffs' ability to exercise ERISA-protected rights, all in furtherance of defendants' unlawful scheme and plan to avoid providing severance benefits to plaintiffs after using the lure of those promised benefits to induce plaintiffs to remain employed by Atmel and Microchip before and after the merger.

2.      Defendant Atmel, a supplier of microcontrollers, began seeking potential merger partners in the summer of 2015.  Recognizing that its employees might respond to the company's uncertain future by seeking alternative employment, Atmel created an ERISA severance plan for its employees in July 2015 to provide economic incentives for those employees to remain in their jobs while Atmel searched for and obtained a merger partner.  Atmel's "U.S. Severance Guarantee Program" (referred to herein as the "Severance Guarantee Plan" or the "Plan") provided that each plaintiff would be entitled to several extra months of salary, health insurance premium payments, and a pro-rated incentive bonus payment, as ERISA-protected severance benefits, if terminated without cause following a corporate change of control that occurred within 18 months after an "Initial Triggering Event," defined as any "definitive agreement" entered into "on or before November 1, 2015, that will result in a Change of Control of the Company."

3.      Atmel's Severance Guarantee Plan went into effect on July 9, 2015.  The Initial Triggering Event occurred on September 19, 2015, when Atmel signed its initial merger agreement with Dialog Semiconductor plc.  Between September 19, 2015 and April 4, 2016, when the merger between Atmel and Microchip became final, first Atmel and then both Atmel *and* Microchip repeatedly reassured plaintiffs that the Plan was in effect, that the Initial Triggering Event had occurred in September, and that every employee terminated without cause between the date the merger became final and March 19, 2017 (18 months after the Initial Triggering Event) would receive the severance payments provided by the Plan.

4.      As soon as the Atmel-Microchip merger became final on April 4, 2016, Microchip began massive layoffs of Atmel employees covered by the Plan.  Instead of providing the Plan's severance benefits to each of the laid-off plaintiffs, as required by the plain language of the Plan, by Atmel's consistent construction of the Plan, and by Atmel's and Microchip's uniform representations to plaintiffs, defendants knowingly, intentionally, and maliciously reneged on their contractual and fiduciary obligations by purporting to re-interpret the Plan as precluding the payment of any severance benefits to any former Atmel employees.

5.      For the sole purpose of benefitting themselves at the expense of plaintiffs, and in plain derogation of their statutory and fiduciary duties, defendants falsely and fraudulently informed plaintiffs after April 4, 2016 that the Plan had ceased to exist on November 1, 2015 (before Microchip entered into its proposed merger agreement with Atmel); that there had never been an Initial Triggering Event; that no plaintiff had any rights under the Plan because the Plan had ceased to exist; and that the only way any former Atmel employees terminated without cause by Microchip after April 4, 2016 could obtain any benefits at all would be for that employee to execute a broad release waiving any and all claims against defendants, including any claims for benefits under the Plan.

6.      At the time defendants made those statements and denied benefits to plaintiffs under the Plan, defendants knew that the plain language of the Plan entitled plaintiffs to severance benefits under the Plan, knew that Atmel as the Plan's drafter and Administrator had consistently construed the Plan between the date of drafting and April 4, 2016 as providing severance benefits to plaintiffs, knew that Microchip and Atmel had both made consistent representations that plaintiffs relied upon to their detriment that the Plan was in effect because the Initial Triggering Event had timely occurred, and knew that the Plan expressly prohibited any post-merger construction of the Plan that differed from Atmel's pre-merger construction of that Plan.

7.      Defendants also willfully and maliciously delayed resolution of plaintiffs' efforts to pursue claims for benefits under ERISA, even though defendants have known since April 4, 2016 that they and the Plan would deny any claim for benefits under the Plan on the ground that the Plan had ceased to exist on November 1, 2015.

8.      At all times relevant hereto, defendants and each of them acted as plaintiffs' fiduciaries and/or in the exercise of discretionary authority over the operation or administration of the Plan, and in violation of their fiduciary and contractual duties to plaintiffs.

9.      By this lawsuit, plaintiffs seek: a) Plan benefits; b) a declaration that the Plan is valid and enforceable and remains in existence; c) a declaration that all Plan participants, including plaintiffs, are entitled to the full amount of benefits provided by the Plan if those persons were terminated without cause at any time between April 4, 2016 and March 19, 2017; d) an injunction prohibiting defendants from continuing to deny Plan benefits to eligible employees; e) an injunction prohibiting defendants from continuing to make false and fraudulent statements about the Plan's existence or about any employee's current or future right to benefits under the Plan; f) an injunction prohibiting defendants from continuing to delay the processing of any Plan member's claim for ERISA benefits; g) an injunction requiring defendants to pay the full amounts and benefits promised under the Plan to all employees who were terminated without cause between the Merger close date and March 19, 2017; and h) equitable make-whole relief to all employees who received no severance benefits upon their termination by Microchip or Atmel than the Plan guaranteed.

## JURISDICTION AND VENUE

10.      This action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001 *et seq.* ("ERISA"), seeks benefits and equitable relief and seeks to prevent defendants' continued interference with plaintiffs' exercise of ERISA rights under Sections 502(a)(1)(B) and (a)(3) and 510 of ERISA, 29 U.S.C. §§1132(a)(1)(B) and (a)(3) and 1140. This Court has original federal question jurisdiction pursuant to 28 U.S.C. §1331 and ERISA.

11.      The Northern District of California has personal jurisdiction over all defendants, because defendants Atmel and Microchip did business and are continuing to do business in this district, because defendant Plan was created in this district, and because many of the acts complained of occurred in this district and gave rise to the claims alleged.

12.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. §1391(b) and (c) because defendants may be found in this district and because a substantial number of the events alleged occurred in this district.

**PARTIES**

13.     Plaintiffs Robin Berman, Bo Kang, Khashayar Mirfakhraei, Thang Van Vu, Donna Viera-Castillo, Girish Ramesh, Patrick Hanley, Ilana Shternshain and Mandy Schwarz (collectively referred to as "plaintiffs") are former employee of defendants Atmel and Microchip.  Plaintiffs are participants in defendant Atmel Corporation's U.S. Severance Guarantee Benefit Program, as defined under Section 2(7) of ERISA, 29 U.S.C. §1002(7).  Defendants Atmel and Microchip terminated plaintiffs without cause on or after April 6, 2016 and falsely informed them that they were not entitled to any benefits under the Plan upon such termination.

14.     Defendant Atmel Corporation U.S. Severance Guarantee Benefit Program is an employee benefit plan within the meaning of Section 2(3) of ERISA, 29 U.S.C. §1002(3).

15.     At all relevant times, defendant Atmel Corporation was a corporation incorporated in the State of Delaware, with its principal place of business in San Jose, California.

16.     At all relevant times, defendant Microchip Technology Incorporated was a corporation incorporated in the State of Delaware, with its principal place of business in the State of Arizona.  On information and belief, Microchip is the Plan Administrator, or controls the Plan Administrator, for the Severance Guarantee Plan; has the authority to resolve any and all benefit claims under the Severance Guarantee Plan; and has responsibility to pay benefits due under the Severance Guarantee Plan.

**GENERAL FACTS AND ALLEGATIONS**

***The Severance Guarantee Plan***

17.     Until April 2016, when Atmel became a wholly owned subsidiary of Microchip, Atmel was a publicly traded corporation.  Atmel is a supplier of general purpose microcontrollers, which are self-contained computers on a single chip used in a variety of industrial and consumer products, including devices that connect to, and communicate through, the internet.

18.     In July 2015, in response to "significant market speculation regarding possible transactions involving the company" and "[t]o support [its] employees and to keep everyone focused on our continued success," Atmel announced the creation of a "U.S. Severance Guarantee Program," which applied to all of its approximately 1,800 employees based in the United States.  Atmel

informed its U.S. employees that it was seeking a merger partner and that it was rolling out the Severance Guarantee Plan to encourage all employees to continue working for Atmel and any successor entity despite the uncertainty surrounding Atmel's corporate future.  Between July 2015 and at least April 4, 2016 when the merger between Atmel and Microchip became final, Atmel was the Plan Administrator of the Severance Guarantee Plan.

19.     On or about July 9, 2015, Atmel delivered personalized letters to each of its U.S.-based employees, including plaintiffs, describing the benefits to which those employees would be entitled under the Severance Guarantee Plan if their employment were terminated without cause within 18 months after Atmel agreed to merge into, or be acquired by, another company (the "July 9 Severance Guarantee Letter").  Attached to each July 9 Severance Guarantee Letter was an addendum ("July Addendum") that set forth additional terms and details of the Severance Guarantee Plan.  All U.S.-based Atmel employees, including plaintiffs, were sent the identical July Addendum. The July 9 Severance Guarantee Letters that Atmel distributed to all of its U.S.-based employees were identical, except for the specific benefit level described for each class of employee.

20.     The July 9 Severance Guarantee Letter and the July Addendum (together, the "Plan Documents") identified three benefits guaranteed by the U.S. Severance Guarantee Program: a) a cash payment of between 25% and 50% of the employee's annual base salary (depending on whether the employee was a director, a professional exempt employee, or a non-exempt employee); b) paid health insurance premiums for between three and six months (again depending on the employee's job category); and c) for director-level and professional exempt employees, a prorated portion of the employee's annual incentive bonus.

21.     Atmel provided the Plan Documents to all of its U.S.-based employees, including plaintiffs, on or about July 9, 2015.  Atmel subsequently provided the Plan Documents to all U.S.-based employees who were hired after July 9, 2015 but before April 4, 2016 (the date Atmel's merger with Microchip became final).  All of Atmel's U.S.-based employees, including plaintiffs, were covered by the Severance Guarantee Plan at the time of Atmel's April 4, 2016 merger with Microchip.

22.     The Plan Documents state that the Plan will "remain in effect for 18 (eighteen)

months following [an] Initial Triggering Event," which it defined as "a definitive agreement (a 'Definitive Agreement'), on or before November 1, 2015, that will result in a Change of Control of the Company." The Plan Documents further state that during that 18-month time period, the Severance Guarantee Plan would be "available to eligible employees," that all "U.S.-based employees of Atmel Corporation as of the date a Change of Control is consummated" would be eligible for the Plan, and that each eligible employee would become entitled to the Plan's benefits if terminated without cause within 18 months of the date Atmel had entered into a Definitive Agreement.

23. The Plan's express language gave Atmel sole and exclusive authority to interpret the Plan prior to any merger, and made Atmel's pre-merger construction of the Plan's language conclusive and binding. In pertinent part, the Plan stated, "The [U.S. Severance Guarantee Benefit] Program will be administered and interpreted by the Company [Atmel]. Any decision made or action taken by the Company prior to a Change in Control with respect to the Program, and any interpretation by the Company prior to a Change in Control of any term or condition of the Program, or any related document, will be conclusive and binding on all persons and will be given the maximum possible deference allowed by law."

24. Atmel recognized when it created the Plan that it might enter into a Definitive Agreement with Company A (an "Initial Triggering Event"), but later decide to accept a more attractive merger or acquisition proposal made before the closing date by Company B—a common occurrence in corporate mergers. Atmel drafted the Plan with the intent and for the purpose of reassuring its employees that they would remain entitled to the benefits guaranteed by the Severance Guarantee Plan if they were terminated without cause within 18 months after an Initial Triggering Event, even if Atmel eventually merged with a different company than the company with which Atmel initially planned to merge.

25. The Plan Documents do not state, imply, or in any way require the Initial Triggering Event and the Change of Control to involve the same acquiring company. Nor do the Plan Documents require that the eventual merger agreement have identical terms to the agreement constituting the Initial Triggering Event. To the contrary, the plain language of the Plan and the

consistent expressed intent of defendants throughout the relevant time period, was that the Definitive Agreement giving rise to the Initial Triggering Event did not have to involve the same company with which a Change of Control eventually occurred, and that the terms of the ultimate merger agreement need not be identical to the agreement constituting the Initial Triggering Event.  The purpose of the Plan was to create financial incentives to encourage Atmel's employees to continue working for Atmel employees between the date Atmel reached an initial agreement to merge, as long as it was before November 1, 2015, and the date any change of control merger became final, regardless of which merger partner Atmel eventually selected or what the exact merger terms were.  As long as the Initial Triggering Event occurred before November 1, 2015, the Plan's severance protection covered all Atmel employees who continued working for Atmel through the date of any subsequent change of control.

### *Atmel's Merger & Acquisition Activity, and Microchip's Assurances to Atmel's Employees*

26.     The Plan Documents state that for a Definitive Agreement to constitute the "Initial Triggering Event" that would extend the Plan for 18 months, it must be entered into before November 1, 2015.  If no Definitive Agreement is entered into before November 1, 2015, the Plan would expire by its terms and no Atmel employees would be entitled to any Plan benefits.

27.     On September 19, 2015, Atmel executed a "Definitive Agreement" within the meaning of the Plan with Dialog Semiconductor plc ("Dialog"), under which Dialog agreed to acquire Atmel for $4.6 billion in cash and stock.  Atmel and Dialog entered into a formal "Agreement and Plan of Merger" ("Merger Agreement") on that date and publicly announced that Merger Agreement in press releases.  In September 2015, Atmel and Dialog identified their Merger Agreement in a Form 8-K filing and a Form 425 filing with the Securities and Exchange Commission ("SEC").

28.     The September 19, 2015 Atmel-Dialog Merger Agreement constituted a "definitive agreement that will result in a change of control of Atmel" within the meaning of the Severance Guarantee Plan.  Because this "Definitive Agreement" was executed before November 1, 2015, it constituted an "Initial Triggering Event" that automatically extended the Severance Guarantee Plan for 18 months from the execution date of the Definitive Agreement.  Therefore, if Atmel

experienced a subsequent Change of Control and if Atmel employees were terminated without cause before March 19, 2017, those terminated employees would become entitled to the Plan's benefits pursuant to the express language of the Severance Guarantee Plan.

29.     Before Atmel executed its merger agreement with Dialog, it had also been engaged in merger discussions with defendant Microchip.  Microchip continued to express interest in merging with, or acquiring, Atmel; and before the scheduled January 2016 closing date of the proposed Atmel/Dialog merger, Microchip made an offer to acquire Atmel that Atmel's Board of Directors concluded was better than Dialog's offer.  In mid-January 2016, Atmel gave Dialog the opportunity to respond to Microchip's offer by improving the terms of its own offer to acquire Atmel.

30.     Atmel's employees, including plaintiffs, became aware in or about mid-January 2016 that Microchip was attempting to acquire Atmel and that Microchip might replace Dialog as Atmel's merger partner.  Atmel's management was aware of the uncertainty this created, even though Atmel, as the creator and Plan Administrator of the Severance Guarantee Plan, knew and understood that, because the Initial Triggering Event had already occurred (in September 2015), Atmel's employees would be entitled to the benefits guaranteed by the Severance Guarantee Plan if a Change of Control occurred and if they were terminated without cause before March 19, 2017, regardless of which entity eventually acquired Atmel.

31.     To alleviate employee concerns and to further the purposes underlying Atmel's creation of the Plan, Atmel management acting as Plan fiduciaries, repeatedly assured its employees orally and in writing in January 2016 and thereafter that, even if Microchip replaced Dialog as the acquiring company, any employee terminated without cause after that acquisition and prior to March 19, 2017 would still be entitled to receive the severance benefits provided by the Severance Guarantee Plan, just as if Dialog were the acquiring company, because an Initial Triggering Event had occurred prior to November 1, 2015.

32.     On or about January 13, 2016, Atmel's Chief Executive Officer held a meeting with Atmel employees who were employed at the Director level and above.   After Atmel's CEO explained that Microchip had made a better offer than Dialog's and that Atmel planned to give Dialog four days in which to make a counter-offer, Atmel's CEO, acting a Plan fiduciary, reiterated

to those employees that all severance benefits provided by the Plan would remain available pursuant to the Plan, regardless of whether the ultimate purchaser was Microchip or Dialog.

33.     On or about January 14, 2016, Atmel's Senior Vice President of Global Human Resources, acting as a Plan fiduciary, sent a letter to numerous Atmel employees, noting widespread speculation among employees about the potential acquisition of Atmel, confirming that the Severance Guarantee Plan remained in effect, and emphasizing that the employees' eligibility for severance benefits under that Plan would not be affected by the fact that Microchip might be replacing Dialog as the acquiring company.  Atmel's January 14, 2016 letter expressly stated that the "U.S. Severance Guarantee Program continues to remain in place" and would entitle employees to severance benefits "in the event that your employment is involuntarily terminated without Cause in connection with a Change of Control of the company, including an acquisition by Dialog or Microchip."

34.     Between January and April 2016, many other members of Atmel management similarly encouraged Atmel's employees, including plaintiffs, to remain employed at Atmel and not look for jobs elsewhere, by assuring those employees that they were fully covered by the severance benefit guarantees provided by the Plan, regardless of whether Microchip was replacing Dialog as Atmel's merger partner.

35.     Dialog did not make a new offer to acquire Atmel during the January 14-18, 2016 window.  Because Microchip's offer was determined by Atmel's Board of Directors to be "superior" to Dialog's offer, Atmel was entitled under the terms of its Merger Agreement with Dialog to withdraw from that merger and to accept Microchip's acquisition offer instead.  Atmel thereupon withdrew from its agreement with Dialog and entered into a merger agreement with Microchip on or about January 19, 2016 ("the Microchip Merger Agreement").  Atmel's merger with Microchip ("the Merger") was originally scheduled to close in the spring of 2016 and did in fact close on April 4, 2016.

36.     During the winter of 2015-16 and the spring of 2016, before the Merger between Atmel and Microchip closed, Atmel provided Microchip with all material documents relating to the Severance Guarantee Plan in effect with its employees, including the Plan Documents and the

September 2015 Merger Agreement between Dialog and Atmel.  Atmel also provided Microchip with summaries and estimates of how much in severance pay and benefits would be owed to Atmel employees under the Severance Guarantee Plan if Microchip acquired Atmel and then terminated Atmel's covered employees without cause before March 19, 2017.  Atmel, as the Plan's Administrator and as the drafter the Plan, understood and believed throughout this period and thereafter that the Initial Triggering Event under the Severance Guarantee Plan had occurred in September 2015; that the Plan was therefore in effect until March 2017 and would remain in effect with Microchip as the acquiring company; and that if Microchip acquired Atmel and terminated Atmel employees without cause prior to March 2017, Microchip would be obligated to pay the benefits under the Plan to those terminated employees.

37.     Between mid-January and April 4, 2016, Atmel, acting as a Plan fiduciary, interpreted the Plan and repeatedly communicated to Microchip its interpretation, understanding and belief, as the drafter and Plan Administrator of the Severance Guarantee Plan, that the Plan was in effect until mid-March 2017 and that Microchip would be obligated to pay the severance benefits provided by that Plan to all Atmel employees, including plaintiffs herein, who were terminated without cause before March 19, 2017.  Microchip knew the terms of the Severance Guarantee Plan at the time the Merger closed; knew that an Initial Triggering Event had occurred in September 2015; knew that Atmel believed and intended (as the creator of the Plan and as the Plan Administrator) that the Plan would and did remain in effect notwithstanding that Microchip had replaced Dialog as Atmel's acquiring company; and knew that Microchip would be obligated to pay all benefits guaranteed by the Plan if Microchip subsequently terminated plaintiffs without cause before March 19, 2017.  Microchip also knew that Atmel management, acting as a Plan fiduciary, was communicating these beliefs and understandings to Atmel employees, and that Atmel was assuring its employees, including plaintiffs, that they were entitled to receive, and would receive, the severance benefits guaranteed by the Plan if they were terminated without cause before March 19, 2017.

38.     Between mid-January and early April 2016, Microchip repeatedly, affirmatively, and deliberately caused Atmel management and Atmel employees to believe that Microchip, as the post-merger Plan Administrator, recognized the continued existence of the Severance Guarantee Plan,

intended to honor the Severance Guarantee Plan, and would pay all severance benefits provided by the Plan to all Atmel employees terminated without cause before mid-March 2017.

39.     On or about February 3, 2016, Atmel management distributed to its employees a Frequently Asked Questions ("FAQ") memorandum regarding the Microchip transaction.  This memorandum, which was made available online for all Atmel employees, was entitled "Microchip Transaction: Effect on Compensation and Benefits for U.S. Employees."  The FAQ began with the question, "What happens to my employment and compensatory arrangements with Atmel after the closing?"  The FAQ answers that question by stating: "Microchip has agreed to honor each of your employment and compensatory contracts (including … severance … agreements) with Atmel, or its subsidiaries, that are in effect immediately prior to the closing of the transaction."

40.     Microchip and its senior management, acting as a Plan fiduciary and/or because Microchip would function as a fiduciary that would exercise discretionary control over the operation or administration of the Plan once the merger closed, specifically reviewed and approved this FAQ before Atmel distributed it to Atmel's employees on or about February 3, 2016.  Microchip knew and understood that Atmel employees would read this FAQ and would understand and believe that Microchip was aware of the Severance Guarantee Plan; that Microchip understood that the Severance Guarantee Plan continued to exist; and that Microchip had agreed to pay the severance benefits set forth in the Plan to those Atmel employees who were terminated following Microchip's acquisition of Atmel, in accordance with the Plan's plain language.

41.     The Proxy Statement that Microchip and Atmel filed with the SEC in February 2016 referred to and incorporated the Microchip Merger Agreement between Microchip and Atmel.  That Proxy Statement stated: "Microchip has agreed, as of the Effective Time, to honor and perform all employment compensatory contracts between Atmel . . . and any Atmel employees . . . including all . . . . employment compensation, severance . . . change in control and termination contracts disclosed to Microchip . . ."  Microchip assisted with drafting that Proxy Statement before its filing with the SEC and independently reviewed and approved the Proxy Statement's contents.  Microchip knew and understood that the Proxy Statement would reinforce Atmel employees' understanding and belief that Microchip would honor the Severance Guarantee Plan and would pay the severance benefits set

forth in the Plan to those Atmel employees who were terminated following Microchip's acquisition of Atmel in accordance with the terms of the Plan.

42.     On February 29, 2016, three senior members of Microchip's finance team visited Atmel's corporate headquarters in San Jose, California to discuss the upcoming acquisition/merger between Microchip and Atmel: Microchip's Chief Financial Officer (Eric Bjornholt), its Director of Finance (Phil Kagel), and its Vice President of European Finance (Nawaz Sharif).  On the morning of February 29, 2016, these three Microchip executives met with the senior members of Atmel's Finance team (Director-level and above), comprising approximately 12 to 15 Atmel employees. During this meeting, which included a question-and-answer session regarding the upcoming Atmel-Microchip merger, one of the Atmel employees asked the Microchip executives for confirmation that Microchip would honor the Plan after the merger closed.  In response, Microchip's CFO (Mr. Bjornholt), acting as a Plan fiduciary and/or because Microchip would function as a fiduciary that would exercise discretionary control over the operation or administration of the Plan, assured the Atmel employees that, if Microchip acquired Atmel and then terminated Atmel employees, Microchip would honor the Plan.

43.     Later that same morning, Messrs. Bjornholt, Sharif, and Kagel held a second meeting with a larger group of Atmel finance employees at Atmel's San Jose headquarters.  This meeting was attended by all (or almost all) of Atmel's San Jose finance team.  Approximately 50 to 60 Atmel employees attended that meeting.  During that second meeting, which again focused on the upcoming merger between Atmel and Microchip, Mr. Bjornholt again, acting as a Plan fiduciary and/or because Microchip would function as a fiduciary that would exercise discretionary control over the operation or administration of the Plan, reiterated to the Atmel employees that Microchip would honor the Plan if Microchip later terminated any Atmel employees.  Microchip's CFO made these statements and representations with the knowledge and intent that Atmel employees would rely upon those statements and representations and would conduct themselves with the understanding and belief that Microchip would honor the Plan and would provide the severance benefits guaranteed by the Plan to any former Atmel employee terminated without cause prior to March 19, 2017.

///

44. Between mid-January and early April 2016, Atmel management, acting as a Plan fiduciary, repeatedly, consistently, and expressly communicated to its employees that the Severance Guarantee Plan was in effect notwithstanding that Microchip was replacing Dialog as Atmel's merger partner, and that any Atmel employees terminated without cause following the acquisition by Microchip would receive the severance benefits provided by the Severance Guarantee Plan.

45. In accordance with the terms of the Plan, Atmel had thereby "made a decision or taken action" with respect to the Plan and had made an "interpretation . . . of a term or condition" of the Plan with respect to whether Atmel employees would remain eligible for Plan benefits if Microchip became the acquiring company.  Atmel's interpretations and decisions regarding the Plan, which it communicated to plaintiffs as Plan beneficiaries prior to the merger closing, were "conclusive and binding on all persons" under the terms of the Plan, and could not be contravened, rejected, or modified by Microchip after the merger.

46. Atmel management also communicated to Atmel employees on many occasions between January and April 2016 that: a) Microchip was aware of the Severance Guarantee Plan: b) Microchip was aware of its obligation to pay severance benefits under the Severance Guarantee Plan if Microchip acquired Atmel and then terminated Atmel employees without cause during the covered period; and c) Microchip had agreed to honor the severance obligations under the Plan.  Microchip knew at the time of the closing of the merger and thereafter that Atmel had repeatedly told its employees that the Severance Guarantee Plan was in effect, that those employees would be paid the severance benefits under the Plan if they were terminated following the merger, and that Microchip had agreed to honor the Plan.

47. At no time prior to the closing of the Microchip-Atmel merger on April 4, 2016 did Microchip suggest or indicate to Atmel or to any plaintiff that Microchip had any understanding or interpretation of the Severance Guarantee Plan that was different than the interpretation that Atmel had communicated to its employees.  At no time prior to the closing of the Microchip-Atmel merger on April 4, 2016 did Microchip suggest or indicate to Atmel or to any plaintiff that the Severance Guarantee Plan had "expired" or was otherwise not in effect.  Nor did Microchip ever suggest or indicate to Atmel or to any plaintiff that Atmel employees would have no right to severance benefits

1   under the Severance Guarantee Plan if Microchip terminated their employment without cause

2   following the merger.  At no time prior to the closing of the Microchip-Atmel merger on April 4,

3   2016 did Microchip suggest or indicate to Atmel or to any plaintiff that Microchip intended to

4   terminate Atmel employees following the merger without providing the severance benefits

5   guaranteed by the Plan or that it intended to assert that the Plan had "expired" or that Microchip had

6   no obligation to pay terminated Atmel employees any of the severance benefits set forth in the

7   Severance Guarantee Plan.  Microchip intended its pre-merger statements and actions to cause Atmel

8   employees reasonably to understand and believe that Microchip intended to pay the severance

9   benefits set forth in the Plan upon terminating any such employee without cause before March 19,

10  2017.

11        48.      Until April 4, 2016, plaintiffs did not know, and had no reason to know, that

12  Microchip did not intend to, and would not, honor its obligations under the Severance Guarantee

13  Plan to pay the severance benefits guaranteed by the Plan to employees it terminated without cause.

14        ***Microchip's Post-Merger Conduct and Denial of Benefits under the Plan***

15        49.      Atmel became a wholly owned subsidiary of Microchip upon the April 4, 2016

16  effective date of the companies' merger.  That merger constituted a "Change of Control" within the

17  meaning of the Plan, entitling any former Atmel employee terminated without cause by Microchip

18  after the merger (but before March 19, 2017) to the severance benefits provided by the Severance

19  Guarantee Plan.  During the week immediately following the April 4, 2016 merger closing,

20  Microchip terminated dozens of Atmel employees without cause, including plaintiffs Berman, Vu,

21  Kang, Viera-Castillo and Mirfakhraei.  Each of those former Atmel employees thereby became

22  entitled to the full amount of severance benefits provided by the Plan.

23        50.      Even though Microchip had represented to Atmel and its employees for months that it

24  would honor the Severance Guarantee Plan, and even though Microchip deliberately caused Atmel

25  and its employees to rely to their detriment on Atmel's and Microchip's repeated representations that

26  Microchip would pay terminated employees the severance benefits provided by the Plan if they were

27  terminated without cause prior to March 19, 2017, Microchip's actual plan and intent was to falsely

28  assert that the Plan had "expired" on November 1, 2015 and to refuse to pay terminated employees

the severance benefits due to them under the Plan.  Notwithstanding Microchip's repeated representations and assurances to Atmel and its employees, and despite Microchip's knowledge and understanding that it was obligated to pay terminated employees the severance benefits set forth in the Plan, Microchip did not make these severance payments.

51.     Following the April 4, 2016 merger closing date, Microchip acted as a Plan fiduciary and/or functioned as a fiduciary that would exercise discretionary control over the operation or administration of the Plan.  In violation of its fiduciary duties under ERISA, Microchip intimidated and coerced Atmel employees after the April 4, 2016 merger, through false and misleading representations and economic pressure, into waiving statutory rights and benefits and accepting significant "discounts" on the severance benefits those employees were legally owed and guaranteed under the Plan, in order to save Microchip money.

52.     During the week following the April 4, 2016 merger closing, Microchip terminated numerous Atmel employees without cause ("the Initial Terminated Employees"), including plaintiffs Berman, Vu, Kang, Viera-Castillo and Mirfakhraei.   On or about the time Microchip terminated these employees, Microchip announced for the first time its position that the Severance Guarantee Plan had "expired" on November 1, 2015 and therefore it had no obligation to pay, and would not pay, the severance benefits provided by the Plan to any Initial Terminated Employees.  Microchip further announced that, based on its position that the Plan had "expired" on November 1, 2015 (because an Initial Triggering Event had not occurred within the meaning of the Plan), no former Atmel employees would be entitled to any severance benefits under the Plan; Microchip was not obligated to pay any severance benefits to any former Atmel employees under the Plan; and that Microchip would not pay severance benefits to any former Atmel employees under the Plan.

53.     On or about April 6, 2016, Microchip sent letters to the Initial Terminated Employees in which it offered to pay them between four to six weeks of salary each as severance (or alternatively to pay them no cash severance but instead to give them certain Restricted Stock Units) if they would sign a release of all claims against Microchip and Atmel and their affiliates, including a release of all claims based on the enforceability of the severance benefit provisions of the Plan ("the April 6 Offer and Release").  Each Initial Terminated Employee was entitled to a substantially

greater amount of benefits under the Plan than the four to six weeks of salary (or Restricted Stock Units) offered by Microchip, yet Microchip knowingly and intentionally represented falsely to the Initial Terminated Employees that they had no right to severance benefits under the Plan and that the Plan had ceased to exist.  Microchip also knowingly and intentionally failed to inform any of the Initial Terminated Employees that: the Plan was still in existence and in effect; that the Initial Terminated Employees had rights under ERISA because they were beneficiaries of the Plan (including that they had a statutory right to file a claim for ERISA benefits under the Plan and a statutory right to appeal any denial of a claim for benefits under the Plan); and that pursuant to the Plan and the statutory protections provided by ERISA, the Initial Terminated Employees were entitled to substantially and materially greater benefits than Microchip was offering them under its April 6 Offer and Release.  By these deliberate and knowing acts of omission and commission, Microchip breached its fiduciary duties to plaintiffs under ERISA.

54.     Microchip's offer to pay between four to six *weeks* of salary (or certain Restricted Stock Units) as severance to the Initial Terminated Employees was an offer to pay only a small fraction of the amount the Initial Terminated Employees were entitled to receive under the Severance Guarantee Plan, which provided between four to six *months* of salary as severance (depending on job level), plus a pro-rata portion of the employee's annual incentive bonus, plus several months of paid COBRA premiums.

55.     Between approximately April 11, 2016 and April 13, 2016, Microchip sent the Initial Terminated Employees (including plaintiffs Berman, Vu, Kang, Viera-Castillo and Mirfakhraei) a second letter, increasing its offer to pay them severance benefits in the amount of 50% of the cash salary benefit that would be due under the Plan, 50% of the pro-rated bonus payments that would be due under the Plan, and 50% of the health insurance premium payments that would be due under the Severance Guarantee Plan (the "April 50% Offer and Release").  The April 50% Offer and Release required the Initial Terminated Employees to sign a release of all claims against Microchip and Atmel and their affiliates as a condition of accepting this offer, including all claims based on the enforceability of the severance benefit provisions of the Plan and all claims for the full amount of benefits due under the Plan.  Microchip knowingly and intentionally failed to inform any of the

Initial Terminated Employees in the April 50% Offer and Release or at any other time that:  the Plan was still in existence and in effect; that the Initial Terminated Employees had rights under ERISA because they were beneficiaries of the Plan (including that they had a statutory right to file a claim for ERISA benefits under the Plan and a statutory right to appeal any denial of a claim for benefits under the Plan); and that pursuant to the Plan and the statutory protections provided by ERISA, the Initial Terminated Employees were entitled to substantially and materially greater benefits than Microchip was offering them under its April 6 Offer and Release.  By these deliberate and knowing acts of omission and commission, Microchip breached its fiduciary duties to plaintiffs under ERISA.

56.     Microchip knowingly and intentionally misled and misrepresented to the Initial Terminated Employees in its April 6 Offer and Release and in its April 50% Offer and Release that the only severance benefits available to those Initial Terminated Employees were the benefits Microchip offered in its April 6 Offer and Release and its April 50% Offer and Release, and that the Initial Terminated Employees had no rights to the additional benefits provided by the Plan because the Plan, according to Microchip's knowingly false representations, had ceased to exist.  Microchip made these false, misleading, and fraudulent statements despite knowing that they were false, and despite knowing that the Initial Terminated Employees were entitled to the severance benefits provided by the Plan.  Microchip coerced, intimidated, and threatened the Initial Terminated employees to accept its April 6 Offer and Release and the April 50% Offer and Release by falsely informing them that if they did not sign Microchip's April 6 Offer and Release or the April 50% Offer and Release, they would receive no severance benefits.  Microchip made these statements in a deliberate effort to mislead, intimidate and coerce the Initial Terminated Employees into foregoing their severance rights and into accepting a "discount" on the severance actually due to the Initial Terminated Employees, as part of a calculated plan by Microchip to save itself money by wrongfully refusing to pay the full severance benefits due under the Severance Guarantee Plan.  By these deliberate and knowing acts of omission and commission, Microchip violated its fiduciary duties to plaintiffs under ERISA.

57.     As a result of Microchip's false and threatening statements and bad faith conduct, many Initial Terminated Employees were coerced into signing the April 50% Offer and Release.

58.     Most Atmel employees, including plaintiffs Ramesh, Hanley, Shternshain and Schwarz, were not terminated in the first few days after the April 4, 2016 Merger, but continued to be employed by Microchip until later in 2016 or 2017 ("Continuing Employees").  Each of those Continuing Employees who was terminated without cause before March 19, 2017 is entitled to the full amount of severance benefits provided by the Severance Guarantee Plan.  Between April 6, 2016 and March 19, 2017, Microchip terminated hundreds of Continuing Employees without cause.  Yet Microchip, despite acting as a Plan fiduciary and/or functioning as a fiduciary that would exercise discretionary control over the operation or administration of the Plan, failed and refused to pay any such Continuing Employee the benefits owed to those employees under the Plan.

59.     Between approximately April 11, 2016 and April 13, 2016, Microchip distributed to each Continuing Employee, including plaintiffs Ramesh, Hanley, Shternshain and Schwarz, a "new" severance agreement ("the Continuing Employee Diminished Benefits Offer" or "CEDBO").  The terms of Microchip's CEDBO were similar in most material respects to the terms of the April 50% Offer and Release that Microchip had distributed to the Initial Terminated Employees.  Under the terms of the CEDBO, any Continuing Employee who was terminated without cause by Microchip before March 19, 2017 would receive only 50% of the cash salary benefit that would otherwise be due under the Plan, 50% of the pro-rated bonus payments that would otherwise be due under the Plan, and 50% of the health insurance premium payments that would otherwise be due under the Severance Guarantee Plan.  Microchip required each Continuing Employee, as a condition of becoming eligible for any of the benefits offered by Microchip in the CEBDO, to agree to: a) sign the CEDBO and b) upon his or her termination, to sign a modified version of the April 50% Offer and Release ("the Continuing Employee 50% Offer and Release"). The CEDBO thus required Continuing Employees to release all claims against Microchip and its affiliates, including all claims based on the enforceability of the severance benefit provisions of the Plan and all claims for the full amount of benefits due under the Plan.

60.     Microchip knowingly and intentionally misled and misrepresented to the Continuing Employees in the CEDBO and in the Continuing Employee 50% Offer and Release that the only severance benefits available to those Continuing Employees were the benefits Microchip offered in

the CEDBO and in the Continuing Employee 50% Offer and Release, and that the Continuing Employees had no rights to the additional benefits provided by the Plan because the Plan had ceased to exist.  Microchip made these false, misleading, and fraudulent statements despite knowing that they were false and despite knowing that the Continuing Employees were entitled to the severance benefits provided by the Plan if they were terminated without cause before March 19, 2017. Microchip coerced, intimidated, and threatened the Continuing Employees to accept its CEDBO and its Continuing Employee 50% Offer and Release by falsely informing them that if they did not sign Microchip's CEDBO and Continuing Employee 50% Offer and Release, they would receive no severance benefits.  Microchip made these statements in a deliberate effort to mislead, intimidate and coerce the Initial Terminated Employees into foregoing their severance rights, as part of a calculated plan by Microchip to save itself money by wrongfully refusing to pay the full severance benefits due under the Severance Guarantee Plan.  Microchip knowingly and intentionally failed to inform any Continuing Employees in its CEDBO and in its Continuing Employee 50% Offer and Release, or at any other time, that the Plan was still in existence and in effect, that the Continuing Employees had rights under ERISA because they were beneficiaries of the Plan, or that pursuant to the Plan and the statutory protections provided by ERISA, the Continuing Employees who were terminated without cause before March 19, 2017 were entitled to substantially and materially greater benefits than Microchip was offering them under its CEDBO and under its Continuing Employee 50% Offer and Release.  By these deliberate and knowing acts of omission and commission, Microchip breached its fiduciary duties to plaintiffs under ERISA.

61.     As a direct and proximate result of Microchip's false and misleading statements, threats, intimidation, and coercion, and its wrongful failure to convey complete and accurate information about the benefits to which terminated employees were entitled under the Severance Guarantee Plan, Microchip caused many Continuing Employees to sign the CEDBO in April 2016 and then to sign the Continuing Employee 50% Offer and Release upon their termination without cause.

62.     No Plan member would have signed Microchip's April 6 Offer and Release, its April 50% Offer and Release, its CEDBO, or its Continuing Employee 50% Offer and Release

(collectively the "Reduced Benefit Documents") if defendants had accurately informed that employee of the employee's right to severance benefits under the Plan and if defendants had not falsely stated that the Plan had ceased to exist and falsely represented that the employee had no right to any severance benefits under the Plan.

63.     Plaintiffs, all of whom were terminated without cause after the April 4, 2016 merger, did not sign any of the Reduced Benefit Documents.  Defendants refused to pay plaintiffs any of the severance benefits due to them under the Severance Guarantee Plan.  Plaintiffs submitted formal written claims to defendants pursuant to ERISA and the Severance Guarantee Plan, and demanded that defendants pay them the full severance benefits due to them under the Severance Guarantee Plan.  Despite having no justification for doing so, defendants deliberately and repeatedly delayed giving responses to these claims, in an effort to induce more terminated employees to accept fewer severance benefits than they were due under the terms of the Plan and in an effort to induce more terminated employees to sign unlawful and voidable releases.  Defendants breached their fiduciary duties to plaintiffs by deliberately and repeatedly delaying their responses to these formal written claims without justification and for these improper purposes, including by extending defendants' own time for responding to those claims and appeals from those claims, despite knowing from the outset that they intended to deny those claims and appeals on the ground that the Plan had ceased to exist as of November 1, 2015.

64.     Defendants wrongfully denied the written claims for benefits submitted by plaintiffs who had refused to sign any of the Reduced Benefit Documents, falsely stating in their claim denial letters that: the Atmel employees were "not eligible for benefits" under the Plan because the Plan had "expired" on November 1, 2015 because the merger agreement between Microchip and Atmel was not the "same agreement" that Atmel had entered into with Dialog in September 2015.  After these terminated employees who had refused to sign any of the Reduced Benefit Documents filed appeals of these denials, defendants delayed responding until virtually the last possible day for a response and then denied their appeals on the identical erroneous and wrongful grounds.

65.     Plaintiffs are informed and believe that at all relevant times herein, defendants Microchip, Atmel, and the Severance Guarantee Plan were the agents of each other, and were acting

within the course and scope of such agency.  To the extent that said conduct and/or omissions were perpetrated by defendants and their agents, defendants confirmed and ratified said conduct and/or omissions.

### *Claims & Appeals*

66.     Between May 20, 2016 and October 5, 2016, each plaintiff submitted a claim for benefits under the Severance Guarantee Plan to the Plan Administrator.

67.     Between November 21, 2016 and November 29, 2016, the Plan Administrator denied each plaintiff's claim for benefits under the Severance Guarantee Plan.  In the denial letters, Microchip's Human Resources Manager identified herself as the Plan Administrator and wrongfully stated that plaintiffs were "not eligible for benefits" under the Plan because the Plan had "expired" on November 1, 2015 with respect to any acquiring entity other than Dialog, and because the merger agreement between Microchip and Atmel was not the "same agreement" that Atmel had entered into with Dialog in September 2015.

68.     Between January 18, 2017 and January 20, 2017, each plaintiff submitted an appeal to the Plan Administrator concerning the Plan Administrator's decision to deny their claims for benefits under the Severance Guarantee Plan.  Plaintiffs' appeals explained why the interpretation of the plan documents set out in the Plan Administrator's denial letters was incorrect and why the decision by Plan Administrator contravened the terms of the Severance Plan and was arbitrary and capricious and constituted a breach of the Plan Administrator's fiduciary duties. Plaintiffs enclosed further records and evidence in support of their appeals.

69.     Between March 17, 2017 and March 20, 2017, the Plan Administrator denied the plaintiffs' appeals and again refused to pay them the benefits due under the Severance Guarantee Plan.  In the letters denying plaintiff's appeals, Microchip's head of Human Resources again identified herself as the Plan Administrator and stated that plaintiff's appeals were being denied because "[t]he agreement with respect to Dialog Semiconductor PLC referenced in your letter did not result in a "Change in Control."  Thus, you are not eligible for benefits . . ."  The Plan Administrator again erroneously stated that the Severance Plan had "expired" on November 1, 2015.

///

70.     Plaintiffs have each exhausted their administrative remedies under the Severance Guarantee Plan by submitting a claim for benefits to the Plan Administrator and by then submitting an appeal to the Plan Administrator after the Plan Administrator denied their claims.

71.     Plaintiffs are entitled to the full benefits due under the Severance Guarantee Plan, and Defendants have wrongfully denied plaintiffs' claims for those full benefits.

**FIRST CAUSE OF ACTION**
**Breach of Fiduciary Duties and the Remedies of Equitable Relief,**
**Equitable Estoppel and Surcharge**
**(ERISA Section 502(a)(3), 29 U.S.C. §1132(a)(3))**

72.     Plaintiffs incorporate herein by specific reference, as though fully set forth, the allegations in paragraphs 1 through 71.

73.     The Severance Guarantee Plan is a "plan" within the meaning of ERISA.

74.     At all relevant times, defendants have been fiduciaries with respect to the Plan's participants, including plaintiffs, and/or functioned as fiduciaries because they exercised discretionary control over the operation or administration of the Plan.  Defendants knowingly participated in each breach of fiduciary duty alleged herein.  Defendants owe all Plan participants a duty of loyalty, which includes the duty to convey complete and accurate information when communicating to Plan participants about benefits under the Severance Guarantee Plan, and the duty not to make misrepresentations or misleading statements or omissions when communicating to Plan participants about benefits under the Plan.

75.     Between the September 17, 2015 Initial Triggering Event and the April 4, 2016 merger closing date, defendants communicated with the Severance Guarantee Plan's participants, including plaintiffs, regarding those participants' benefits under the Plan, and repeatedly and knowingly made material misrepresentations and misleading statements and omissions to the Plan participants about defendants' intent and willingness to provide the benefits due under the Plan. Defendants falsely and misleadingly stated that they intended to honor the terms of the Plan and deliberately caused Plan participants to believe that defendants would provide all benefits described in the Plan Documents.  When defendants made those statements and deliberately caused the Plan participants to believe that defendants intended to provide the full amount of severance benefits set

forth in the Plan to all participants who were terminated without cause before March 19, 2017, including plaintiffs, defendants had no such intention of honoring the Plan's terms or of providing the benefits set forth in the Plan.  Defendants were fully aware and understood before the merger closed that Atmel, as the drafter and creator of the Plan and as the Plan Administrator, believed and understood that the Plan was intact and in existence, and that Atmel further believed and understood that if Microchip acquired Atmel, the Plan's participants who were terminated without cause before March 19, 2017 would be entitled to receive all benefits set forth in the Plan Defendants were also fully aware and understood before the merger closed that defendants were communicating these beliefs to the Plan participants.  Defendants were fully aware and understood before the merger closed that defendants had caused Plan participants to believe that Microchip had the same understanding and belief as Atmel with respect to the Plan being intact and in existence and with respect to the right of Plan participants to receive the benefits of the Plan if those participants were terminated without cause before March 19, 2017.  At no time prior to the merger closing did defendants or any of them suggest or indicate to the Plan participants that Microchip had any different interpretation or understanding of the Plan than Atmel had presented to those participants. After the merger closed, Microchip had no authority or right, based on the language of the Plan and otherwise, to construe or re-interpret the Plan in a manner that contravened Atmel's pre-merger interpretation or in a manner that required the Plan Administrator to deny benefits to Plan participants who were entitled to severance benefits under the Plan as previously construed and interpreted by Atmel as the drafter and prior Plan Administrator of the Plan.

76.    The April 6 Offer and Release, April 50% Offer and Release, CEDBO, and Continuing Employee 50% Offer and Release (collectively "the Reduced Benefit Documents"), each offered severance benefits to Plan participants, including plaintiffs, that were substantially and materially lower in value than the benefits to which those participants were entitled under the Severance Guarantee Plan.  Defendants unlawfully and in breach of their fiduciary duties offered those reduced benefits to Plan participants, including plaintiffs, in exchange for a general release of all claims against Microchip and Atmel and their affiliates.  At no time after the merger closing date did defendants communicate to Plan participants, including plaintiffs, the truth that the Severance

Guarantee Plan was still in existence and in effect; that Plan participants had rights under ERISA because they were beneficiaries of the Plan, including the right to file a claim for ERISA benefits under the Plan and the right to appeal any denial of a claim for benefits under the Plan; and that pursuant to the Plan and the statutory protections provided by ERISA, that Plan participants were entitled to substantially and materially greater benefits than Microchip was offering them under the Reduced Benefits Documents.

77.     When defendants falsely represented to Plan participants that the Severance Guarantee Plan was in effect and would provide severance benefits under its terms to all participants who were terminated without cause between the merger close date and March 19, 2017, defendants knew that after the Merger closed on April 4, 2016 defendants would: a) falsely represent to Plan participants that the Plan had expired; 2) falsely claim that Atmel employees had no right to any benefits under the Plan; 3) falsely claim that defendants had no obligation to pay any benefits under the Plan and 4) refuse to pay employees terminated without cause before March 19, 2017 the benefits provided by the Plan.  Defendants also knew that they would attempt to threaten, intimidate, and coerce Plan participants into executing releases of claims for Plan benefits and accepting far less in severance benefits than those employees were or would be entitled to receive under the Plan, by means of making the false representations above.

78.     Defendants' failure to convey complete and accurate information about the benefits to which Plan participants were entitled under the Severance Guarantee Plan when defendants presented those participants with the Reduced Benefit Documents, caused those participants to be materially misinformed as to whether, and in what amount, they were or would be entitled to severance benefits under the Plan.  Defendants knowingly and deliberately failed to inform Plan participants that they were actually entitled to greater severance benefits than those offered in exchange for their execution of the Reduced Benefit Documents.  Defendants also falsely and/or fraudulently stated or implied, in presenting the Reduced Benefit Documents to Plan participants, that the Plan had "expired" and that the Plan participants were not entitled to any benefits under the Plan, even though defendants knew and understood at the time that those participants were entitled to 100% of the benefits provided by the Plan if they were terminated without cause before March 19,

2017, and even though defendants knew and understood that they had deliberately caused those participants to believe before the Merger closed that they would receive 100% of the benefits provided by the Plan if terminated without cause before March 19, 2017.

79. Defendants breached their fiduciary duty to Plan participants by engaging in the acts and omissions described above, including by: a) failing to disclose prior to the Merger that defendants intended not to provide the benefits described in the Plan; b) affirmatively misrepresenting that defendants would honor the Severance Guarantee Plan when defendants did not intend to do so; c) deliberately misleading those participants into believing that defendants would pay the full amount of severance benefits provided by the Plan to all participants who were terminated without cause before March 19, 2017; d) failing to pay the full amount of severance benefits provided by the Plan to all participants who were terminated without cause before March 19, 2017; e) representing that the Plan had expired, thus preventing claims from even being submitted; f) continuing to seek unlawful, voidable releases of claims even after having been put on notice that such efforts were unlawful and a breach of defendants' fiduciary duties; g) delaying without justification their response to plaintiffs' efforts to exhaust administrative remedies under ERISA in order to avoid and delay paying benefits legally due; h) delaying without justification their response to plaintiffs' claims in an effort to get more employees to accept fewer severance benefits than they were due under the terms of the Plan; i)  purporting to "re-interpret" the Plan after the Merger in a manner that contravened the interpretation and decision previously made by Atmel prior to the merger with respect to the issue of Plan participants' entitlement to benefits in the event that Microchip replaced Dialog as the acquiring company, even though defendants had no authority or right to do so following the Merger under the express language of the Plan; j) failing to inform Plan Participants who were terminated without cause that they had rights under ERISA because they were beneficiaries of the Plan, including the right to file a claim for ERISA benefits under the Plan and the right to appeal any denial of a claim for benefits under the Plan; k) failing to inform Plan participants who were terminated without cause that they were entitled to substantially and materially greater benefits than Microchip was offering them under the Reduced Benefit Documents; and l) attempting to obtain a discount on the full amount of benefits due to Plan Participants under

the Plan, even though defendants understood and believed that Plan Participants who were terminated without cause prior to March 19, 2017 were entitled to the full amount of benefits under the Plan.

80.     None of defendants' Reduced Benefit Documents refer to, mention, or identify ERISA or advise Plan participants, including plaintiffs, that those participants have any rights under ERISA or any right to benefits under ERISA and/or the Severance Guarantee Plan.  Nor do any of defendants' Reduced Benefit Documents specifically refer to or identify the Severance Guarantee Plan or specifically disclose that accepting any Reduced Benefit Documents is tantamount to waiving the severance benefits to which the terminated employee is entitled under the Severance Guarantee Plan.

81.     Defendants' acts and omissions as set forth above constitute a breach of defendants' fiduciary duties under Section 404(a) of ERISA, 29 U.S.C. §1104(a).

82.     Plaintiffs have suffered economic and other harm as the direct and proximate result of defendants' false and misleading statements, omissions, and commissions alleged herein, including defendants' conduct in inducing plaintiffs to remain employed by Atmel and Microchip by promising benefits that defendants did not intend to provide and did not provide, and defendants' conduct in denying the existence of Plan benefits to Plan participants and as part of a scheme to defraud Plan participants into executing waivers of their right to obtain the benefits provided by the Plan.

83.     Plaintiffs have suffered and will continue to suffer irreparable harm if defendants are not preliminarily and permanently enjoined from: a) continuing to make the false and misleading statements, omissions, and commissions alleged herein; b) failing to pay the full amount of Plan benefits to Plan participants who were terminated without cause between the Merger close date and March 19, 2017; c) continuing to seek releases of claims for Plan benefits from Plan participants; and d) continuing to administer the Plan in bad faith, as alleged herein.

84.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, plaintiffs are entitled to: a) a declaration that the Plan is valid and enforceable and remains in existence; b) a declaration that all Plan participants, including plaintiffs, are entitled to the full amount of benefits provided by the

Plan if those persons were terminated without cause at any time between April 4, 2016 and March 19, 2017 c) a declaration that any releases obtained by defendants as a result of defendants' misrepresentations and other wrongful conduct are void and unenforceable.

85.     Pursuant to Section 502(a) of ERISA, 29 U.S.C. §1132(a)(3), plaintiffs are entitled to a) a declaration that the Plan is valid and enforceable and remains in existence; b) a declaration that all Plan participants, including plaintiffs, are entitled to the full amount of benefits provided by the Plan if those persons were terminated without cause at any time between April 4, 2016 and March 19, 2017; c) an injunction prohibiting defendants from continuing to deny Plan benefits to eligible employees; d) an injunction prohibiting defendants from continuing to make false and fraudulent statements about the Plan's existence or about any employee's current or future right to benefits under the Plan; e) an injunction prohibiting defendants from continuing to delay the processing of any Plan member's claim for ERISA benefits; f) an injunction requiring defendants to pay the full amounts and benefits promised under the Plan to all employees who were terminated without cause between the Merger close date and March 19, 2017; and g) equitable make-whole relief to all employees who received no severance benefits upon their termination by Microchip or Atmel than the Plan guaranteed.

86.     Pursuant to Section 409 of ERISA, 29 U.S.C. §1109(a) and Section 502(a) of ERISA, 29 U.S.C. §1132(a), plaintiffs are entitled to the removal and replacement of Microchip as Plan Administrator with a new and different Plan Administrator that complies with its fiduciary obligations to Plan participants.

87.     Because defendants benefited from their own fiduciary breaches at the expense of the Plan participants, including plaintiffs, by not paying Plan participants severance benefits they were entitled to under the Severance Guarantee Plan, plaintiffs are entitled to recover as an equitable surcharge the difference between what defendants paid them in severance benefits and what defendants should have paid them in severance benefits, disgorgement of profits gained as a result of defendants' breaches, plus interest and attorneys' fees.

///

///

**SECOND CAUSE OF ACTION**
**Claim for Plan Benefits**
**(ERISA Section 502(1)(B), 29 U.S.C. §1132(a)(1)(B) )**

88.     Plaintiffs incorporate herein by specific reference, as though fully set forth, the allegations in paragraphs 1 through 87.

89.     ERISA § 502(a) (1) (B) (29 U.S.C. § 1132 (a) (1) (B)), permits participants in a plan to bring a civil action to recover benefits due them under the terms of a plan, to enforce their rights under the terms of a plan, and/or clarify their rights to future benefits under the terms of a plan.

90.     By engaging in the acts and omissions alleged herein, including failing to pay Severance Guarantee Plan benefits to plaintiffs despite these former Atmel employees' compliance with all of the terms of the Severance Guarantee Plan and their eligibility for benefits thereunder; falsely and fraudulently informing plaintiffs that the Plan had ceased to exist and that the Plan's benefits were no longer available; falsely and fraudulently informing plaintiffs that the only way a terminated employee could become eligible for even a considerably less attractive package of severance benefits would be for that employee to execute a broad release waiving any and all claims against defendants, including a claim for the full amount of benefits guaranteed by the Plan; relying on a standard of proof not articulated in the Plan's provisions; purporting to "re-interpret" the Plan after the Merger in a manner which contravened the interpretation and decision previously made by Atmel prior to the merger with respect to the issue of Plan participants' entitlement to benefits in the event that Microchip replaced Dialog as the acquiring company, even though Microchip had no authority or right to do so following the Merger under the express language of the Plan; interpreting the Plan in contravention of the plain language of the Plan, including imposing conditions for eligibility which do not exist in the Plan, in a bad faith effort to save itself money and deprive Plan participants of benefits to which the Plan participants were entitled, refusing to provide plaintiffs with documentation to substantiate its decision to deny benefits; failing to produce documents to which plaintiffs were entitled pursuant to ERISA and the applicable Department of Labor Regulations; and by failing to make a timely decision on plaintiffs' claims, defendants have violated, and continue to violate, the terms of the Severance Guarantee Plan and plaintiffs' rights thereunder.

///

### THIRD CAUSE OF ACTION
**Interference with Exercise of ERISA Rights**
**(ERISA Section 510, 29 U.S.C. §1140)**

91.    Plaintiffs incorporate herein by specific reference, as though fully set forth, the allegations in paragraphs 1 through 90.

92.    ERISA § 510 (29 U.S.C. § 1140) permits participants in a plan to bring a civil action for interference with exercise of ERISA rights and to recover payments they are owed under a plan or that they would be owed under a plan absent such interference and to obtain equitable remedies such as restitution, imposition of constructive trusts, disgorgement, injunctions, and/or specific performance.

93.    By engaging in the acts and omissions alleged herein, including failing to pay plaintiffs Severance Guarantee Plan benefits despite their compliance with all of the terms of the Severance Guarantee Plan and their eligibility for benefits thereunder; falsely and fraudulently informing plaintiffs that the Plan had ceased to exist and that the Plan's benefits were no longer available; falsely and fraudulently informing plaintiffs that the only way a terminated employee could become eligible for even a considerably less attractive package of severance benefits would be for that employee to execute a broad release waiving any and all claims against defendants, including a claim for the full amount of benefits guaranteed by the Plan; purporting to "re-interpret" the Plan after the Merger in a manner which contravened the interpretation and decision previously made by Atmel prior to the merger with respect to the issue of Plan participants' entitlement to benefits in the event that Microchip replaced Dialog as the acquiring company, even though Microchip had no authority or right to do so following the Merger under the express language of the Plan; and by interpreting the Plan in contravention of the plain language of the Plan, including imposing conditions for eligibility which do not exist in the Plan, in a bad faith effort to save itself money and deprive Plan participants of benefits to which the Plan participants were entitled, defendants have violated, and continue to violate, the terms of the Severance Guarantee Plan and plaintiffs' rights thereunder.

94.    At all times relevant herein, Defendants acted with the intent to interfere with plaintiffs' rights under ERISA.

95.     Defendants' acts and omissions as set forth above constitute intentional interference with exercise of plaintiffs' ERISA under Section 510 of ERISA, 29 U.S.C. §1140.

96.     Plaintiffs have suffered economic and other harm as the direct and proximate result of defendants' intentional interference with their ERISA rights, false and misleading statements, omissions, and commissions alleged herein, including defendants' conduct in inducing plaintiffs to remain employed by Atmel and Microchip by promising benefits that defendants did not intend to provide and did not provide, and defendants' conduct in denying the existence of Plan benefits to Plan participants and as part of a scheme to defraud Plan participants into executing waivers of their right to obtain the benefits provided by the Plan.

97.     Plaintiffs have suffered and will continue to suffer irreparable harm if defendants are not preliminarily and permanently enjoined from: a) continuing to deny Plan benefits to eligible employees; b) continuing to make false and fraudulent statements about the Plan's existence or about any employee's current or future right to benefits under the Plan; c) continuing to delay the processing of any Plan member's claim for ERISA benefits; d) refusing to pay the full amounts and benefits promised under the Plan to all employees who were terminated without cause between the Merger close date and March 19, 2017; e) enforcing any releases obtained as a result of defendants' false and misleading statements, omissions, and commissions alleged herein; f) continuing to seek releases of claims for Plan benefits; and g) continuing to administer the Plan in bad faith, as alleged herein.

98.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, plaintiffs are entitled to: a) a declaration that the Plan is valid and enforceable and remains in existence; b) a declaration that all Plan participants, including plaintiffs, are entitled to the full amount of benefits provided by the Plan if those persons were terminated without cause at any time between April 4, 2016 and March 19, 2017 and c) a declaration that any releases obtained by defendants as a result of defendants' misrepresentations and other wrongful conduct are void and unenforceable.

99.     Pursuant to Section 510 of ERISA, 29 U.S.C. §1140, plaintiffs are entitled to: a) a declaration that the Plan is valid and enforceable and remains in existence; b) a declaration that all Plan participants, including plaintiffs, are entitled to the full amount of benefits provided by the Plan

if those persons were terminated without cause at any time between April 4, 2016 and March 19, 2017; c) an injunction prohibiting defendants from continuing to deny Plan benefits to eligible employees; d) an injunction prohibiting defendants from continuing to make false and fraudulent statements about the Plan's existence or about any employee's current or future right to benefits under the Plan; e) an injunction prohibiting defendants from continuing to delay the processing of any Plan member's claim for ERISA benefits; f) an injunction requiring defendants to pay the full amounts and benefits promised under the Plan to all employees who were terminated without cause between the Merger close date and March 19, 2017; and g) equitable make-whole relief to all employees who received no severance benefits upon their termination by Microchip or Atmel than the Plan guaranteed.

100.    Pursuant to Section 409 of ERISA, 29 U.S.C. §1109(a) and Section 502(a) of ERISA, 29 U.S.C. §1132(a), plaintiffs are entitled to the removal and replacement of Microchip as Plan Administrator with a new and different Plan Administrator that complies with its fiduciary obligations to Plan participants.

101.    Because defendants benefited from their own intentional interference with plaintiffs ERISA rights, fiduciary breaches at the expense of the Plan participants, including plaintiffs, by not paying Plan participants severance benefits they were entitled to under the Severance Guarantee Plan, plaintiffs are entitled to recover as an equitable surcharge the difference between what defendants paid them in severance benefits and what defendants should have paid them in severance benefits, disgorgement of profits gained as a result of such interferences, plus interest and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For an order declaring that that defendants violated the terms of the Plan and plaintiffs' rights thereunder by failing to pay plaintiffs the full amount of severance benefits due under the Plan;

2.    For an order requiring defendants to pay plaintiffs all severance benefits due pursuant to the terms of the Plan;

3.      For an injunction against defendants, preliminarily and permanently enjoining them from: a) continuing to deny Plan benefits to eligible employees; b) continuing to make false and fraudulent statements about the Plan's existence or about any employee's current or future right to benefits under the Plan; c) continuing to delay the processing of any Plan member's claim for ERISA benefits; d) refusing to pay the full amounts and benefits promised under the Plan to all employees who were terminated without cause between the Merger close date and March 19, 2017; and e) continuing to administer the Plan in bad faith, as alleged herein;

4.      For a declaration that the Plan is valid and enforceable and remains in existence;

5.      For a declaration that all Plan participants, including plaintiffs, are entitled to the full amount of benefits provided by the Plan if those persons were terminated without cause at any time between April 4, 2016 and March 19, 2017;

6.      For a declaration that any releases obtained by defendants as a result of defendants' misrepresentations and other wrongful conduct are void and unenforceable.

7.      To the extent that any Plan language is found to be ambiguous, for an order equitably estopping defendants from disputing the Plan participants' entitlement to the full amount of severance benefits provided by the Severance Guarantee Plan if those participants were, or are, terminated without cause by defendant at any time between the Merger close date and March 19, 2017.

8.      For the equitable relief of surcharge, including the return of the financial benefits Defendants gained by breaching their fiduciary duties to Plaintiffs;

9.      For disgorgement of profits gained as a result of fiduciary breaches and/or interference;

10.     For interest on all sums awarded;

///

///

///

///

///

ERISA COMPLAINT

1      11.    For attorneys' fees and the costs of action in an amount the Court determines to be

2  reasonable, pursuant to ERISA Section 502(g)(1), 29 U.S.C. §1132(g)(1), and any other applicable

3  provisions providing for attorneys' fees and costs;

4      12.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 4, 2017                 **ALTSHULER BERZON LLP**
                                     MICHAEL RUBIN
                                     CONNIE K. CHAN
                                     RAPHAEL N. RAJENDRA


                                     **MCGUINN, HILLSMAN & PALEFSKY**
                                     CLIFF PALEFSKY
                                     KEITH EHRMAN


                                     By: _____/s/ Keith Ehrman_____

ERISA COMPLAINT