OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C., SBN 00504800
Mark G. Kisicki (CA SBN 150057)
mark.kisicki@ogletreedeakins.com
2415 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: 602.778.3700
Fax: 602.778.3750

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN BERMAN, BO KANG, KHASHAYAR MIRFAKHRAEI, THANG VAN VU, DONNA VIERA-CASTILLO, GIRISH RAMESH, PATRICK HANLEY, ILANA SHTERNSHAIN and MANDY SCHWARZ,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MICROCHIP TECHNOLOGY INCORPORATED, a corporation; ATMEL CORPORATION, a corporation; and ATMEL CORPORATION U.S. SEVERANCE GUARANTEE BENEFIT PROGRAM, an employee benefit plan,<br><br>                    Defendants. | No. 5:17-CV-01864-HRL<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' ERISA COMPLAINT FOR BENEFITS, EQUITABLE RELIEF AND TO PREVENT DEFENDANTS' CONTINUED INTERFERENCE WITH PLAINTIFFS' EXERCISE OF ERISA RIGHTS**<br><br><br>Hearing Date:  June 27, 2017<br>Time:             10:00 a.m.<br>Courtroom:     2, Floor 5<br>Action Filed:   April 4, 2017<br>Trial Date:      None Set |

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES .............................................................................................iii

INTRODUCTION ............................................................................................................ 1

ISSUES TO BE DECIDED .............................................................................................. 3

FACTUAL BACKGROUND ............................................................................................. 4

    I.    The Atmel Plan ........................................................................................... 4

    II.   Alleged Pre-Merger Statements ................................................................. 6

    III.  Alleged Post-Merger Statements ............................................................... 8

    IV.  Benefits Claims ........................................................................................... 9

ARGUMENT .................................................................................................................. 9

    I.    The Court Should Dismiss the Complaint Because It Fails to Provide a
        "Short and Plain Statement" of Plaintiffs' Claim ......................................... 9

    II.   Count Should be Dismissed for Failing to State a Claim ........................... 10

        A.   Plaintiffs Cannot Seek Equitable Relief under Section 502(a)(3) Because
            Section 502(a)(1)(B) Provides Them Adequate Relief and the Equitable
            Relief Requested is Duplicative of, Not Alternative to, Their Benefits Claim .. 10

        B.   Plaintiffs Fail to Plead Facts Satisfying the Four-Factor Test for Injunctive
            Relief and, As a Matter of Law, Cannot Seek an Injunction Directing
            the Payment of Benefits ....................................................................... 16

        C.   Plaintiffs Failed to Please the Elements of an Equitable Estoppel
            Claim and Cannot Do So Based on Their Sole Theory of the Case ................. 17

        D.   Plaintiffs Cannot State a Viable Claim Based on Alleged
            Violation of  ERISA Section 409 When They Did Not Identify Any
            Specific Plan Assets that Were Misused and Plaintiffs Bring
             the Claim to Benefit themselves, Not the Plan ...................................... 17

        E.   Plaintiffs Cannot Allege Claims on Behalf of Non-Parties When They Do
            Not Bring Their Claims As a Class Action ............................................. 20

III.  Count III Should be Dismissed for Failure to State a Claim .......................................21

IV.  Microchip and the Atmel Plan Musts be Dismissed as Improperly-
     Named Defendants .........................................................................................................22

     A.    Microchip is not a Fiduciary of the Atmel Plan .................................................22

     B.    The Atmel Plan is not a Proper Breach of Fiduciary Duty Action Defendant ...24

CONCLUSION ....................................................................................................................25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Balsley v. Delta Star Employee Stock Ownership,*
5
    2009 WL 4823196 (N.D. Cal. Dec. 10, 2009) ...................................................3, 24

6

*Biglands v. Raytheon Emps. Savings & Inv. Plan,*
7
    801 F. Supp. 2d 781 (N.D. Ill. 2011)...................................................................15

8

*Brady v. United of Omaha Life Ins. Co.,*
    902 F. Supp. 2d 1274 (N.D. Cal. 2012)...............................................11, 15, 16, 20

9

*Brown v. Cal. Law Enforcement Ass'n, Long–Term Disability Plan,*
10
    81 F. Supp. 3d 930 (N.D. Cal. 2015).................................................................23

11

*Brown v. Sysco Food Servs. of Metro N.Y., LLC,*
    2014 WL 2566145 (D.N.J. June 6, 2014)...........................................................23

12

*Cafasso v. Gen. Dynamics C4 Sys.,*
13
    637 F.3d 1047 (9th Cir. 2011) ...................................................................4, 9, 20

14

*Chaganti v. Ceridian Benefits Servs., Inc.,*
15
    208 F. App'x 541 (9th Cir. 2006)....................................................................22

16

*Coyne & Delany Co. v. Blue Cross & Blue Shield,*
    102 F.3d 712 (4th Cir. 1996) .........................................................................18, 19

17

*Craft v. Health Care Serv. Corp.,*
18
    2016 WL 1270433 (N.D. Ill. March 31, 2016) ...................................................15

19

*Crosby v. Electronic Data Systems Corp. Health Benefit Plan,*
    2008 WL 5244437 (W.D.N.C. Dec. 15, 2008)...................................................19

20

*Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust,*
21
    50 F.3d 1478 (9th Cir. 1995) .........................................................................12

22

*Engelhardt v. The Paul Revere Life Ins. Co.,*
23
    139 F.3d 1346 (11th Cir. 1998) ......................................................................18

24

*Gabriel v. AEPF,*
    773 F.3d 945 (9th Cir. 2014) ..........................................................................2

25

26

*Greany v. W. Farm Bureau Life Ins. Co.*,
  973 F.2d 812 (9th Cir. 1992) ................................................................2, 6, 17

*Hensley v. P.H. Glatfelter Co.*,
  2005 WL 2000322 (W.D.N.C. Aug. 19, 2005) ........................................19

*Hoffman v. Am. Society for Technion-Israel Inst. of Tech., Inc.*,
  2012 WL 3647803 (S.D. Cal. Aug. 22, 2012) ....................................11, 15

*Johnson v. Buckley*,
  356 F.3d 1067 (9th Cir. 2004) ................................................................12

*Korotynska v. Metropolitan Life Ins. Co.*,
  474 F.3d 101 (4th Cir. 2006) ..................................................................19

*Kyle Ry. Inc. v. Pac. Admin. Servs., Inc.*,
  990 F.2d 513 (9th Cir. 1993) ..............................................................3, 22

*LaRue v. DeWolff, Boberg & Assoc., Inc.*,
  552 U.S. 248 (2008) ................................................................................18

*Leonelli v. Pennwalt Corp.*,
  887 F.2d 1195 (2d Cir. 1989) ..................................................................24

*LYMS, Inc. v. Millimaki*,
  2013 WL 1147534 (S.D. Cal. Mar. 19, 2013) ........................................22

*Massachusetts Mutual Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ................................................................3, 13, 18, 19

*Mathews v. Chevron Corp.*,
  362 F.3d 1172 (9th Cir. 2004) ................................................................22

*McDonald v. Provident Indem. Life Ins. Co.*,
  60 F.3d 234 (5th Cir. 1995) ....................................................................19

*McMurtrie v. Specialty Minerals, Inc.*,
  2009 WL 2579830 (E.D. Pa. Aug. 19, 2009) ..........................................21

*Mertens v. Kaiser Steel Ret. Plan*,
  744 F. Supp. 917 (N.D. Cal. 1990) ....................................................13, 24

*Monper v. Boeing Co.*,
  104 F. Supp. 3d 1170 (W.D. Wash. 2015) ........................................22, 24

*Moyle v. Liberty Mutual Retirement Benefit Plan*,
    823 F.3d 948 (9th Cir. 2006) ...................................................................................11, 14

*Nalbandian v. Lockheed Martin Corp.*,
    2011 WL 338809 (N.D. Cal. Feb. 1, 2011) ..............................................................15

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005) .......................................................................................11

*Odneal v. Pac. Gas & Elec. Co.*,
    1991 WL 256524 (9th Cir. 1991) .............................................................................21

*Pengilly v. Guardian Life Ins. Co. of Am.*,
    81 F. Supp. 2d 1010 (N.D. Cal. 2000) ....................................................................11

*Pette v. Int'l Union of Operating Engr's*,
    2016 WL 4596338 (C.D. Cal. Sept. 2, 2016) .....................................................11, 12

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) ...................................................................................................10

*Powers v. AT&T*,
    2015 WL 5188714 (N.D. Cal. Sept. 4, 2015) ........................................................3, 21

*Schultz v. Prudential Ins. Co.*,
    678 F. Supp. 2d 771 (N.D. Ill. 2010) ......................................................................13

*St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*,
    536 F.3d 1049 (9th Cir. 2008) ..............................................................................8, 22

*Stein v. Smith*,
    270 F. Supp. 2d 157 (D. Mass. 2003) ........................................................................8

*Stout v. Health Mgmt. Assocs., Inc.*,
    2011 WL 1225575 (E.D. Wash. March 31, 2011) ...................................................21

*Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*,
    494 F. App'x 129 (2d Cir. 2012) .............................................................................24

*Toohey v. Wyndham Worldwide Corp.*,
    673 F. Supp. 2d 1223 (D. Or. 2009) ........................................................................16

*U.S. Airways, Inc. v. McCutchen*,
    133 S. Ct. 1537 (2013) ...........................................................................................1, 2

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...................................................................................................5

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) .........................................................................................10, 12, 16

*Watkins v. Westinghouse Hanford Co.*,
   12 F.3d 1517 (9th Cir. 1993) ..............................................................................................13

*Wise v. Verizon Commc'ns*,
   600 F.3d 1180 (9th Cir. 2010) ...........................................................................................11

*Zuckerman v. United of Omaha Life Ins. Co.*,
   2010 U.S. Dist. LEXIS 73207 (N.D. Ill. July 21, 2010) .....................................................16

**Statutes**

29 U.S.C. § 1109(a) (ERISA Section 409) .........................................................................3-4, 17-19

29 U.S.C. § 1132(a)(1)(B) (ERISA Section 502(a)(1)(B)) .........................................3, 10-16, 19, 24

29 U.S.C. § 1132(a)(2) (ERISA Section 502(a)(2)) ...........................................................................18

29 U.S.C. § 1132(a)(3) (ERISA Section 502(a)(3)) ...............................1-3, 10-13, 15-16, 19, 22, 24

29 U.S.C. § 1140 (ERISA Section 510) ......................................................................................2-4, 21

29 U.S.C. §1002(21)(A)(i) (ERISA Section 3(21)(A)(i)) ..............................................................8, 22

**Other Authorities**

Fed. R. Civ. P. 8(a) .......................................................................................................1-2, 10, 20

Fed. R. Civ. P. 9(b) ...............................................................................................................20

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 27, 2017 at 10:00 a.m. or as soon thereafter as may be heard, in Courtroom 2 of the above-entitled Court, San Jose Courthouse, 5th Floor, 280 South 1st Street, San Jose, CA 95113, before the Honorable **Howard R. Lloyd,** Defendants Microchip Technology, Inc. ("Microchip"), Atmel Corporation ("Atmel") and Atmel Corporation U.S. Severance Guarantee Benefit Program ("Atmel Plan" and, collectively with Microchip and Atmel, "Defendants") will and do move the Court for an Order granting the relief sought by this Motion.

Defendants move to dismiss Plaintiffs' Complaint for failing to provide a "short and plain statement of the claim showing [that Plaintiffs] are entitled to relief." Fed. R. Civ. P. 8(a). Defendants also move to dismiss Counts I and III for failing to state a claim. Fed. R. Civ. P. 12(b)(6). Finally, Microchip moves to be dismissed as an improperly-named party and the Atmel Plan moves to be dismissed as an improperly-named defendant in Counts I and III.

## <u>INTRODUCTION</u>

Plaintiffs have one simple claim to allege. They contend they were denied benefits to which they are entitled under the Atmel Plan's "plain" and "express" terms. Despite their myriad creative ways of characterizing it, all of the relief Plaintiffs seek would result in nothing more than the Court awarding them benefits under the Atmel Plan's plain language.

When an ERISA plan's language is clear and a claimant has been denied benefits based on that language, the question for a reviewing court is whether the administrator's determination abused the discretion the plan established, and ERISA protects, under its deferential standard of review. As the Supreme Court recently emphasized, "if the agreement governs, the agreement governs . . . ." *U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1547 (2013). Section 502(a)(3) "'does not, after all, authorize "appropriate equitable relief *at large*," . . .; rather, it countenances

only such relief as will enforce '*the terms of the plan*' or the statute.'" *Id.* at 1548 (emphases by Court; internal citations omitted); *see also, e.g.*, *Gabriel v. AEPF*, 773 F.3d 945 (9th Cir. 2014) (holding equitable estoppel never appropriate under 502(a)(3) when it would require benefits payments contrary to the plan's unambiguous terms); *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992) (same).

Here, Plaintiffs admit that the Atmel Plan's language is "plain" or "express" a dozen times. Moreover, that plain language was the sole basis on which the Plan Administrator denied Plaintiffs' benefit claims. Yet, Plaintiffs have filed a novella packed with pages of allegations about Defendants' purported statements and conduct, all of which are irrelevant under well-settled law. The Complaint's litany of Defendants' alleged misdeeds serves no purpose but to obfuscate Plaintiffs' claim. The Complaint improperly burdens the Court and Defendants with searching for the "short and plain statement" of Plaintiffs' claim. Fed. R. Civ. P. 8(a).

The Complaint makes the search for Plaintiffs' claim more burdensome by attempting to shift the focus of this case to the severance and release agreements ("Separation Agreements") that Microchip offered certain employees after acquiring Atmel. Plaintiffs inexplicably focus on the Separation Agreements and list a plethora of allegations that Microchip breached fiduciary duties by offering the agreements. [Compl. ¶¶ 5, 53, 55, 59, 76, 90, 93.] However, the Separation Agreement have no relevancy to Plaintiffs' claims as they admit that *none* of them signed one. [Compl. ¶ 63.] Rather, they all submitted formal claims to the Atmel Plan Administrator, who denied their claims. [Compl. ¶¶ 66-69.] Quite simply, Plaintiffs are attempting to convolute a simple benefits case by litigating a theoretical dispute, not an actual controversy; Plaintiffs seek to drive this litigation by challenging Separation Agreements that do not apply to them.

Count III, which alleges that Defendants interfered with Plaintiffs' exercise of ERISA rights under Section 510, also is fatally flawed. An interference claim under Section 510 requires facts showing that Plaintiffs suffered adverse employment actions designed to prevent them from

asserting ERISA rights. *See Powers v. AT&T*, 2015 WL 5188714, at *6 (N.D. Cal. Sept. 4, 2015) (dismissing Section 510 claim). Plaintiffs did not (and cannot) make such allegations. Similarly, Plaintiffs' allegation in Counts I and III that Defendants violated ERISA Section 409 must be dismissed because they have not identified any Atmel Plan assets that they are seeking to protect and they did not (and cannot) allege that their claim is for the benefit of the Atmel Plan. Indeed, Plaintiffs are suing the Atmel Plan as a defendant, not bringing a claim on its behalf. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) (holding Section 409's purpose is to provide remedies to protect plan assets rather than relief for individual beneficiaries).

Finally, Plaintiffs have improperly named Microchip and the Atmel Plan as defendants. No *facts* alleged in the Amended Complaint indicate that Microchip is a Plan fiduciary; and conclusory assertions cannot render Microchip liable for breaching duties owed only by fiduciaries. *Kyle Ry. Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) (noting breach of fiduciary claims can only be brought against ERISA-defined fiduciaries who exercise "discretionary authority or control respecting the management or administration of an employee benefit plan"). Nor does ERISA countenance breach of fiduciary claims or Section 409 claims against an ERISA-governed plan itself. *E.g.*, *Balsley v. Delta Star Employee Stock Ownership*, 2009 WL 4823196, at *3 (N.D. Cal. Dec. 10, 2009) (dismissing plan as an improperly-named defendant in a Section 502(a)(3) breach of fiduciary claim). Accordingly, Microchip should be dismissed entirely and the Atmel Plan should be dismissed as to Counts I and III.

## **ISSUES TO BE DECIDED**

1.  Should the Complaint be dismissed because it fails to provide a "short and plain statement" of Plaintiffs' claim?

2.  Does Section 502(a)(1) provide Plaintiffs with an adequate remedy to receive benefits they claim they were denied under the "plain" and "express" language of the Atmel Plan?

3.  Does the Complaint allege any claim that can be resolved without interpreting the Atmel Plan?

4. Did Plaintiffs properly allege an equitable estoppel claim?

5. Did Plaintiffs properly allege a basis for injunctive relief?

6. Did Plaintiffs properly allege claims on behalf of non-parties?

7. Did Plaintiffs properly allege a Section 510 interference claim when they fail to allege a prohibited employer action taken with the specific intent to interfere with ERISA rights?

8. Are Plaintiffs entitled to the removal and replacement of the Plan Administrator under Section 409 when they fail to plead this claim on behalf of the Atmel Plan?

9. Is Microchip an appropriately-named party when Plaintiffs admit that Atmel was the Plan Administrator prior to the merger and continues to exist as a wholly-owned subsidiary?

10. Is the Atmel Plan an appropriately-named party for Claims I and III?

## FACTUAL BACKGROUND

**I.    The Atmel Plan**

Plaintiffs' Complaint[1] asserts that Atmel created a U.S. Severance Guarantee Program ("Atmel Plan") through a July 9, 2015 letter and addendum that provided Atmel employees would be entitled to receive specific severance benefits if certain conditions were met:

1) The Company enters into a definitive agreement (a "Definitive Agreement"), on or before November 1, 2015, that will result in a Change of Control of the Company;

2) A Change of Control actually occurs; and

3) Their employment is terminated without "Cause" by the Company (or its successor) at any time within 18 months of the execution date of the Definitive Agreement.

[Compl. ¶¶ 19-21; Exhibit 1.][2]

---

[1] Defendants recognize that the factual allegations in a complaint are deemed true in resolving a motion to dismiss. *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1053 (9th Cir. 2011).

[2] The Atmel Plan is not attached to the Complaint, but the Court may consider it and the other documents attached to this Motion without converting it into one for summary judgment because the Complaint both refers to and depends upon the attached documents. *United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003). All Exhibit references are to exhibits to this Motion.

The Atmel Plan would expire on November 1, 2015, unless an Initial Triggering Event had occurred prior to the expiration date, "in which event the U.S. Severance Guarantee Benefits Program will remain in effect for 18 (eighteen) months following that Initial Triggering Event." [Exhibit 1, at 2.] The Atmel Plan also provided that:

> If a Definitive Agreement is not entered into on or before that date, the U.S. Severance Guarantee Benefit Program described in the letter and this Addendum will automatically expire, unless expressly extended by the Company's Board of Directors. [Additionally,] any Program amendment . . . or other action that could reasonably be construed to increase significantly the cost of the Program must be approved by the Company's Board of Directors or the Compensation Committee of the Company's Board of Directors.

[Exhibit 1, at 2.]

The Complaint also alleges that the Atmel Plan's "express language gave Atmel sole and exclusive authority to interpret the Plan prior to any merger, and made Atmel's pre-merger construction of the Plan's language conclusive and binding." [Compl. ¶ 23.] However, the Atmel Plan also goes on to state:

> Following a Change in Control, any decision made or other action taken by the Company, and any interpretation by the Company of any terms or condition of the Program, or any related document that (i) does not affect the benefits payable under the Program shall not be subject to review unless found to be arbitrary and capricious or (ii) does affect the benefits payable under the Program shall not be subject to review unless found to be unreasonable and not to have been made in good faith.

[Exhibit 1, at 3.]

According to the Complaint, Atmel and Dialog Semiconductor Plc ("Dialog") entered into a definitive agreement in September 2015. [Compl. ¶ 27.] Plaintiffs do not allege that agreement resulted in an actual change of control under the Atmel Plan. Rather, they allege that Microchip and Atmel subsequently signed a definitive agreement in January 2016 – two and a half months *after* the November 1, 2015 deadline – that did, in fact, result in a change of control on April 4, 2016. [Compl. ¶¶ 35, 49.]

Plaintiffs allege that Atmel drafted the Atmel Plan with the intent of reassuring employees that they would still be entitled to Atmel Plan benefits if *any* Initial Triggering Event occurred

before the November 1, 2015 deadline, even if the actual Change in Control resulted from a *different* Initial Triggering Event that occurred *after* the deadline. [Compl. ¶ 24.] However, they ultimately claim it is the Atmel Plan's "plain language" which determines that the Initial Triggering Event and the Change of Control do not need to involve the same acquiring company or merger agreement. [Compl. ¶¶ 4, 6, 25, 40, 90, 93.]

## II. Alleged Pre-Merger Statements

It is unclear why Plaintiffs have alleged a variety of statements supposedly made by Atmel or Microchip before their merger was completed. While Plaintiffs claim Atmel's pre-merger statements constituted a plan administrator's "interpretation" of the Atmel Plan, they do not plead facts establishing that Atmel was acting in a fiduciary role by exercising discretionary authority or control respecting the management or administration of the Atmel Plan. Similarly, Plaintiffs have not adequately pled equitable estoppel as they do not claim that the Atmel Plan's language was ambiguous. To the contrary, they claim that the language is "plain" and it was a breach of fiduciary duty to interpret it any way other than the Plaintiffs' current reading. The law is clear that oral statements cannot modify the terms of an unambiguous ERISA plan. *Greany*, 973 F.2d at 821.

Nonetheless, Plaintiffs have alleged a number of such statements that they believe to be relevant to their claims. In particular, Plaintiffs allege that they learned about Microchip's acquisition discussions with Atmel in mid-January 2016, which created "uncertainty" regarding the Atmel Plan (calling into question how the language could be "plain" if employees were so "uncertain" as to its meaning). [Compl. ¶ 30.] Before the definitive agreement with Dialog fell through, Plaintiffs claim that Atmel, supposedly acting as a fiduciary, assured them orally and in writing that "even if Microchip replaced Dialog as the acquiring company, any employee terminated without cause after that acquisition and prior to March 19, 2017 would be entitled to receive the severance benefits provided by the Severance Guarantee Plan, just as if Dialog were the acquiring company, because an Initial Triggering Event had occurred prior to November 1, 2015." [Compl. ¶ 31.] Specifically, Plaintiffs allege that:

- Between January and April 2016, (unidentified) "members of Atmel management" supposedly encouraged (unidentified) Atmel employees not to leave Atmel and find other employment by "assuring those employees that they were fully covered by the severance benefit guarantees provided by the Plan, regardless of whether Microchip was replacing Dialog as Atmel's merger partner";

- Atmel's Chief Executive Officer met with Atmel employees on January 13, 2016, explained that Dialog had time to make another (e.g., better) offer than Microchip, and allegedly stated that "all severance benefits provided by the Plan would remain available regardless of whether the ultimate purchases was Microchip or Atmel"; and

- Atmel's Senior Vice President, Global Human Resources sent a January 14, 2016 letter to Atmel employees reminding them of:

  the benefits for which you *may* be eligible in the event your employment is involuntarily terminated without Cause in connection with a Change of Control of the company, including an acquisition by Dialog or Microchip, . . . [that the] U.S. Severance Guarantee Program continues to remain in place . . . [and that t]he benefits under the U.S. Severance Guarantee Program [and other Atmel Plans] are subject to the terms and conditions of each as approved by the company's Compensation Committee.

[Compl. ¶¶ 29, 32-35; Exhibit 2 (emphasis added).] At the time of the January 14, 2016 letter, the definitive agreement with Dialog remained in place. [*See* Compl. ¶¶ 33-35.]

After Atmel subsequently signed a definitive agreement with Microchip in January 2016 (well after the November 1, 2015 deadline), Plaintiffs allege Atmel issued a memorandum with Frequently Asked Questions "("FAQs") on or about February 3, 2016 stating that "Microchip has agreed to honor each of your employment and compensatory contracts (including retention awards and employment, employment continuation, severance, incentive and change in control agreements) with Atmel, or its subsidiaries, *that are in effect immediately prior to the closing of the transaction.*" [Compl. ¶¶ 39-40; Exhibit 3 (emphasis added).] The Atmel Plan was not specifically referenced by name in the FAQs. [*See* Exhibit 3.]

Plaintiffs further allege that Microchip's Chief Financial Officer, Director of Finance and Vice President of European Finance held two meetings in February 2016 with certain Atmel employees and Microchip's CFO allegedly told them that Microchip would "honor" the Atmel Plan. [Compl. ¶¶ 42-43.][3] Plaintiffs claim that Microchip's CFO made those alleged comments either "acting as a Plan fiduciary and/or because Microchip *would* function as a fiduciary that would exercise discretionary control over the operation or administration of the Plan." [Compl. ¶¶ 42-43 (emphasis added).] However, Plaintiffs also admit that Atmel – not Microchip – was the Plan Administrator at that time. [Compl. ¶ 18.] Nor does the Complaint allege *facts* specific to how Microchip's CFO was acting as a fiduciary and exercising discretionary control over the operation or administration of the Atmel Plan during those alleged pre-merger meetings.

## III.    **Alleged Post-Merger Statements**

Plaintiffs do not allege facts establishing that Microchip actually took over fiduciary duties for the Atmel Plan from Atmel, namely, by "exercis[ing] discretionary authority or control respecting the management or administration of an employee benefit plan" under Section 3(21)(A)(i) of ERISA. 29 U.S.C. §1002(21)(A)(i). To the contrary, Plaintiffs admit that Atmel continued to exist as a wholly-owned subsidiary of Microchip after its acquisition. [Compl. ¶¶ 17, 49.] While Plaintiffs allege that Microchip "acted as a Plan fiduciary and/or functioned as a fiduciary that *would* exercise discretionary control over the operation or administration of the Plan" following the April 4, 2016 merger closing date, they point only to their allegations that Microchip supposedly terminated certain Atmel employees without cause, informed them that they were not

---

[3] Plaintiffs also allege Microchip and Atmel filed a Proxy Statement with the Securities and Exchange Commission in February 2016 that stated Microchip would honor all severance agreements disclosed to Microchip. [Compl. ¶ 41.] However, Plaintiffs do not allege that they were aware of the Proxy Statement during the relevant time period. *See Stein v. Smith,* 270 F. Supp. 2d 157, 173 (D. Mass. 2003) (finding statements made by defendant in SEC filings and press releases were not fiduciary statements made in the context of discussing plan benefits); *Worldcom, Inc. ERISA Litig.,* 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003) ("Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations.").

entitled to any benefits under the Atmel Plan, offered them different severance benefits on April 6, 2011 and, later, increased the offered severance benefits "in part to resolve any current disagreement or misunderstanding regarding severance benefits previously offered by Atmel," in exchange for signing the Separation Agreements with the release of "all claims against defendants, including a claim for the full amount of benefits guaranteed by the Plan." [ Compl. ¶¶ 5, 53, 55, 59, 76, 90, 93.] However, Plaintiffs also admit that they did not sign any Separation Agreements. [Compl. ¶ 63.] Rather, they later filed claims for benefits with the Plan Administrator – making clear they did not view their discussions with Microchip regarding termination and/or Separation Agreements to be an administration of claims under the Atmel Plan. [Compl. ¶¶ 66-69.]

## IV.    Benefits Claims

Plaintiffs allege the Plan Administrator denied their claims because the Atmel Plan had expired on November 1, 2015 with respect to any entity other than Dialog and because the agreement with Microchip was not the same as the agreement with Dialog (the only definitive agreement entered into within the deadline). [Compl. ¶¶ 66-67.] Plaintiffs further allege that they appealed the adverse benefits determinations, which the Plan Administrator denied because the agreement with Dialog did not result in a Change in Control under the Atmel Plan. [Compl. ¶¶ 68-69.]

## ARGUMENT

## I.    The Court Should Dismiss the Complaint Because It Fails to Provide a "Short and Plain Statement" of Plaintiffs' Claim.

The Court and Defendants are entitled to a short and plain statement showing that Plaintiffs are entitled to relief. Plaintiffs' Complaint, however, is a convoluted amalgam of facts that does not meet Rule 8(a)'s fundamental pleading requirement. *See Cafasso*, 637 F.3d at 1053, 1058-59 & n.10 (9th Cir. 2011) (affirming denial of leave to amend, in part, because proposed amended complaint violated Rule 8(a)).

Plaintiffs repeatedly claim the Atmel Plan's language is "plain" and "clear." Thus, they

have a simple denial of benefits claim and the tome of alleged statements and misdeeds by various Defendants, all of which the Complaint incorporates in every count, is irrelevant. The Court should dismiss the Complaint and require Plaintiffs to re-plead their denial of benefits claim in Count II consistent with their obligation under Rule 8(a), without pages of irrelevant facts about Defendants' purported statements and conduct.

## II.   Count I Should be Dismissed for Failing to State a Claim.

Count I purports to assert a litany of claims for "breach of fiduciary duties and the remedies of equitable relief, equitable estoppel, surcharge and disgorgement." [Compl. ¶¶ 72-87.] However, Plaintiffs' Complaint amounts to nothing more than a claim for benefits that is governed by Section 502(a)(1)(B) because it provides Plaintiffs an adequate remedy. Furthermore, many of the equitable relief requests asserted by Plaintiffs in Count I fail substantively as a matter of law.

### A.   Plaintiffs Cannot Seek Equitable Relief under Section 502(a)(3) Because Section 502(a)(1)(B) Provides Them Adequate Relief and the Equitable Relief Requested is Duplicative of, Not Alternative to, Their Benefits Claim.

ERISA Section 502(a) provides "a comprehensive civil enforcement scheme" and Congress intended the remedies it provides to be exclusive. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53-56 (1987). Accordingly, ERISA's enforcement scheme limits Plaintiffs to specified remedies for particular violations. *Id.*

Section 501(a)(1)(B) governs benefits claims. 29 U.S.C. § 1132(a)(1)(B) (allows a claimant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"). If – and only if – that section does not provide claimants with an appropriate remedy does Section 502(a)(3) allow them to seek "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(A)-(B); *see also Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (holding that Section 502(a)(3) is a "catchall" provision "offering appropriate equitable relief for injuries caused by violations that [ERISA] § 502 *does not elsewhere adequately remed*y" (emphasis added)); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (holding no basis for injunctive relief under Section 502(a)(3) "where [the

plaintiff] could have pursued an alternative and effective remedy under §502(a)(1)(B)").

The lower courts have uniformly applied *Variety's* circumspect approach to limit ERISA plan claimants' ability to pursue equitable relief actions under Section 502(a)(3). *See, e.g.*, *Wise v. Verizon Commc'ns*, 600 F.3d 1180, 1190 (9th Cir. 2010) (dismissing Section 502(a)(3) claims as duplicative of plaintiff's Section 502(a)(1) and (a)(2) claims); *Pette v. Int'l Union of Operating Engr's*, 2016 WL 4596338, at **7-8 (C.D. Cal. Sept. 2, 2016) (dismissing Section 502(a)(3) claims with prejudice as duplicative); *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1285-86 (N.D. Cal. 2012) (holding plaintiff was not entitled to equitable relief under Section 502(a)(3) as duplicative of Section 502(a)(1) claim for declaration of right to future benefits); *Pengilly v. Guardian Life Ins. Co. of Am.*, 81 F. Supp. 2d 1010, 1025-26 (N.D. Cal. 2000) (granting motion to dismiss Section (a)(3) claim because "(a)(1)(B) already provides plaintiff an adequate remedy if in fact Guardian has deprived him of benefits due him under his ERISA plan. . . . Therefore, the safety net of (a)(3) is not needed by plaintiff"); *Hoffman v. Am. Society for Technion-Israel Inst. of Tech., Inc.*, 2012 WL 3647803, at *2 (S.D. Cal. Aug. 22, 2012) (dismissing 502(a)(3) claims based on theories of equitable estoppel and surcharge as duplicative of 502(a)(1) benefits claim); *cf. Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948, 961-62 (9th Cir. 2006) (plaintiffs could state a 502(a)(1)(B) claim for benefits "based on an interpretation and enforcement of the Retirement Plan" as well as a 502(a)(3) claim for reformation if they were unable to recover benefits under the plan terms because the equitable remedy of reformation was only available under 502(a)(3) and, thus, the 502(a)(1)(B) and 502(a)(3) claims were "alternative— rather than duplicative—theories of liability" (emphasis added).

Moreover, if relief is available under Section 502(a)(1), there is no available claim under Section 502(a)(3) even if the plaintiff is unsuccessful on the denial §1132(a)(1)(B) claim. *See Pette*, 2016 WL 4596338, at **7-8 (rejecting plaintiffs' argument that it would be premature to dismiss their Section 502(a)(3) claims as duplicative when their other claims might not survive, as "'the availability of an adequate remedy under the law for *Varity* purposes[] does not mean, nor

does it guarantee, an adjudication in one's favor'" (quoting *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003))); *see also Johnson v. Buckley*, 356 F.3d 1067, 1078 (9th Cir. 2004) (finding district court properly denied plaintiffs' request to amend complaint to add a breach of fiduciary duty claim under Section 502(a)(3) when plaintiffs had an adequate remedy under Section 502(a)(1), even though the court ultimately determined they were not entitled to benefits under Section 502(a)(1)).

Plaintiffs have alleged no harm in Count I that cannot be remedied by the Court when it resolves the denial of benefits claim they allege in Count II. Plaintiffs' breach of fiduciary duty claim rests on their interpretation of the Atmel Plan: they allege that the Plan's "plain" terms entitled them to benefits and, therefore, it was a breach of fiduciary duty for Microchip to deny that they were entitled to those benefits. Without conceding that a breach of fiduciary duty claim could be based on a statement of a party's position about the benefits available under an ERISA plan, Microchip could not have breached any fiduciary duties it allegedly owed because Plaintiffs' interpretation of the Severance Plan's language is incorrect. At any rate, a claim that hinges on the interpretation of an ERISA plan amounts to nothing more than a claim for benefits that can be adequately remedied under Section 502(a)(1)(B). *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir. 1995) (claims that hinge on the interpretation of an ERISA plan, even if pled under Section 502(a)(3), are benefits claims).

Accordingly, the breach of fiduciary duty and equitable labels Plaintiffs attach to Count I are of no consequence because the relief they seek amounts to nothing more than an award of Atmel Plan benefits based on a theory that is duplicative of – not alternative to – their benefits claim (i.e., that the plain language of the Atmel Plan entitles them to benefits).[4] *See, e.g.*, *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1528 n.5 (9th Cir. 1993) ("It makes no difference that

---

[4] Defendants in no way concede that Plaintiff is entitled to Atmel Plan benefits under ERISA Section 502(a)(1)(B) for the claims asserted in this matter.

the Watkinses' claim is equitable in nature. The Court in *Mertens* looked to the substance of the remedy sought (i.e., injunction versus damages) rather than the label placed on that remedy."); *Schultz v. Prudential Ins. Co.*, 678 F. Supp. 2d 771, 777 (N.D. Ill. 2010) (denying Section502(a)(3) relief where the participant's claim for benefits based on ERISA statutory violation was a "thinly veiled effort to repackage a benefits claim"). Moreover, injunctive or declaratory relief is an available remedy under Section 502(a)(1)(B). *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985) (noting Section 502(a)(1)(B) allows a participant "to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future").

Although lengthy, each item in Plaintiffs' litany of requested relief is premised on their allegation that they are entitled to benefits based on their interpretation of the Atmel Plan's "plain" and "express" language:

- An injunction enjoining Defendants from refusing to pay the full amount of benefits under the Atmel Plan or continuing to "administer the Plan in bad faith" by claiming the Atmel Plan had expired;

- A declaration that the Atmel Plan exists and is valid and enforceable (thereby allowing Plaintiffs to recover benefits under the Atmel Plan);

- A declaration that Plaintiffs are entitled to receive the full amount of benefits under the Atmel Plan and/or restitution of the full amount of benefits under the Atmel Plan;

- An order equitably estopping Defendants from disputing the Atmel Plan participants' entitlement to the full amount of severance benefits; and

▪ An order declaring that the Separation Agreements Plaintiffs signed are void, unenforceable and rescinded based on the "plain" language of the Atmel Plan.[5]

Each of those requests would achieve one result: Plaintiffs being awarded Atmel Plan benefits under the "plain" and "express" language of the Atmel Plan. Nothing more. But Plaintiffs seek those benefits in Count II. This is not a case like *Moyle*, where the plaintiffs were seeking alternative equitable relief to reform the terms of an ERISA plan – a remedy that is not available under Section 502(a)(1)(B). 823 F.3d at 961-62. Rather, Plaintiffs here are seeking equitable relief that is merely duplicative of their benefits claim as both Counts I and II rely and depend on Plaintiffs' interpretation of the "plain" and "express" Atmel Plan language, which amounts to no more than a benefits claim.

Moreover, Plaintiffs have exhausted all administrative prerequisites for the Court to review the administrator's determinations. Indeed, Plaintiffs filed benefits claims between May and October of 2016 (after and despite Microchip allegedly telling them that they were not entitled to benefits). Plaintiffs admit the Plan Administrator denied their claims based on the language of the Atmel Plan. Plaintiffs do not allege that the Plan Administrator relied on the Defendants' alleged prior statements or the Separation Agreements in interpreting the Atmel Plan and making the benefits determinations.

Plaintiffs' litany of requested equitable relief includes a request, as "an equitable surcharge the difference between what defendants paid them in severance benefits and what defendants should have paid them in severance benefits, disgorgement of profits gained as a result of such breaches, plus interest and attorneys' fees." However those requests would provide nothing more

---

[5] While Plaintiffs also purport to seek "an injunction prohibiting defendants from continuing to delay the processing of any plaintiff's or class member's claim for ERISA benefits" [Compl. ¶ 9], they do not allege facts suggesting the Plan Administrator failed to follow the statutory timelines for responding to benefits claims and/or appeals. To the contrary, Plaintiffs admit that the Plan Administrator responded to their benefits claims "on the last possible day," conceding the claims denials were timely. [Compl. ¶ 66.]

than the payment of Atmel Plan benefits. Courts have uniformly rejected such "surcharge" claims under ERISA Section 502(a)(3) because they would provide nothing more than the payment of benefits allegedly due under the terms of an ERISA plan. *See, e.g.*, *Craft v. Health Care Serv. Corp.*, 2016 WL 1270433, at *6 (N.D. Ill. March 31, 2016) (finding surcharge requested under Section 502(a)(3) was not necessary or appropriate when "the same basis for seeking a surcharge also gives rise to Plaintiffs' claims under Section 502(a)(1)(B)" and "[t]he equitable claims in Count II are a merely a 'repackaged denial of benefits claims'"); *Brady*, 902 F. Supp. 2d at 1285 (granting motion to dismiss plaintiff's request for attorney's fees and costs under § 1132(a)(3) as duplicative); *Hoffman*, 2012 WL 3647803, at *2 (dismissing 502(a)(3) claim for surcharge as duplicative of 502(a)(1) benefits claim).

Nor does the Complaint allege facts showing that Defendants deprived the Atmel Plan of some assets or financial benefit that must be addressed as an equitable remedy separate and apart from Plaintiffs' disguised benefits claim. Further, disgorgement of "all profits attributable" to the allegedly unjustly withheld benefits also can be remedied under ERISA Section502(a)(1)(B). Because Plaintiffs have the opportunity to request prejudgment interest if they are successful in their Section 502(a)(1)(B) claim, requests for interest that the Atmel Plan allegedly earned due to the delay of benefit payments under Section 502(a)(3) are duplicative and, therefore, not "appropriate" relief under 502(a)(3). *See Biglands v. Raytheon Emps. Savings & Inv. Plan*, 801 F. Supp. 2d 781, 787 (N.D. Ill. 2011).

Plaintiffs' Complaint establishes that this is undeniably an action to recover benefits to which they claim to be entitled under the plan terms of the Atmel Plan. Either Plaintiffs are entitled to benefits under the Atmel Plan's plain language or they are not. If they are, they have an adequate remedy under Section 502(a)(1)(B). Accordingly, Plaintiffs are not entitled to equitable relief based on their breach of fiduciary duty theory. *See, e.g.*, *Nalbandian v. Lockeed Martin Corp.*, 2011 WL 338809, at *4 (N.D. Cal. Feb. 1, 2011) (noting "Plaintiffs still have not shown why relief on their first claim (recovery of plan benefits) is not an adequate remedy" after the order granting

motion to dismiss with leave to amend, especially when the allegations that defendants unlawfully administered the plan and unlawfully interpreted the plan documents were based solely on the same facts as the denial of benefits claims).

Plaintiffs' action lies solely under Section 502(a)(1)(B), whether they seek payment of their benefit claims, orders directing their claims be paid, or declaratory relief clarifying their rights and Defendants' purported obligations under the Atmel Plan. *Toohey v. Wyndham Worldwide Corp.*, 673 F. Supp. 2d 1223, 1230 (D. Or. 2009) ("Because §502(a)(1)(B) provides plaintiffs with a specific remedy, they may not seek relief under §502(a)(3)") (citing cases); *Zuckerman v. United of Omaha Life Ins. Co.*, 2010 U.S. Dist. LEXIS 73207 at * 24 (N.D. Ill. July 21, 2010) ("*Varity* and its progeny bar plaintiffs from getting two bites at essentially the same apple by asserting identical claims under §§502(a)(3) and 502(a)(1)(B).").

**B.      Plaintiffs Fail to Plead Facts Satisfying the Four-Factor Test for Injunctive Relief and, As a Matter of Law, Cannot Seek an Injunction Directing the Payment of Benefits.**

Initially, Plaintiffs fail to allege facts to meet their burden of seeking a injunctive relief for any of their claims. *Brady*, 902 F. Supp. 2d at 1281 (noting ERISA plaintiff seeking injunctive relief "must satisfy four-factor test by demonstrating: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for this injury; (3) that, based on balance of hardships between parties, remedy in equity is warranted; and (4) that public interest will not be disserved by permanent injunction").

Furthermore, even if Plaintiffs were able to pursue equitable relief under Section 502(a)(3) – which they are not – it does not provide for an injunction requiring a plan to pay a claimant-plaintiff because "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Knudson*, 534 U.S. at 210-11. Likewise, for equitable restitution, a plaintiff must show a right to "particular funds or property in the defendant's possession." *Id.* at 214. Plaintiffs' claim for benefits does not seek an equitable lien upon particular property but, rather, seeks to impose

monetary liability upon Defendants. Consequently, restitution is not an equitable remedy that could be granted under ERISA. *Id.* at 210 ("Almost invariably . . . suits seeking (whether by judgment, injunction or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.").

**C.     Plaintiffs Failed to Plead the Elements of an Equitable Estoppel Claim and Cannot Do So Based on Their Sole Theory of the Case.**

Although Plaintiffs also refer to "equitable estoppel" in their prayer for relief [Compl., Prayer for Relief ¶ 6], they do not – and cannot – plead the elements of equitable estoppel. In an ERISA case, an equitable estoppel claim requires a showing of (1) a material misrepresentation; (2) reasonable and detrimental reliance on the representation; (3) extraordinary circumstances; (4) the provisions of the plan at issue are ambiguous, such that reasonable persons could disagree as to their meaning or effect; and (5) the representations must have been made to the beneficiary involving an oral interpretation of the plan. *See Greany*, 973 F.2d at 821. There is no basis for an ERISA estoppel claim based on statements contrary to the unambiguous plan terms. *Id.* at 822.

Here, Plaintiffs' case rests on the argument that the "plain language" of the Atmel Plan unambiguously entitles them to benefits and it was a breach of fiduciary duty to tell them otherwise. Accordingly, any claim for equitable estoppel would directly refute – and destroy – their entire case. Nor have Plaintiffs alleged any "extraordinary circumstances" entitling them to equitable estoppel under ERISA. Accordingly, they fail to sufficiently plead a claim for equitable estoppel under ERISA.

**D.     Plaintiffs Cannot State a Viable Claim Based on Alleged Violation of ERISA Section 409 When They Did Not Identify Any Specific Plan Assets that Were Misused and Plaintiffs Bring the Claim to Benefit themselves, Not the Plan.**

In pertinent part, ERISA Section 409 states:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such

breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). ERISA Section 502(a)(2) provides for a civil action, but only "for appropriate relief under section 409." 29 U.S.C. § 1132(a)(2). The relief available under Section 502(a)(2), therefore, is limited by the provisions of Section 409.

In *Massachusetts Mutual Life Ins. Co. v. Russell*, the Supreme Court held that "[a] fair contextual reading of [Section 409(a) of] the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." 473 U.S. 134, 142 (1985) (citation omitted). Moreover, in *Russell*, the Supreme Court stressed "that the text of § 409(a) characterizes the relevant fiduciary relationship as one 'with respect to a plan,' and repeatedly identifies the 'plan' as the victim of any fiduciary breach and the recipient of any relief." *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 254 (2008) (citing *Russell*, 473 U.S. at 140). Accordingly, "any recovery under section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries." *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 714-15 (4th Cir. 1996) (citing *Russell*, 473 U.S. at 144).

Here, Plaintiffs ask the Court to remove and replace Microchip as Plan Administrator based on alleged violations of Section 409(a). [Compl. ¶¶ 96, 110.] As an initial matter, Plaintiffs fail to allege any loss the Atmel Plan suffered, or any misuse of plan funds, as a result of Defendants' purported fiduciary breaches. As the Supreme Court held in *Russell*, however, Section 409 is "primarily concerned with the possible misuse of plan assets." 473 U.S. 134, 142. Where, as here, only the general assets of Defendants are at risk, Section 409(a) provides no relief. General assets of an insurer simply are not "plan assets." *See, e.g., Engelhardt v. The Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir. 1998). Nor do Plaintiffs seek relief on behalf of the Atmel Plan. To the contrary, they named the Atmel Plan as a *defendant* in this matter. Plaintiffs merely seek

individual benefits and equitable remedies amounting to nothing more than they could receive in their denial of benefits claims in Count II. That is fatal to their 409 claim. *See McDonald v. Provident Indem. Life Ins. Co*., 60 F.3d 234, 237-38 (5th Cir. 1995) (plaintiffs' claim under Section 409 based upon the alleged failure of a plan fiduciary to disclose information about a premium rate increase failed because the plaintiffs failed to prove a loss to the plan).

In sum, Plaintiffs' claim for breach of ERISA Section 409 fails as a matter of law and must be dismissed. *See Russell*, 473 U.S. at 142; *Coyne & Delany Co.*, 102 F.3d at 714-15; *McDonald*, 60 F.3d at 237-38*; Crosby v. Electronic Data Systems Corp. Health Benefit Plan*, 2008 WL 5244437, at*3 (W.D.N.C. Dec. 15, 2008) (entering summary judgment dismissing the plaintiff's claim for relief under § 502(a)(2) because the plaintiff sought individual relief); *Hensley v. P.H. Glatfelter Co*., 2005 WL 2000322, at *3 (W.D.N.C. Aug. 19, 2005) (granting defendant's motion to dismiss 502(a)(2) claim because plaintiff sought individualized relief).

Ultimately, all of Plaintiffs claims rise or fall on the interpretation and application of an ERISA-governed plan. Plaintiffs cannot ask the Court to interpret the Atmel Plan under camouflaged equitable relief claims rather than reviewing the Plan Administrator's adverse benefits determinations under ERISA's deferential standard of review. To allow Plaintiffs to proceed with their claims under both Section 502(a)(1)(B) and 502(a)(3) "would promote [Section 502(a)(3)] from 'safety net to first line of attack, an outcome at odds with both the plain language of [Section 502(a)(1)(B)] and the statutory structure of [Section 502].'" *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 108 (4th Cir. 2006) (citing *Varity*, 516 U.S. at 512). Because Plaintiffs' claims for relief under Section 502(a)(3) in Count I all can be remedied by Plaintiffs' claim for benefits under Section 502(a)(1)(B) in Count II, their Section 502(a)(3) claims cannot proceed and must be dismissed with prejudice.

E.     **Plaintiffs Cannot Allege Claims on Behalf of Non-Parties When They Do Not Bring Their Claims As a Class Action.**

While Plaintiffs list a myriad of requested relief on behalf of "all Plan participants," including a declaration that the Atmel plan is valid and enforceable and all participants are entitled to benefits, and injunctive relief amounting to the payment of benefits to all participants, they fail to bring their claims as a class action and, thus, the relief they seek:

> contravenes the general rules applicable to Article III standing and its prudential limitations—in the normal course of affairs "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties" when stating a cause of action.

*Brady*, 902 F. Supp. 2d at 1283-84 (finding plaintiff could not pursue ERISA injunctive relief on behalf of "other similarly situated claimants" when she failed to bring her claim as a class action) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

Similarly, Plaintiffs cannot seek any relief related to the processing of any pending or future Atmel Plan benefits claims when Plaintiffs admit they already exhausted administrative remedies on their own benefits claims. Nor can Plaintiffs seek relief related to the Separation Agreements, such as a declaration that the releases obtained as part of those agreements are void and unenforceable. Plaintiffs admit they did not sign any such Separation Agreements and, thus, they do not have any legal rights and interests related to those agreements or any releases allegedly obtained by Microchip. *Id.* Accordingly, Plaintiffs' allegations of fraud and misrepresentation in regards to statements allegedly made to persuade employees to sign the Separation Agreements do not give rise to a plausible claim and, therefore, must be disregarded. *Cafasso*, 637 F.3d at 1055.[6]

---

[6] Plaintiffs loosely use terms such as "equitable estoppel" and "fraud" in the Complaint without alleging the elements of such claims, much less, pleading fraud with the particularity and plausibility required by Federal Rules of Civil Procedure 8(a) and 9(b). *Cafasso*, 637 F.3d at 1055 (citing Fed. R. Civ. P. 9(b). For example, they do not allege they relied to their detriment on Microchip's allegedly "false and fraudulent" statements that the Severance Program had expired. To the contrary, despite signing the Separation Agreements and accepting a severance payment in exchange for releasing all claims based on the Severance Program, they *still* filed benefit claims.

III.   **Count III Should be Dismissed for Failure to State a Claim.**

Count III should be dismissed because Plaintiffs fail to allege the requisite elements of a Section 510 claim. Section 510 of ERISA states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.

To establish a prima facie claim of interference under Section 510, "a plaintiff must show the existence of 1) prohibited employer conduct; 2) taken for the purpose of interfering with 3) the attainment of any right to which that employee may become entitled." *Stout v. Health Mgmt. Assocs., Inc.*, 2011 WL 1225575, at *3 (E.D. Wash. March 31, 2011) (dismissing Section 510 claim for failing to allege specific facts suggesting employee was terminated with the intent to interfere with his ERISA rights). In other words, a plaintiff alleging a Section 510 violation "must allege facts sufficient to plausibly establish that he was entitled to an ERISA-protected right, that he suffered an adverse employment action, and that the employer acted with the specific intent to interfere with this right." *Powers v. AT&T*, 2015 WL 5188714, at *6 (N.D. Cal. Sept. 4, 2015); (dismissing Section 510 claim) (citing *Kimbro v. At. Richfield CO.*, 889 F.2d 869, 881 (9th Cir. 1989) (noting Section 510 prohibits adverse employment action taken due to exercise of ERISA rights)); *cf. Odneal v. Pac. Gas & Elec. Co.*, 1991 WL 256524, at *3 (9th Cir. 1991) (affirming grant of summary judgment against plaintiff on a Section 510 interference claim as plaintiff failed to allege identify any negative employment action and alleged misrepresentations regarding benefits "are not tantamount to a change in the employment relationship"); *McMurtrie v. Specialty Minerals, Inc.*, 2009 WL 2579830, at *4 (E.D. Pa. Aug. 19, 2009) (alleged misrepresentations by employer's doctor regarding disability benefits eligibility did not impact the employer/employee

relationship and, thus, did not support a Section 510 claim). Because Plaintiffs have not pled such facts, the claim fails as a matter of law.

**IV.** **Microchip and the Atmel Plan Must be Dismissed as Improperly-Named Defendants**.

    **A.** **Microchip is not a Fiduciary of the Atmel Plan.**

"ERISA permits suits for breach of fiduciary duty only against ERISA defined fiduciaries." *Kyle Ry. Inc.*, 990 F.2d at 516. "To state a claim for breach of fiduciary duty under ERISA, Plaintiffs must establish that (1) Defendants were Plan fiduciaries, (2) Defendants breached their fiduciary duties, and (3) the breach caused harm to the Plaintiffs." *LYMS, Inc. v. Millimaki*, 2013 WL 1147534, at *16 (S.D. Cal. Mar. 19, 2013). Fiduciary status is a threshold issue for a Section 502(a)(3) claim and is to be determined by the Court as a matter of law. *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004). An ERISA fiduciary is one "who exercises discretionary authority or control respecting the management or administration" of an ERISA plan." *Kyle Ry. Inc.*, 990 F.2d at 516; *accord Mathews*, 362 F.3d at 1178 (for equitable relief claim under ERISA § 502(a)(3), "a plaintiff must show that the defendant is an ERISA fiduciary acting in its fiduciary capacity and that the defendant violated an ERISA-imposed fiduciary obligation") (citing 29 U.S.C. § 1002(21)(A)).

Employees performing ministerial functions are not fiduciaries. *Kyle Ry. Inc.*, 990 F.2d at 516. Communicating with employees about their rights and options under a plan generally is viewed as a ministerial function. *Chaganti v. Ceridian Benefits Servs., Inc.*, 208 F. App'x 541, 547 (9th Cir. 2006) (health plan administrator was not a fiduciary where it communicated with beneficiaries about their rights and options under a COBRA plan); *see also Monper*, 104 F. Supp. 3d at 1181 (recruiters and HR managers who told employees during merger that their retirement benefits would remain the same if they transferred to the new company were acting in ministerial role and, thus, their alleged misstatements did not give rise to a breach of fiduciary claim).

Here, the Complaint contains no factual allegations supporting the bare legal conclusion that Microchip was a fiduciary of the Atmel Plan. *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis.*

*Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008) (noting the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Although the Complaint baldly asserts that Microchip made pre-April 4, 2016 statements to Atmel employees because it supposedly *would be* the "post-merger Plan Administrator" [Compl. ¶ 32], Microchip could not act in a fiduciary manner in making those alleged statements when the Complaint admits it was not the fiduciary at that time. *See Brown v. Cal. Law Enforcement Ass'n, Long–Term Disability Plan*, 81 F. Supp. 3d 930, 935-36 (N.D. Cal. 2015) (finding employer did not act as a fiduciary in making comments about future benefits as "Defendants do not provide any cases that support the notion that a non-fiduciary becomes a fiduciary simply by making representations about future plan benefits, and the Court does not know of any such cases"). To the contrary, the Complaint admits that Atmel was the Plan Administrator of the Atmel Plan until "at least April 4, 2016," when it became a wholly-owned subsidiary of Microchip. [Compl. ¶ 18, 49.]

The Complaint proceeds to allege that Microchip allegedly breached fiduciary duties after April 4, 2016 by telling employees that the Atmel Plan had "expired" to obtain their agreement to the Separation Agreements. [Compl. ¶¶ 50-61.] That is a bare legal conclusion insufficient to survive a motion to dismiss absent any supporting facts showing that *Microchip* was acting as a fiduciary by exercising discretionary authority or control over the management or administration of the Atmel Plan at that time – or any other time – particularly given the Complaint's allegation that Atmel continued to exist as a separate legal entity. *See, e.g.*, *Brown v. Sysco Food Servs. of Metro N.Y., LLC*, 2014 WL 2566145, at *3 (D.N.J. June 6, 2014) (bald legal assertions that defendant was a fiduciary who breached fiduciary duties insufficient to survive motion to dismiss). Rather, any statement by Microchip about benefits available under the Atmel Plan was a statement of Microchip's position on the issue, not an actionable misrepresentation of "fact" that would support a fiduciary breach claim.

Moreover, Microchip was acting as an employer and not acting in an ERISA fiduciary

capacity when it interacted with Plaintiffs in the context of an employment termination. *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (division director who told plaintiff, during a termination meeting, that he could "keep all of [his] benefits" if he took early retirement did not have discretionary authority regarding the Plan, and thus, was not a fiduciary against whom a breach of fiduciary duty claim could be pled); *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1181 (W.D. Wash. 2015) (recruiters and HR managers who told employees during merger that their retirement benefits would remain the same if they transferred to the new company were acting in ministerial role and thus, their alleged misstatements, did not give rise to a breach of fiduciary claim under ERISA); *Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*, 494 F. App'x 129, 131-32 (2d Cir. 2012) (benefits manager who told plaintiff he would be eligible for retirement benefits does not acquire fiduciary status based on communication of information).

Furthermore, although a breach of fiduciary duty claim requires that Plaintiffs allege facts showing they were harmed, the only "harm" Plaintiffs are seeking to remedy is their assertions that they were denied benefits that, again, that is nothing more than a benefits claim that can be adequately addressed under Section 502(a)(1)(B). Plaintiffs still filed benefits claims that were ultimately administered by the Atmel Plan Administrator. Accordingly, Microchip must be dismissed as an improperly-named defendant.

**B.     The Atmel Plan is not a Proper Breach of Fiduciary Duty Action Defendant.**

It is well established that an ERISA claim for breach of fiduciary duty cannot be maintained against an ERISA plan. *See, e.g.*, *Mertens v. Kaiser Steel Ret. Plan,* 744 F. Supp. 917, 924 (N.D. Cal. 1990), *aff'd Mertens v. Black,* 948 F.2d 1105, 1106 (9th Cir. 1992); *accord Balsley*, 2009 WL 4823196, at *3 (dismissing plan as an improperly-named defendant in a Section 502(a)(3) breach of fiduciary claim). If the Court allows Plaintiffs breach of fiduciary duty claims to proceed, the Plan must be dismissed as an improperly-named defendant.

## <u>CONCLUSION</u>

Defendants respectfully request the Court dismiss Plaintiffs' Complaint in its entirety with leave to amend Count II, but without leave to amend Counts I and III. In addition, Defendants request that the Court dismiss the Atmel Plan (as to Counts I and III) and Microchip as improperly-named defendants.

DATED:  April 28, 2017

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:/s/ Mark G. Kisicki
    Mark G. Kisicki
    2415 East Camelback Road, Suite 800
    Phoenix, Arizona  85016
    Attorneys for Defendants

# PROOF OF SERVICE

I, Jessica Oliverson, declare:

I am a citizen of the United States and employed in Maricopa County, Arizona.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 2415 East Camelback Road, Suite 800, Phoenix, Arizona 85016.  On April 28, 2017, I served a copy of:

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' ERISA COMPLAINT FOR BENEFITS, EQUITABLE RELIEF AND TO PREVENT DEFENDANTS' CONTINUED INTERFERENCE WITH PLAINTIFFS' EXERCISE OF ERISA RIGHTS**

by electronic transmission.

I am familiar with the United States District Court, Northern District of California's practice for collecting and processing electronic filings.  Under that practice, documents are electronically filed with the court.  The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document.  Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.  Under said practice, the following CM/ECF users were served:

Michael Rubin                                          Attorneys for Plaintiff
Connie K. Chan
Ralphael N. Rajendra
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108

Cliff Palefsky
Keith Ehrman
MCGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA  94133

Executed on April 28, 2017, at Phoenix, Arizona.

/s/ Jessica Oliverson

29663910.1