1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

ROBIN BERMAN, et al.,

Case No.17-cv-01864-HSG

8

Plaintiffs,

9

v.

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

10

MICROCHIP TECHNOLOGY
INCORPORATED, et al.,

Re: Dkt. No. 9

11

Defendants.

12
13

Pending before the Court is a motion to dismiss by Defendants Microchip Technology, Inc.

14

("Microchip"), Atmel Corp. ("Atmel"), and Atmel Corp. U.S. Severance Guarantee Benefit

15

Program ("the Atmel Plan" or "the Plan").  Dkt. No. 9.  For the reasons set forth below, the Court

16

**GRANTS IN PART** and **DENIES IN PART** the motion.[1]

17

I.        **BACKGROUND**

18

    A.        **Factual Allegations**

19

        Plaintiffs Robin Berman, Bo Kang, Khashayar Mirfakhraei, Thang Van Vu, Donna Viera-

20

Castillo, Girish Ramesh, Patrick Hanley, Ilana Shternshain, and Mandy Schwarz are former

21

employees of Atmel and Microchip, as well as participants in the Atmel Plan.  Dkt. No. 1

22

("Complaint" or "Compl.") ¶ 13.  They bring this action under the Employee Retirement Income

23

Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").  For purposes of this motion, the

24

Court accepts the following as true.

25

        1.        **The Atmel Plan**

26

        Atmel, a supplier of "general purpose microcontrollers," created the Atmel Plan in July

27
28

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is
deemed submitted.  *See* Civil L.R. 7-1(b).

2015 in response to market speculation regarding the company's future and the resulting uncertainty among its approximately 1,800 U.S. employees. *See* Compl. ¶¶ 17-18. The company confirmed to employees "that it was seeking a merger partner" and notified them "that it was rolling out the [Atmel Plan] to encourage all employees to continue working for Atmel and any successor entity despite the uncertainty surrounding Atmel's corporate future." *Id.* ¶ 18. The Atmel Plan was covered by ERISA. *See id.* ¶ 14.

Atmel informed its employees of the specifics of the Plan in documents it delivered on July 9, 2015. *See* Dkt. No. 9-1, Ex. 1. In a letter, Atmel detailed the three primary severance benefits of the Plan: (1) a cash payment of between 25 percent and 50 percent of annual base salary, depending on the class of employee; (2) paid health insurance premiums for between three to six months, again depending on the class of employee; and (3) a prorated portion of the employee's annual incentive bonus for director-level and professional exempt employees. Compl. ¶ 20; *see also* Dkt. No. 9-1, Ex. 1, at 2 (letter from Atmel describing severance benefits) (ECF pagination).

In an addendum to the letter, Atmel set forth the terms of the Plan. First, it would "terminate" on November 1, 2015, "unless an Initial Triggering Event . . . occurred prior to November 1, 2015, in which event the [Atmel Plan] will remain in effect for 18 (eighteen) months following that Initial Triggering Event." Dkt. No. 9-1, Ex. 1, at 3 (ECF pagination). The addendum defined the "Initial Triggering Event" as the company's "enter[ing] into a definitive agreement . . . on or before November 1, 2015, that will result in a Change of Control of the Company." *Id.* Barring such an agreement, the Atmel Plan would "automatically expire," unless the board of directors expressly extended it. *Id.* If the Initial Triggering Event did occur, participants would be entitled to the Atmel Plan's benefits "if, but only if" (1) a "Change of Control actually occurs"; and (2) "[t]heir employment is terminated without 'Cause' by the Company (or its successor) at any time within 18 months of the execution date of the Definitive Agreement." *Id.*; *see also* Compl. ¶¶ 20-22.

The addendum also stated:

> The [Atmel Plan] will be administered and interpreted by the Company. Any decision made or other action taken by the Company prior to a Change of Control with respect to the [Atmel

2

Plan], and any interpretation by the Company prior to a Change of Control of any term or condition of the [Atmel Plan], or any related document, will be conclusive and binding on all persons and be given the maximum possible deference allowed by law.

Dkt. No. 9-1, Ex. 1, at 4 (ECF pagination); *see also* Compl. ¶ 23.

### 2. Atmel's Merger with Microchip and Defendants' Pre-Merger Conduct

On September 19, 2015, Atmel and a company named Dialog Semiconductor plc ("Dialog") executed and publicly announced a formal merger agreement. Compl. ¶ 27. Afterward Microchip, with whom Atmel had also been in discussions about a potential merger, continued to express interest in a merger or acquisition. *Id.* ¶ 29. Before the scheduled January 2016 closing date, Microchip "made an offer to acquire Atmel that Atmel's Board of Directors concluded was better than Dialog's offer." *Id.* After Dialog declined to match or improve upon Microchip's offer, Atmel "withdrew from its agreement with Dialog and entered into a merger agreement with Microchip on or about January 19, 2016." *Id.* ¶ 35. The merger closed on April 4, 2016. *Id.* As a result, Atmel became a wholly-owned subsidiary of Microchip. *Id.* ¶ 49.

Meanwhile, Plaintiffs and other Atmel employees became aware of Microchip's attempt to replace Dialog as Atmel's merger partner in mid-January 2016. *Id.* ¶ 30. "To alleviate employee concerns," Atmel management

> repeatedly assured its employees orally and in writing in January 2016 and thereafter that, even if Microchip replaced Dialog as the acquiring company, any employee terminated without cause after that acquisition and prior to March 19, 2017 [*i.e.*, 18 months after Atmel and Dialog entered a definitive agreement on September 19, 2015] would still be entitled to receive the severance benefits provided by the [Atmel] Plan, just as if Dialog were the acquiring company, because an Initial Triggering Event had occurred prior to November 1, 2015.

*Id.* ¶ 31. On January 13, 2016, in a meeting with employees at the Director level and above, Atmel's CEO explained that Microchip had made a better offer, that Dialog would be given four days to make a counteroffer, and "that all severance benefits provided by the [Atmel] Plan would remain available pursuant to the Plan, regardless of whether the ultimate purchaser was Microchip or Dialog." *Id.* ¶ 32. On January 14, 2016, Atmel's Senior Vice President of Global Human Resources sent a letter to "numerous" employees that acknowledged the speculation regarding the acquisition and confirmed that the Atmel Plan "'continues to remain in place,' and would entitle

employees to severance benefits 'in the event that your employment is involuntarily terminated without Cause in connection with a Change of Control of the company, including an acquisition by Dialog or Microchip.'" *Id.* ¶ 33. Between January and April 2016, "many other members of Atmel management similarly encouraged" Plaintiffs and other Atmel employees to remain at Atmel, "by assuring [them] that they were fully covered by the severance benefit guarantees provided by the [Atmel] Plan," regardless of who the ultimate merger partner was. *Id.* ¶ 34.

Prior to the closing of the merger, Atmel provided Microchip with documentation relating to the Atmel Plan, including summaries and estimates of how much would be owed to Atmel employees under the Plan. *Id.* ¶ 36. Atmel also "repeatedly communicated to Microchip its interpretation" of the Atmel Plan—namely, that it was in effect until mid-March 2017 because an Initial Triggering Event had occurred in September 2015, regardless of whether Dialog or Microchip was the ultimate merger partner. *Id.* ¶¶ 36-37. Microchip, in turn, "reviewed and approved" a memorandum that Atmel distributed to employees on February 3, 2016, which affirmed that "Microchip has agreed to honor each of your employment and compensatory contracts (including . . . severance . . . agreements) with Atmel, or its subsidiaries, that are in effect immediately prior to the closing of the transaction." *Id.* ¶¶ 39-40 (ellipses in original). The Proxy Statement that Microchip and Atmel filed with the Securities and Exchange Commission stated the same. *See id.* ¶ 41.

On February 29, 2016, three senior members of Microchip's finance team, including Chief Financial Officer Eric Bjornholt, met with senior members of Atmel's finance team. *Id.* ¶ 42. During that meeting, Bjornholt "assured the Atmel employees that, if Microchip acquired Atmel and then terminated Atmel employees, Microchip would honor the Plan." *Id.* That same morning, in another meeting with Atmel employees, Bjornholt "reiterated . . . that Microchip would honor the [Atmel] Plan if Microchip later terminated any Atmel employees." *Id.* ¶ 43.

### 3. Microchip's Post-Merger Conduct

In the week following the merger's closing, Microchip terminated several Atmel employees without cause, including plaintiffs Berman, Vu, Kang, Viera-Castillo, and Mirfakhraei, and "announced for the first time its position that the [Atmel] Plan had 'expired' on November 1,

2015 and therefore it had no obligation to pay, and would not pay, the severance benefits provided by the Plan to any" terminated employees. *Id.* ¶ 52. On April 6, 2016, Microchip sent letters to these terminated employees offering them four to six weeks of salary (or certain restricted stock units) as severance—a "fraction" of the amount they were entitled to under the Atmel Plan—in exchange for releasing all claims against Microchip and Atmel, including those "based on the enforceability of the severance benefit provisions of the" Atmel Plan. *Id.* ¶ 53. Approximately one week later, Microchip delivered a second letter to the terminated employees, increasing its severance offer to 50 percent of the cash salary benefit, the pro-rated bonus payments, and the health insurance premium payments that would be due under the Atmel Plan, again in exchange for releasing Atmel and Microchip from all claims ("the 50 Percent Offer"). *Id.* ¶ 55. Another wave of terminations without cause occurred between April 6, 2016 and March 19, 2017, plaintiffs Ramesh, Hanley, Shternshain, and Schwarz among them. *Id.* ¶ 58. Their severance offer was "similar in most material respects" to the 50 Percent Offer. *See id.* ¶ 59.

Many of the terminated employees agreed to Microchip's offer and signed the release. *See id.* ¶¶ 57, 61. Plaintiffs, however, did not. *Id.* ¶ 63. Instead, between May 20, 2016 and October 6, 2016, they each submitted a claim for benefits under the Atmel Plan to the plan administrator. *Id.* ¶ 66. Plaintiffs allege that Defendants "deliberately and repeatedly delayed giving responses to these claims, in an effort to induce more terminated employees to accept fewer severance benefits than they were due under the terms of the [Atmel] Plan . . . ." *Id.* ¶ 63. Between November 21, 2016 and November 29, 2016, Microchip's human resources manager, identifying herself as the plan administrator, denied each of Plaintiffs' claims on eligibility grounds, stating that the Atmel Plan had expired on November 1, 2015 "with respect to any acquiring entity other than Dialog, and because the merger agreement between Microchip and Atmel was not the 'same agreement' that Atmel had entered into with Dialog in September 2015." *Id.* ¶ 67.

Between January 18, 2017 and January 20, 2017, Plaintiffs each submitted an appeal of the plan administrator's denial. *Id.* ¶ 68. Plaintiffs allege that Microchip "delayed responding until virtually the last possible day for a response," *id.* ¶ 65, and then denied their appeals because Atmel's agreement with Dialog did not result in a change of control, which meant the Atmel Plan

expired on November 1, 2015 and that Plaintiffs were ineligible for benefits, *id.* ¶ 69.

### B. Procedural Posture

Plaintiffs filed the Complaint on April 4, 2017. Dkt. No. 1. Defendants moved to dismiss the Complaint on April 28, 2017. Dkt. No. 9 ("Mot."). Plaintiffs filed their opposition on May 31, 2017, Dkt. No. 22 ("Opp."), and Defendants replied on June 7, 2017, Dkt. No. 23 ("Reply"). On May 1, 2017, this case was related to *Schuman v. Microchip Technology Inc.*, No. 16-cv-05544-HSG, a putative class action alleging similar facts and bringing similar claims against Defendants. Dkt. No. 11.

## II. LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under [Federal] Rule [of Civil Procedure] 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).[2] Under Rule 8(a)(2), a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Accordingly, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

---

[2] Defendants suggest in a footnote that Plaintiffs are required to plead with the particularity required by Federal Rule of Civil Procedure 9(b). *See* Mot. at 20 n.6. But because they fail to develop that argument anywhere else in their briefing, the Court applies the pleading requirements of Rule 8.

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III. DISCUSSION

Plaintiffs allege "three independent claims for relief." *See* Opp. at 1. In their First Cause of Action, they seek equitable relief for Defendants' alleged breaches of their fiduciary duty under section 502(a)(3) of ERISA.[3] *See* Compl. ¶¶ 72-87; Opp. at 1. In their Second Cause of Action, they seek to recover the severance benefits they allege were wrongfully denied under section 502(a)(1)(B) of ERISA.[4] *See* Compl. ¶¶ 88-90; Opp. at 1. In their Third Cause of Action, Plaintiffs allege that Defendants unlawfully interfered with their ERISA rights under Section 510 of ERISA.[5] *See* Compl. ¶¶ 91-101; Opp. at 1.

Defendants seek dismissal of the entire Complaint on the grounds that it fails to provide a "short and plain statement showing that Plaintiffs are entitled to relief." Mot. at 9. Alternatively, Defendants move to dismiss the First and Third Causes of Action for failure to state a claim. *See id.* at 10-22. The Court considers each argument in turn.

### A. Defendants' Contention That Plaintiffs' Complaint Does Not Comply with Rule 8(a) Is Unsupported.

Defendants first argue that Plaintiffs' Complaint "is a convoluted amalgam of facts that does not meet Rule 8(a)'s fundamental pleading requirement"—one that includes "pages of irrelevant facts." Mot. at 9-10. The Court disagrees.

Defendants cite a sole source of authority in support of their argument: *Cafasso ex rel. U.S. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011). *Cafasso* was a False Claims Act case in which the Ninth Circuit affirmed the district court's denial of the relator's motion for leave to amend on Rule 8(a) grounds. 637 F.3d at 1059. There, however, "the relator tendered a *733-*

---

[3] 29 U.S.C. § 1132(a)(3).
[4] 29 U.S.C. § 1132(a)(1)(B).
[5] 29 U.S.C. § 1140.

*page* proposed amended complaint." *Id.* at 1058 (emphasis added). While acknowledging that "normally, verbosity or length is not by itself a basis for dismissing a complaint," *id.* (citation and internal quotation marks omitted), the court found that the district court was "well within its discretion" to deny leave to file the proposed tome, on grounds of futility and prejudice to the opposing party, *see id.* at 1058-59. Here, Plaintiffs' Complaint is a relatively concise 33 pages, rendering the *Cafasso* complaint, which "approach[ed] the magnitude of *War and Peace*," entirely distinguishable. *See id.* at 1059 (original italics).

All that remains of Defendants' argument on Rule 8(a) grounds is conclusory. They contend that because "Plaintiffs repeatedly claim the Atmel Plan's language is 'plain' and 'clear'," their claim is one for "a simple denial of benefits"—and that everything else in the Complaint is irrelevant and contravenes Rule 8(a). *See* Mot. at 9-10. But Defendants' attempt to recharacterize Plaintiffs' claims for breach of fiduciary duty, *see* Compl. ¶¶ 72-87, and interference with the exercise of ERISA rights, *see id.* ¶¶ 91-101, does not dispose of those claims. Moreover, Defendants fail to ground their Rule 8 argument in what the rule actually requires: "fair notice" of the claim "and the grounds upon which it rests." *See Erickson*, 551 U.S. at 94 (citation omitted). Nowhere do Defendants argue that Plaintiffs' Complaint fails to provide such notice. The Court accordingly declines to dismiss on this ground.

> **B.** **The First Cause of Action States a Claim for Breach of Fiduciary Duty as to Microchip, but Only Partially States a Claim for Equitable Relief.**

In the First Cause of Action, Plaintiffs allege a breach of the fiduciary duties set forth in section 404(a) of ERISA[6] by Defendants. *See* Compl. ¶ 81. Plaintiffs accordingly seek several forms of equitable relief under section 503(a)(3). Defendants raise several arguments as to why this cause of action should fail.

> **1.** **The Atmel Plan is not a proper defendant as to the First Cause of Action.**

First, while not dispositive of the First Cause of Action in its entirety, Defendants contend

---

[6] 29 U.S.C. § 1104(a).

that the Atmel Plan is an improperly-named defendant because "an ERISA claim for breach of fiduciary duty cannot be maintained against an ERISA plan." *See* Mot. at 24. The Court agrees.

An ERISA plan generally may be sued as an entity in a civil enforcement suit. 29 U.S.C. § 1132(d)(1). But because an ERISA plan "cannot, as an entity, act as a fiduciary with respect to its own assets," the plan itself "cannot be sued for breach of fiduciary duty." *Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991); *see also Balsley v. Delta Star Emp. Stock Ownership Plan*, No. C09-2952 TEH, 2009 WL 4823196, at *3 (N.D. Cal. Dec. 10, 2009) (dismissing breach of fiduciary duty claim under ERISA as to plan defendant); *Mertens v. Kaiser Steel Ret. Plan*, 744 F. Supp. 917, 924 (N.D. Cal. 1990) (stating, in ERISA action alleging breaches of fiduciary duty, "that the plan should not be named as a defendant"), *aff'd sub nom. Mertens v. Black*, 948 F.2d 1105, 1107 (9th Cir. 1991) ("[W]e hold that the district court did not err in dismissing the Plan as a defendant."). In *Acosta*, however, the Ninth Circuit cautioned that this "does not inexorably lead to the conclusion that a plan cannot be properly named in a suit alleging breach of fiduciary duty." 950 F.2d at 618. Instead, "to the extent that a plaintiff seeks to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan, the plan may be named as a defendant." *Id.* (quoting 29 U.S.C. §§ 1132(a)(1)(B), 1132(d)) (internal quotation marks omitted). Thus, while a plan may not be sued for breach of fiduciary duty under ERISA, it can be named in the lawsuit if the plaintiff also seeks to recover benefits, enforce rights, or clarify future rights under the plan. *See id.*

The propriety of naming the Atmel Plan as a defendant in the First Cause of Action is easily resolved by *Acosta*. Because an ERISA plan cannot be sued for breach of fiduciary duty, *see Acosta*, 950 F.2d at 618, the motion to dismiss the Atmel Plan is granted as to Plaintiffs' First Cause of Action. The Plan may be a named defendant as to the remaining causes of action, however.[7]

---

[7] Defendants "do[] not argue that the [Atmel] Plan is not a proper defendant" as to the Second Cause of Action, through which Plaintiffs seek to recover severance benefits. Reply at 12. This is consistent with the law. *See Acosta*, 950 F.2d at 618 (holding that "to the extent that a plaintiff seeks to recover benefits due to him under the terms of his plan, to enforce his rights under the

**2.  In their claim for breach of fiduciary duty, Plaintiffs are not required to seek relief on behalf of the Atmel Plan.**

Next, Defendants argue that Plaintiffs' claim for breach of fiduciary duty fails because they "fail to allege any loss the Atmel Plan suffered, or any misuse of plan funds, as a result" of such a breach.  *See* Mot. at 18.  Defendants also point to Plaintiffs' failure to "seek relief on behalf of the Atmel Plan."  *See id.*  Defendants, however, improperly conflate the requirements of bringing a claim for breach of fiduciary duty under section 502(a)(2), which is not at issue in this case, and section 502(a)(3), which is.  This argument is therefore inapposite to Plaintiffs' claim.

Section 502(a)(2) of ERISA permits a plan participant to bring a civil action under section 409.  *See* 29 U.S.C. § 1132(a)(2).  Section 409, in turn, governs liability for breach of fiduciary duty.  *See id.* § 1109(a).  It is well settled that recovery for a violation of section 409 "for breach of fiduciary duty inures to the benefit of the plan as a whole, and not to an individual beneficiary." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1073 (9th Cir. 2009) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-42 (1985)).  But in so stating, the *Paulsen* court referenced only those section 409 claims brought under section 502(a)(2).  In that same opinion, the court highlighted a critical distinction in discussing claims for breach of fiduciary duty brought under section 502(a)(3): "Unlike [section 502(a)(2)], which requires that relief sought must be on behalf of the entire plan, the Supreme Court has held that a participant or beneficiary has standing pursuant to [section 502(a)(3)] to seek *individual recovery* in the form of 'appropriate equitable relief.'"  *See id.* at 1075 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 509-10 (1996)) (emphasis added); *see also Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014) ("Supreme Court and Ninth Circuit authorities have both authorized a claim under section [502](a)*(3)* for a fiduciary's improper handling of an individual benefit claim in violation of its

terms of the plan, or to clarify his rights to future benefits under the terms of the plan, the plan may be named as a defendant").  In their motion, Defendants do not address whether the Plan may be named as a defendant in Plaintiffs' Third Cause of Action—the interference claim—stating only that "an ERISA claim for breach of fiduciary duty cannot be maintained against an ERISA plan."  Mot. at 24.  In their reply, Defendants then attempt to broaden that argument by incorrectly asserting that their motion "clearly states" that the Atmel Plan "is not a proper defendant as to Plaintiffs' *non-benefits claims in Count I and III*, as supported by clear case law."  Reply at 12 (emphasis added).  But Defendants provide no case law on the question of whether the Atmel Plan is a proper defendant as to the interference claim, so the Court declines to dismiss the Plan on this ground.

United States District Court
Northern District of California

fiduciary duties.") (original emphasis).

Section 502(a)(2) is not at issue in this case. Plaintiffs, rather, seek relief for Defendants' alleged breach of fiduciary duty under section 502(a)(3), which is plainly permitted. Plaintiffs' failure to seek relief on behalf of the Atmel Plan therefore does not preclude their First Cause of Action.

### 3. Plaintiffs adequately allege that Microchip was a fiduciary in breach of its duties under ERISA.

Defendants next turn to the substance of Plaintiffs' claim for breach of fiduciary duty, contending that "the Complaint contains no factual allegations supporting the bare legal conclusion that Microchip was a fiduciary of the Atmel Plan," thus precluding a cause of action for breach of fiduciary duty. *See* Mot. at 22. "To establish an action for equitable relief under ERISA section 502(a)(3) [for breach of fiduciary duty], the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate [ ] ERISA-imposed fiduciary obligations." *See Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (citations and internal quotation marks omitted) (original brackets). The Court considers each prong of the *Mathews* inquiry in turn.[8]

### a. Plaintiffs sufficiently plead Microchip's fiduciary status.

Plaintiffs assert that "Atmel and Microchip, as Atmel's successor, are named fiduciaries and are therefore fiduciaries 'for all purposes of the plan.'" Opp. at 16 (citation omitted). Defendants, for their part, attempt to assert the merger's closing date as a sort of dividing line. They argue that before the merger's closing date, the Complaint refers to Microchip as the "post-merger Plan Administrator" in the conditional tense, amounting to an admission by Plaintiffs that Microchip was not a fiduciary prior to the merger's closing. *See* Mot. at 23 (quoting Compl. ¶ 38). And, after the merger's closing, Defendants argue that it was acting as an employer, not a fiduciary, "when it interacted with Plaintiffs in the context of an employment termination." *See id.*

---

[8] Defendants devote their briefing to arguments regarding Microchip's fiduciary status, and do not appear to dispute Atmel's fiduciary status prior to the merger's closing date. The Court accordingly declines to reach the question of Atmel's fiduciary status at this stage of the litigation.

at 23-24. The Court finds that Plaintiffs have pled sufficient facts to establish Microchip as a fiduciary.

"To determine whether one qualifies as a fiduciary, courts ask whether one exercises discretionary authority or control respecting management over the plan . . . or has discretionary authority or responsibility in the administration of the plan." *Brown v. Cal. Law Enforcement Ass'n, Long-Term Disability Plan*, 81 F. Supp. 3d 930, 934 (N.D. Cal. 2015) (citing 29 U.S.C. § 1002(21)(A)). The determination of a corporation's fiduciary status is a conclusion of law, *Mathews*, 362 F.3d at 1178 (citing *Varity*, 516 U.S. at 498)[9], and as a matter of law, "[f]iduciary conduct encompasses conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation," *id.* (quoting *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1048 (9th Cir. 2000) (en banc)) (internal quotation marks and brackets omitted).

Under the test set forth in *Brown*, Plaintiffs have pled sufficient facts to allege Microchip's fiduciary status.[10] Specifically, Plaintiffs allege that after the closing of the merger, Microchip announced that "no former Atmel employees would be entitled to any severance benefits under the Plan," which was "based on its position that the [Atmel] Plan had 'expired' on November 1, 2015." Compl. ¶ 52. Microchip was, in other words, describing the "likely future of plan benefits" under the Atmel Plan—namely, that there would be no such benefits. Such a statement by Microchip also constitutes its management and exercise of authority over the Atmel Plan. *See Brown*, 81 F. Supp. 3d at 934.

Defendants' arguments to the contrary are unavailing. In arguing that Microchip "was

---

[9] *But see Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 913 (9th Cir. 1997) ("[A] conclusion that someone is not an ERISA fiduciary is essentially a factual conclusion."). Even if *Steen* rather than *Mathews* states the controlling standard, the Court is satisfied that as a factual matter, Plaintiffs have pled sufficient facts to allege that Microchip is a fiduciary, at least at this stage of the litigation.

[10] In their opposition, Plaintiffs elect to cite non-binding case authority in support of their argument that Microchip is a fiduciary to the Atmel Plan because Microchip is a "named fiduciar[y]" of the Plan within the meaning of 29 U.S.C. § 1102(a)(2). *See* Opp. at 15-16. But the issue here is whether Plaintiffs have sufficiently *alleged* that Microchip was a fiduciary. Plaintiffs did not allege in the Complaint that Microchip is a named fiduciary; nor did they even attach the Atmel Plan to the Complaint. The Court thus looks to whether Plaintiffs have pled sufficient facts to establish that, for pleading purposes, Microchip is a fiduciary under the test set forth in *Brown*.

acting as an employer and not acting in an ERISA fiduciary capacity when it interacted with Plaintiffs in the context of an employment termination," *see* Mot. at 23-24, Defendants fail to properly consider the legal effect of an employer-fiduciary making representations about the future of plan benefits. "[The Supreme Court's opinion in] *Varity* holds that a firm which has dual roles as both plan administrator and employer is acting in its administrator-fiduciary capacity when people within the firm 'who had authority to communicate as fiduciaries' make representations to beneficiaries about future plan benefits." *See Brown*, 81 F. Supp. 3d at 935. In addition, as a practical matter, in these circumstances "reasonable employees" could have thought that Microchip "was communicating with them *both* in its capacity as employer *and* in its capacity as plan administrator." *See Varity*, 516 U.S. at 503 (original emphasis). While reasonable employees "might not have distinguished consciously between the two roles" of Microchip, "they would have known that the employer was their plan administrator and had expert knowledge about how their plan worked." *See id.*

Defendants also argue that "Microchip could not act in a fiduciary manner in making [pre-merger] statements when the Complaint admits it was not the fiduciary at that time." Mot. at 23. Specifically, Defendants cite the Complaint's characterization of Microchip as the plan administrator-to-be prior to the closing of the merger, which they argue amounts to a concession that Microchip did not become a fiduciary until the merger closed. *See* Compl. ¶ 38 ("Microchip repeatedly, affirmatively, and deliberately caused Atmel management and Atmel employees to believe that Microchip, as the post-merger Plan Administrator, recognized the continued existence of the [Atmel] Plan, intended to honor the [Atmel] Plan, and would pay all severance benefits provided by the Plan . . . ."). While it is true that Plaintiffs fail to allege facts showing that Microchip exercised or had "discretionary authority or responsibility in the administration of the plan" *prior* to the merger, *see Brown*, 81 F. Supp. 3d at 934, that does not affect the ultimate question of its fiduciary status. As discussed below, however, that temporal distinction does affect what conduct by Microchip may qualify as a breach of its fiduciary duties.

//

//

**b.** **Plaintiffs allege sufficient facts supporting their allegation that Microchip breached its fiduciary duties.**

Having established that Plaintiffs have sufficiently pled Microchip's fiduciary status, the Court turns to whether Plaintiffs have sufficiently pled the element of breach. "In general terms, fiduciary responsibility under ERISA is simply stated." *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000). Section 404 of ERISA requires fiduciaries "to discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and, as relevant here, "for the exclusive purpose of providing benefits to participants and their beneficiaries . . . ." 29 U.S.C. § 1104(a)(1)(A)(i). ERISA "fiduciaries breach their duties if they mislead plan participants or misrepresent the terms of administration of a plan." *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 744 (9th Cir. 2017) (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995)). They also have an "obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Id.* (citing *Barker*, 64 F.3d at 1403).

Plaintiffs sufficiently allege that Microchip breached its fiduciary duties. For example, they allege that Microchip misled employees in telling them that the Atmel Plan "had 'expired' on November 1, 2015 and therefore it had no obligation to pay, and would not pay, the severance benefits provided by the [Atmel] Plan" to the employees Microchip terminated without cause. Compl. ¶¶ 52-53. Plaintiffs also allege that Microchip "failed to inform" those terminated employees that "the [Atmel] Plan was still in existence and in effect," providing those employees with rights under ERISA. *See id.* ¶ 53; *see also id.* ¶¶ 55, 56, 60.

Defendants' argument to the contrary again fails. They contend that the fact that Plaintiffs still filed for benefits under the Atmel Plan, even after Microchip "expressed its opinion" that the Plan had expired and that employees were not entitled to benefits, "negat[es] any suggestion that [Plaintiffs] felt Microchip's statements were made as a plan fiduciary exercising discretionary authority or control over the management or administration of the Atmel Plan at that time." *See* Reply at 11. This argument amounts to the assertion that because Plaintiffs filed for benefits under the Atmel Plan—despite Defendants' alleged misrepresentations meant to discourage them from doing just that—there is no cause of action for breach of fiduciary duty. The Court

disagrees.

As mentioned above, however, Plaintiffs' failure to allege facts showing that Microchip was a fiduciary *before* the closing of the merger does preclude it from arguing that conduct that took place before the merger was a breach of fiduciary duty. *See* 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."); Compl. ¶ 79 (alleging breach based on Microchip's pre-merger "failure to disclose . . . that defendants intended not to provide the benefits described in the [Atmel Plan]," "affirmative[] misrepresent[ation] that defendants would honor the [Atmel Plan] when defendants did not intend to do so," and "deliberate[] misleading [of] participants into believing that defendants would pay the full amount of severance benefits provided by the [Atmel Plan]").

### 4. Plaintiffs have stated a claim to some equitable relief under section 502(a)(3).

In their final argument against Plaintiffs' claim for breach of fiduciary duty, Defendants contend that even assuming Plaintiffs did state a claim, they fail to allege facts showing they are entitled to the specific forms of equitable relief they seek. *See generally* Mot. at 10-20. Before turning to that argument, the Court addresses two threshold issues on the question of relief: whether Plaintiffs (1) are permitted to bring suit on behalf of all of the Atmel Plan participants without bringing their claims as a class action, and (2) may simultaneously bring a claim for benefits under section 502(a)(1)(B) and a claim for equitable relief under section 502(a)(3).

#### a. Plaintiffs may bring their claim for equitable relief under section 502(a)(3) on behalf of all participants of the Atmel Plan without bringing their claims as a class action.

Defendants argue that Plaintiffs improperly seek "a myriad of requested relief on behalf of 'all Plan participants'" without bringing their claims as a class action, in contravention of constitutional standing rules. *See* Mot. at 20. In support of this argument, Defendants cite *Brady v. United of Omaha Life Ins. Co.*, 902 F. Supp. 2d 1274, 1283-84 (N.D. Cal. 2012), in which the plaintiff sought equitable relief under section 502(a)(3). Specifically, she sought an injunction barring the defendant life insurance company "from obtaining input from biased medical

15

consultants," which the court noted "would provide relief for all other similarly situated claimants." *See id.* But the court also noted that the plaintiff "ha[d] not brought her claim as a class action, the proper mechanism for doing so," and that "the relief she [sought] contravene[d] the general rules applicable to Article III standing and its prudential limitations." *See id.* Defendants accordingly cite *Brady* for the principle that "Plaintiffs cannot seek any relief related to the process of any pending or future Atmel Plan benefits claims when Plaintiffs admit they already exhausted administrative remedies on their own benefits claims," or to the releases that Plaintiffs admit they did not sign. *See* Mot. at 20.

But Defendants fail to address the factor distinguishing this case from *Brady*: here, Plaintiffs bring a cause of action for breach of fiduciary duty. The case of *Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198 (9th Cir. 2003), is instructive here. In *Shaver*, the plaintiffs alleged that the defendants violated their fiduciary duty by failing to maintain accurate "records of the fund's operation." 332 F.3d at 1199. The court noted that, while the plaintiffs "did not allege that any loss occurred" as a result of the alleged breach, such an omission was "not fatal" to this cause of action. *See id.* at 1203. Distinguishing from cases in which a participant seeks monetary relief from an ERISA fiduciary, the court found that the plaintiffs were "seek[ing] purely equitable relief," and that

> [r]equiring a showing of loss in such a case would be to say that the fiduciaries are free to ignore their duties so long as they do no tangible harm, and that the beneficiaries are powerless to rein in the fiduciaries' imprudent behavior until some actual damage has been done. This result is not supported by the language of ERISA, the common law, or common sense.

*Id.* The Ninth Circuit reached a similar conclusion in another ERISA case involving a claim for breach of fiduciary duty, in which the plaintiffs sought a constructive trust, in part under section 502(a)(3), *see Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1412-13 (9th Cir. 1988), despite the fact that they had already "be[en] paid the monies they were actuarially due under the plan," *see id.* at 1409. The court held that the plaintiffs were permitted to "seek relief on behalf of *all* plan participants and beneficiaries, not to compensate them for damages suffered, but to deny the fiduciaries profits from their alleged breach and thereby to deter future breaches of ERISA's duty of loyalty." *See id.* at 1414 (original emphasis);

*see also id.* at 1412 ("The key to removing a fiduciary's financial incentive to breach his duty of loyalty is to make sure that the fiduciary is not allowed to keep any ill-gotten profits. Whether the ill-gotten profits are returned to an ERISA plan or ultimately distributed to plan participants and beneficiaries is not critical to effective deterrence.").

At bottom, the principles set forth in *Shaver* and *Amalgamated Clothing* allow an ERISA plaintiff to bring a claim for breach of fiduciary duty, even when there is no allegation of loss. It is therefore clear that Plaintiffs may bring this cause of action for breach of fiduciary duty on behalf of all participants to the extent they seek purely equitable relief, without bringing their claims as a class action.

> **b.** **Plaintiffs may seek equitable relief under section 502(a)(3) in addition to their claims under section 502(a)(1)(B) to the extent that relief obtained under the latter provision does not negate the need for equitable relief.**

Defendants next argue that because Plaintiffs' claims "amount[] to nothing more than a claim for benefits," ERISA provides them adequate relief under section 502(a)(1)(B), precluding equitable relief under section 502(a)(3) as a matter of law. *See* Mot. at 10. Unlike section 502(a)(1)(B), which permits an ERISA participant or beneficiary to bring an action to recover benefits, to enforce his rights under the plan, or to clarify his rights to future benefits under the plan, 29 U.S.C. § 1132(a)(1)(B), section 503(a)(3) is a catch-all provision that permits an action "*to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," 29 U.S.C. § 1132(a)(3) (emphasis added). Given the Supreme Court's recognition that "where Congress elsewhere provide[s] adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate,'" *see Varity*, 516 U.S. at 515 (citation omitted), the question becomes whether some other section of ERISA provides adequate relief—*i.e.*, that would negate the need for equitable relief. Accordingly, courts adhere to the general rule that an ERISA plaintiff may "pursu[e] simultaneous claims under [section 502(a)(1)(B)] and [section 502(a)(3)]," *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 965 (9th Cir. 2016), provided that there is no double recovery, *id.* (citing *Silva v. Metro. Life. Ins. Co.*, 762 F.3d 711, 726 (8th

Cir. 2014)).

<b>c.     Plaintiffs have stated a claim to limited injunctive relief,<br>surcharge, and equitable estoppel under section 502(a)(3).</b>

With the principles above in mind, the Court next turns to Plaintiffs' specific claims under section 502(a)(3) for declaratory and injunctive relief, surcharge, and equitable estoppel.[11]

<b>i.     Plaintiffs fail to state a claim for declaratory relief under<br>section 502(a)(3), and only one of their claims for<br>injunctive relief under that provision survive.</b>

Plaintiffs seek a declaration that "the Plan is valid and enforceable and remains in existence," and that "all Plan participants, including plaintiffs, are entitled to the full amount of benefits." *See* Compl. ¶ 85. They also seek injunctive relief (1) prohibiting Defendants from "continuing to deny Plan benefits to eligible employees"; (2) prohibiting Defendants "from continuing to make false and fraudulent statements" about the existence of the Atmel Plan or any employee's right to benefits under the Plan; (3) prohibiting Defendants "from continuing to delay the processing of any Plan member's claim for ERISA benefits"; and (4) "requiring defendants to pay the full amounts and benefits" promised under the Atmel Plan. *Id.*

Several of these claims are duplicative of relief available under other provisions of ERISA. Plaintiffs' request for declaratory relief under section 502(a)(3) is barred because such relief is nothing more than a request for the Court to "clarify [their] rights to future benefits under the terms of the plan"—relief for which ERISA provides under section 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B). That leaves Plaintiffs' request for injunctive relief. While such relief is clearly encompassed by section 502(a)(3), *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) ("Congress intended 'equitable relief' to include only those types of relief that were typically available in equity, such as injunction, mandamus, and restitution."), the Court still must inquire as to whether this claim is duplicative, *see Moyle*, 823 F.3d at 961. Plaintiffs' request that the Court enjoin Defendants from "continuing to deny Plan benefits to eligible employees" and require

---

[11] Plaintiffs also seek "removal and replacement of Microchip as Plan Administrator with a new and different Plan Administrator that complies with its fiduciary obligations to Plan participants." Compl. ¶ 86. Defendants list this claim for relief as an issue to be decided, *see* Mot. at 4, but fail to address it specifically. Accordingly, the Court does not assess this claim at this juncture.

Defendants "to pay the full amounts and benefits promised under the Atmel Plan," *see* Compl. ¶ 85, is no more than a plea to enforce the terms of the plan—a remedy which is available under section 502(a)(1)(B), *see* 29 U.S.C. 1132(a)(1)(B) ("A civil action may be brought by a participant or beneficiary . . . to enforce his rights under the terms of the plan . . . ."). And their request that the Court enjoin Defendants from "continuing to make false and fraudulent statements" about the existence of the Atmel Plan, or any employee's right to benefits under the Plan, *see* Compl. ¶ 85, amounts to a request for the Court to "clarify [Plaintiffs'] rights to future benefits under the terms of the plan," *see* 29 U.S.C. § 1132(a)(1)(B).

Only one of Plaintiffs' claims for injunctive relief remains: that the Court prohibit Defendants "from continuing to delay the processing of any Plan member's claim for ERISA benefits." *See* Compl. ¶ 85. For a plaintiff to establish that it is entitled to an injunction, it "must satisfy a four-factor test," and show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 827 (9th Cir. 2017) (quoting *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1184 (9th Cir. 2011) (per curiam)). In support of their claim, Plaintiffs allege that Defendants, "[d]espite having no justification for doing so . . . deliberately and repeatedly delayed giving responses to these claims . . . despite knowing from the outset that they intended to deny those claims," based on their position that the Atmel Plan no longer existed. *See* Compl. ¶ 63. Plaintiffs further allege that when they appealed those denials, Defendants "delayed responding until virtually the last possible day for a response and then denied their appeals on the identical erroneous and wrongful grounds." *Id.* ¶ 64.

Viewing the alleged facts in the light most favorable to Plaintiffs, the Court concludes that they have sufficiently stated a claim for injunctive relief. Delay in paying out ERISA benefits is grounds for a finding of irreparable harm. *See Bd. of Trs. of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, No. 12-cv-05655-JCS, 2014 WL 4383062, at *4 (N.D. Cal. Sept.

4, 2014) (collecting cases).[12] "Generally, a finding of irreparable harm tips the balance of hardships that may result from an injunction in favor of the plaintiff," *id.*, and the Court finds that to be the case here, particularly given that the narrow scope of the injunctive relief would prohibit Defendants only from improperly delaying the fulfillment of their obligations under ERISA. Nor would monetary damages necessarily be adequate to compensate Plaintiffs for the harm caused by a delay in payment. And finally, "the entry of a permanent injunction is in the public interest because it will support the integrity" of the Atmel Plan. *See id.* (citing cases).

Accordingly, Plaintiffs have pled sufficient facts to state a claim for an injunction enjoining Defendants from continuing to delay the processing of any Plan participant's benefits. The Court dismisses Plaintiffs' remaining claims for injunctive relief and all of Plaintiffs' claims for declaratory relief under section 502(a)(3). Moreover, because the Court is satisfied that there are no additional facts that Plaintiffs could plead that would render this relief non-duplicative, the remaining claims are dismissed without leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (enumerating futility as a permissible basis on which to deny leave to amend).

### ii. Plaintiffs have pled sufficient facts to state a claim for surcharge.

Plaintiffs next seek to "recover as an equitable surcharge the difference between what defendants paid them in severance benefits and what defendants should have paid them in severance benefits, disgorgement of profits gained as a result of defendants' breaches, plus interest and attorneys' fees." Compl. ¶ 87.

The remedy of surcharge provides an ERISA beneficiary with "monetary 'compensation' for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment." *See CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011) (citation omitted); *see also*

---

[12] The Court does, however, agree with Defendants that Plaintiffs' allegation that Defendants "delayed responding until virtually the last possible day for a response and then denied their appeals" comes close to an admission that Defendants' denial on appeal was, in fact, timely. *See* Mot. at 14 n.5; Reply at 5. But Plaintiffs also make broader allegations that Defendants "deliberately and repeatedly delayed" responding to their claims for benefits. *See* Compl. ¶ 63. Because the facts must be construed in Plaintiffs' favor at the motion to dismiss stage, the Court finds that such allegations sufficiently plead irreparable harm.

*id.* at 442 (stating that the "surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed on that fiduciary"). It is well-established that "appropriate equitable relief" under section 502(a)(3) includes surcharge. *See Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014). Moreover, such relief would not be duplicative as Defendants contend. *See* Mot. at 14-15. Rather, unlike the relief available under section 502(a)(1)(B), surcharge would provide Plaintiffs with a remedy for *other* losses caused by Defendants' alleged breach of fiduciary duty, *beyond* the amount of benefits allegedly withheld.

"[T]o obtain relief by surcharge for a breach of the ERISA trustee's duties, a plan participant or beneficiary must show that the violation injured him or her, but need only show harm and causation, not detrimental reliance." *Gabriel*, 773 F.3d at 957-58 (quoting *Amara*, 563 U.S. at 444) (internal punctuation marks omitted). Under the "unjust enrichment" theory of surcharge, a fiduciary "who gains a benefit by breaching his or her duty must return that benefit to the beneficiary." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012). "[T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *Amara*, 563 U.S. at 441.

Plaintiffs sufficiently allege that they are entitled to surcharge on a theory of unjust enrichment. *See* Compl. ¶ 87. For example, they allege that Microchip "intimidated and coerced Atmel employees . . . into waiving statutory rights and benefits and accepting significant 'discounts' on the severance benefits those employees were legally owed and guaranteed under the [Atmel] Plan, in order to save Microchip money." *Id.* ¶ 51; *see also id.* ¶ 56 (alleging that Microchip misled employees into accepting a smaller severance package "as part of a calculated plan by Microchip to save itself money"); *id.* ¶ 60 (same). Additionally, the Court rejects Defendants' argument that Plaintiffs' request for prejudgment interest on the surcharge amount is duplicative of their claim for benefits under section 502(a)(1)(B) because "Plaintiffs have the opportunity to request prejudgment benefits if they are successful in their Section 502(a)(1)(B) claim." Mot. at 15. As discussed above, surcharge provides relief beyond and distinct from that provided for in section 502(a)(1)(B), so the interest on the surcharge amount cannot be duplicative

of any interest awarded on their claim for benefits.[13]

Accordingly, Defendants' motion is denied as to Plaintiffs' claim for surcharge.

### iii. Plaintiffs have pled sufficient facts to state a claim for equitable estoppel.

Plaintiffs also seek, "[t]o the extent that any Plan language is found to be ambiguous . . . an order equitably estopping defendants from disputing the Plan participants' entitlement to the full amount of severance benefits" provided by the Atmel Plan to employees terminated without cause after the merger. *See* Compl. at 32 (prayer for relief).

The remedy of equitable estoppel "holds the fiduciary to what it had promised and operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." *Gabriel*, 773 F.3d at 955 (quoting *Amara*, 563 U.S. at 441). It is among the equitable remedies contemplated in section 502(a)(3), *see Amara*, 563 U.S. at 441, and Defendants do not dispute that such relief is not provided elsewhere in ERISA.

> Under this theory of relief[,] "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the [party asserting the estoppel] must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*Gabriel*, 773 F.3d at 955 (quoting *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992)). In the ERISA context, "the party asserting estoppel . . . must also allege (1) extraordinary circumstances; (2) 'that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect'; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan." *Id.* at 957 (quoting *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997)).

At first, Defendants challenged Plaintiffs' allegations as to two of the six prongs of the equitable estoppel standard. They suggested that because "Plaintiffs' case rests on the argument that the 'plain language' of the Atmel Plan unambiguously entitles them to benefits and it was a

---

[13] Defendants suggest that Plaintiffs' request for attorneys' fees is also duplicative, *see* Mot. at 14-15, but section 502 expressly provides for such relief, *see* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

breach of fiduciary duties to tell them otherwise," they cannot plead facts showing that the Plan was ambiguous without undermining their case. *See* Mot. at 17. Defendants also argue that Plaintiffs fail to allege the requisite extraordinary circumstances. *See id.* In their reply, however, Defendants not only repeat the arguments set forth in their motion, but further contend that Plaintiffs fail to allege that they "reasonably and detrimentally relied on an oral 'material misrepresentation' of ambiguous plan terms." *See* Reply at 5-6.

Viewing the facts in Plaintiffs' favor, the Court finds that Plaintiffs have sufficiently pled their claim for equitable estoppel. First, the Court is satisfied, notwithstanding Plaintiffs' assertions that the provisions of the Atmel Plan are unambiguous, that reasonable parties could disagree as to whether the Plan required the Initial Triggering Event and the Change of Control to involve the same merger partner—particularly at the motion to dismiss stage, and particularly since that interpretation is one of the primary disputes in this case.[14] Second, Plaintiffs sufficiently allege detrimental reliance on an oral, material misrepresentation of that ambiguity by Defendants. *See, e.g.*, Compl. ¶¶ 34 (alleging that, between January and April 2016, Atmel management encouraged employees to remain with the company "by assuring [them] that they were fully covered by the severance benefit guarantees provided by the Plan," regardless of the identity of the ultimate merger partner), 62 (alleging that no Atmel Plan participant would have signed Microchip's releases but for its misrepresentations that no employees had a right to severance benefits under the Plan). The latter allegations are also sufficient for purposes of pleading extraordinary circumstances. *See Gabriel*, 773 F.3d at 957 (holding that "making a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part . . . can constitute extraordinary circumstances") (citation and internal quotation marks

---

[14] It is beyond dispute that Plaintiffs are permitted to plead that the relevant terms of the Atmel Plan were unambiguous or, in the alternative, that the ambiguity of the Plan supports a claim for equitable estoppel. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-cv-03871-LHK, 2017 WL 4517111, at *4 (N.D. Cal. Oct. 10, 2017) (citing cases supporting the principle that a plaintiff may plead inconsistent theories in the alternative but may not prevail on both claims). Defendants' argument that "any claim for equitable estoppel would directly refute—and destroy—their entire case," *see* Mot. at 17, misconstrues the pleading rules set forth in Rule 8.

omitted).

Defendants' motion is therefore denied as to Plaintiffs' claim for equitable estoppel.

## C. Plaintiffs Fail to State a Claim for ERISA Interference.

Last, Defendants argue that Plaintiffs have failed to plead facts sufficient to establish a prima facie case of ERISA interference. *See* Mot. at 21. Section 510 of ERISA, in relevant part, makes it

> unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140. The provision's purpose "is to 'prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan.'" *Lessard v. Applied Risk Mgmt.*, 307 F.3d 1020, 1024 (9th Cir. 2002) (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)). To establish a prima facie case of interference under section 510, an ERISA plaintiff generally must show that (1) he has "participate[d] in a statutorily protected activity; (2) an "adverse employment action" has been taken against him; and (3) "a causal connection existed between the two." *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989) (quoting *McKinney v. Dole*, 765 F.2d 1129, 1143 (D.C. Cir. 1985)). Where a plaintiff alleges discriminatory interference under section 510, a showing of the defendant's "specific intent" to interfere with ERISA rights is also required. *See Viteri-Butler v. Univ. of Cal., Hastings Coll. of the Law*, No. C 12-2651 PJH, 2014 WL 1022174, at *11 (N.D. Cal. Mar. 13, 2014) ("Where a plaintiff alleges discriminatory interference with her exercise of protected rights under § 510, the plaintiff must 'put forth sufficient evidence to establish [the defendant's] "specific intent to interfere with [her] benefit rights."'") (quoting *Lessard*, 307 F.3d at 1025); *Karamsetty v. Wells Fargo & Co.*, 967 F. Supp. 2d 1305, 1327 (N.D. Cal. 2013) (citing *Lessard* for the same principle).

Plaintiffs neither allege specific facts that satisfy this standard nor cite to the correct

standard.[15] They allege no facts regarding any "statutorily protected activity," which is foundational to determining whether Defendants were driven by such activity to take an employment action adverse to Plaintiffs. *See Kimbro*, 889 F.2d at 881. And while they do allege an adverse employment action, *see* Compl. ¶ 49, they fail to allege facts showing that their attempt to exercise their rights under ERISA *caused* that adverse action. Perhaps more importantly, practically speaking, Plaintiffs fail to allege how their interference claim under section 510 bolsters their relief. They make no mention of any freestanding remedies associated with interference claims. Nor do they state what further relief such a cause of action would provide.

Still, the Court cannot be certain that amendment of the Complaint as to this cause of action is futile. *See* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave [to amend] when justice so requires."). Accordingly, Plaintiffs' Third Cause of Action is dismissed with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as follows:

1. Plaintiffs' claims for declaratory relief under section 502(a)(3) of ERISA are **DISMISSED WITHOUT LEAVE TO AMEND**.

2. Plaintiffs' claims for injunctive relief under section 502(a)(3) of ERISA (1) prohibiting Defendants from "continuing to deny Plan benefits to eligible employees"; (2) prohibiting Defendants "from continuing to make false and fraudulent statements" about the existence of the Atmel Plan or any employee's right to benefits under the Plan; and (3) "requiring defendants to pay the full amounts and benefits" promised under the Atmel Plan are **DISMISSED WITHOUT LEAVE TO AMEND**.

---

[15] Instead, Plaintiffs cite to a case from the Northern District of Illinois for the proposition that "fraudulent activity excluding an employee from participation in a benefit plan can constitute an act of discrimination." *See* Opp. at 24 (quoting *Healy v. Axelrod Constr. Co. v. Defined Benefit Pension Plan & Trust*, 787 F. Supp. 838, 845 (N.D. Ill. 1992)). They then point to their allegations of such fraudulent activity.

United States District Court
Northern District of California

3.    Plaintiffs' Third Cause of Action under section 510 of ERISA is **DISMISSED WITH LEAVE TO AMEND**.

4.    The remainder of Defendants' motion is **DENIED**.

Should Plaintiffs choose to amend the Complaint as to the Third Cause of Action, they are directed to do so in accordance with the discussion above no later than 28 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: 2/6/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge