United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN BERMAN, et al., | Case No. 17-cv-01864-HSG |
| Plaintiffs, | **ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING RULE 56(D) MOTION** |
| v. | |
| MICROCHIP TECHNOLOGY INCORPORATED, et al., | Re: Dkt. Nos. 54, 74 |
| Defendants. | |

Plaintiffs Robin Berman, Bo Kang, Khashayar Mirfakhraei, Thang Van Vu, Donna Viera-Castillo, Girish Ramesh, Patrick Hanley, Ilana Shternshain, and Mandy Schwarz brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Dkt. No. 1 ("Complaint" or "Compl.") ¶ 13. Plaintiffs are former employees of Microchip Technology, Inc. ("Microchip") and Atmel Corp. ("Atmel") as well as participants in the Atmel U.S. Severance Guarantee Benefit Program ("the Atmel Plan" or "the Plan"). *See id.*[1]

Pending before the Court is Plaintiffs' motion for partial summary judgment. *See* Dkt. No. 54 ("Mot."). Also pending before the Court is Defendants' motion under Federal Rule of Civil Procedure 56(d) to deny Plaintiffs' motion as premature or defer considering it pending further discovery. *See* Dkt. No. 74. For the following reasons, the Court **GRANTS** Plaintiffs' motion for partial summary judgment and **DENIES** Defendants' Rule 56(d) motion.

## I. BACKGROUND

### A. The Atmel Plan

Prior to April 2016, Atmel was a publicly traded corporation with its principal place of

---

[1] The Court will refer to Microchip, Atmel, and the Plan collectively as "Defendants."

United States District Court
Northern District of California

1   business in San Jose, California.  *See* Compl. ¶ 15.  Atmel was a supplier of "general purpose

2   microcontrollers, which are self-contained computers on a single chip used in a variety of

3   industrial and consumer products."  *Id.* ¶ 17.  It employed approximately 1,800 people in the

4   United States.  *Id. ¶* 18.

5       On July 9, 2015, Atmel sent a letter to its employees to acknowledge the "significant

6   market speculation regarding possible transactions involving the company."  AT 4117.[2]  Atmel

7   understood that "such rumors can be distracting and unsettling."  *Id.*  However, Atmel was

8   "pleased to share" that it had established the Atmel Plan, which was "intended to ease the

9   concerns among [its] employees."  *Id.*  Under the Plan, employees would receive severance

10  benefits if they were terminated without cause following a change of control.  *See id.*  Details

11  varied based on an employee's job category, but employees were generally entitled to cash

12  payments of between 25% and 50% of their annual base salary, paid health insurance premiums

13  for three to six months, and potentially a prorated bonus.  *See* AT 4117–19.  Precise terms of the

14  Atmel Plan were set out in an addendum to the letter:

15      **Term of the Severance Guarantee Benefit Program:**  The U.S.
        Severance Guarantee Benefit Program is effective from July 1, 2015

16      and will terminate on November 1, 2015 unless an Initial Triggering
        Event (as described below) has occurred prior to November 1, 2015,

17      in which event the U.S. Severance Guarantee Benefit Program will
        remain in effect for 18 (eighteen) months following that Initial

18      Triggering Event.

19      **Eligibility:**  Eligibility is limited to U.S.-based employees of Atmel
        Corporation as of the date a Change of Control is consummated.

20

21      **Initial Triggering Event:**    Benefits under the U.S. Severance
        Guarantee Benefit Program will become available to eligible

22      employees only if the Company enters into a definitive agreement (a
        "Definitive Agreement"), on or before November 1, 2015, that will

23      result in a Change of Control of the Company.  If a Definitive
        Agreement is not entered into on or before that date, the U.S.

24      Severance Guarantee Benefit Program described in the letter and this

25      ──────────────
        [2] The full Administrative Record is composed of over 6,900 pages and is available at Dkt. Nos.

26      59–67.  *See* Mot. at 2 n.2; Dkt. No. 58.  The Administrative Record consists of three sets of
        documents, which are Bates stamped as follows: 0001–2756, ATMEL PLAN/BERMAN 0001–

27      4119, and BER 001–034.  *See* Mot. at 2 n.2.  In this order, the Court will preface the Bates number
        with "AR," "AT," or "BER," respectively.  In addition, Plaintiffs prepared an Appendix with key

28      excerpts of the Administrative Record, which is filed at Dkt. No. 56 and contains most of the
        documents cited in this order.  *See* Mot. at 2 n.2.

                                        2

Addendum will automatically expire, unless expressly extended by the Company's Board of Directors.

**Benefits Conditions:** After an Initial Triggering Event occurs that makes available to eligible employees the U.S. Severance Guarantee Benefit Program, participants will then be entitled to receive cash payments and COBRA benefits if, but only if:

(A) A Change of Control actually occurs; and

(B) Their employment is terminated without "Cause" by the Company (or its successor) at any time within 18 months of the execution date of the Definitive Agreement.

For purposes of this U.S. Severance Guarantee Benefit Program, the definition of "Change of Control" and "Cause" will be the same as that contained in the Company's Senior Executive Change of Control and Severance Plan.

AT 4115. Atmel's successor would "assume the obligations" of the Plan. AT 4116. The Plan would "be administered and interpreted by" Atmel, with differing standards of review depending on whether an interpretation occurred prior to or following a change of control. *Id.* Prior to a change of control, Atmel's interpretations were entitled to maximal deference:

Any decision made or other action taken by the Company prior to a Change of Control with respect to the Program, and any interpretation by the Company prior to a Change of Control of any term or condition of the Program, or any related document, will be conclusive and binding on all persons and be given the maximum possible deference allowed by law.

*Id.* But after a change of control, interpretations of the Plan would be subject to a different standard of review:

Following a Change of Control, any decision made or other action taken by the Company, and any interpretation by the Company of any term or condition of the Program, or any related document that (i) does not affect the benefits payable under the Program shall not be subject to review unless found to be arbitrary and capricious or (ii) does affect the benefits payable under the Program shall not be subject to review unless found to be unreasonable or not to have been made in good faith.

*Id.*

## B. Atmel Is Acquired

On September 19, 2015, UK-based Dialog Semiconductor plc ("Dialog") agreed to purchase Atmel for $4.6 billion in cash and stock. AR 2203. That day, Atmel filed a Form 8-K with the Securities and Exchange Commission, announcing its "Entry into a Material Definitive Agreement" with Dialog. AR 2213–25. The Form 8-K explained that "the acquisition of Atmel

3

1    will be accomplished through a merger." AR 2214. The following day, Dialog and Atmel issued

2    a press release announcing the acquisition, which they expected would close in the first quarter of

3    2016. AR 2203–2211.

4        But the agreement between Dialog and Atmel never closed because Microchip made a

5    better offer. *See* AR 2184; AT 410. Consequently, Atmel terminated the agreement with Dialog.

6    *See* AR 2250. Instead, Atmel entered into a new merger agreement on January 19, 2016, in which

7    Microchip agreed to acquire Atmel. *See id.* Microchip's acquisition of Atmel closed on April 4,

8    2016. AR 2185.

9        **C.    Plaintiffs Reject New Severance Offers**

10        Robin Berman was a creative director at Atmel. AT 210. On April 6, 2016, Berman

11   received a letter saying that she had been terminated, effective immediately. *Id.* Microchip

12   offered to pay Berman five weeks of salary as severance. *Id.*; *see also* AT 217–20 (severance

13   agreement and release). On April 11, Berman received a letter from Microchip outlining a more

14   generous severance agreement. AT 210. Under the terms of this plan, Berman would receive

15   severance benefits worth one-half of those offered under the Atmel Plan, in exchange for releasing

16   any claims she may have had against Defendants. *Id.*; AT 225–30.

17        The other eight Plaintiffs were terminated between April 4 and July 12 and sent similar

18   severance offers. *See* AR 1969–70, 1983–90 (Bo Kang); AR 1992–93, 2006–12 (Thong Van Vu);

19   AR 2019–20, 2035–41 (Donna Viera-Castillo); AR 2048–49, 2062–68 (Khashayar Mirfakhraei);

20   AR 2077–78 (Girish Ramesh); AR 2099–100 (Patrick Hanley); AR 2121–23 (Ilana Shternshain);

21   AR 2184–85 (Mandy Schwarz).

22        All nine Plaintiffs refused to sign the new severance agreements. *See* Compl. at 8–9.[3]

23        **D.    Microchip Denies Plaintiffs' Claims for Benefits**

24        Between May 20, 2016 and October 5, 2016, each Plaintiff submitted a claim for benefits

25   under the Atmel Plan. *See, e.g.*, AR 1904–13 (claim letter from Plaintiff Schwarz). Microchip's

26   Plan Administrator denied each claim, finding that Plaintiffs were "not eligible for benefits" under

27   

28   [3] By contrast, the plaintiffs representing the putative class in a related action, *Schuman v. Microchip et al.*, Case No. 16-cv-05544-HSG, signed the release agreements. *See* Compl. at 1 n.1.

1  the Atmel Plan.  AR 238–39.  The Plan Administrator wrote that under her interpretation of the

2  Atmel Plan, employees were eligible for severance benefits only if the following conditions were

3  met:

4           (1)  Atmel entered into an agreement qualifying as an "Initial
               Triggering Event" (discussed below) that would result in a

5                 "Change of Control" (discussed further below) on or after July 1,
               2015, but before November 1, 2015;

6           (2)  The agreement qualifying as an "Initial Triggering Event"
               ultimately resulted in a "Change of Control"; and

7           (3)  You were terminated within 18 months of the execution date of
               the agreement qualifying as an "Initial Triggering Event" and

8                 resulting in a "Change of Control."

9  AR 238.  First, the Administrator explained that because the agreement with Dialog did not

10  actually result in a Change of Control, it did not make Plaintiffs eligible for severance benefits.

11  *See* AR 238–39.  Second, the Administrator explained that because the Atmel Plan "automatically

12  expired on November 1, 2015," any agreements entered into after that date could not qualify as an

13  Initial Triggering Event.  AR 239.  Thus, Plaintiffs were "not eligible for benefits" under the

14  Atmel Plan.  AR 238.

15        Plaintiffs appealed the benefits denials in January 2017.  *See, e.g.*, AT 165–76 (Berman's

16  appeal letter).  In March 2017, the Plan Administrator denied Plaintiffs' appeals, citing the same

17  bases on which she had denied their initial claims.  *See, e.g.*, BER 1–3 (Berman's appeal denial).

18       **E.**    **Plaintiffs Bring Suit**

19        Following the denial of their appeals, Plaintiffs filed suit on April 4, 2017.  *See* Compl.

20  Plaintiffs asserted three causes of action: (1) breach of fiduciary duties under ERISA Section

21  502(a)(3), entitling them to the remedies of equitable relief, equitable estoppel, and surcharge,

22  Compl. ¶¶ 72–87; (2) a claim for plan benefits under ERISA Section 502(a)(1)(B), Compl. ¶¶ 88–

23  90; (3) and interference with the exercise of ERISA rights under ERISA Section 510, Compl. ¶¶

24  91–101.

25        On February 6, 2018, the Court granted in part and denied in part Defendants' motion to

26  dismiss the action.  *See* Dkt. No. 35.  First, the Court dismissed the Atmel Plan as a defendant

27  from the first cause of action because a plan "cannot be sued for breach of fiduciary duty."  *See id.*

28  at 9 (quoting *Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991)).  Second, the Court

1    dismissed Plaintiffs' requests for declaratory and injunctive relief (other than their claim for an

2    injunction against Defendants "continuing to delay the processing of any Plan member's claim for

3    ERISA benefits") under Section 502(a)(3) as duplicative of relief available under other provisions

4    of ERISA. *See* Dkt. No. 35 at 18–20. Third, the Court dismissed Plaintiffs' cause of action for

5    ERISA interference. *See id.* at 24–25. The Court allowed Plaintiffs' remaining claims to proceed.

6    *See id.* at 26.

7           Plaintiffs filed their motion for partial summary judgment on July 2, 2018. *See* Mot. On

8    July 30, Defendants responded in opposition and moved under Federal Rule of Civil Procedure

9    56(d) to deny the motion as premature or delay consideration pending additional discovery. *See*

10   Dkt. No. 74 ("Opp."). Plaintiffs replied and opposed the Rule 56(d) motion on August 13. *See*

11   Dkt. No. 76 ("Reply"). On August 20, Defendants objected to new evidence included in

12   Plaintiffs' Reply, Dkt. No. 77, and replied to Plaintiffs' opposition, Dkt. No. 78.

13   **II.    LEGAL STANDARD**

14          Summary judgment is proper when a "movant shows that there is no genuine dispute as to

15   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

16   A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

17   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence

18   in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

19   But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from

20   the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*

21   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence

22   or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997),

23   *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court

24   finds that there is no genuine dispute of material fact as to only a single claim or defense or as to

25   part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

26          With respect to summary judgment procedure, the moving party always bears both the

27   ultimate burden of persuasion and the initial burden of producing those portions of the pleadings,

28   discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp.*

6

1    *v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will not bear the burden of proof on

2    an issue at trial, it "must either produce evidence negating an essential element of the nonmoving

3    party's claim or defense or show that the nonmoving party does not have enough evidence of an

4    essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

5    *Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Where the moving party will bear the

6    burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find

7    in its favor.  *Celotex*, 477 U.S. at 325.  In either case, the movant "may not require the nonmoving

8    party to produce evidence supporting its claim or defense simply by saying that the nonmoving

9    party has no such evidence." *Nissan Fire*, 210 F.3d at 1105.  "If a moving party fails to carry its

10   initial burden of production, the nonmoving party has no obligation to produce anything, even if

11   the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

12          "If, however, a moving party carries its burden of production, the nonmoving party must

13   produce evidence to support its claim or defense." *Id.* at 1103.  In doing so, the nonmoving party

14   "must do more than simply show that there is some metaphysical doubt as to the material facts."

15   *Matsushita Elec.*, 475 U.S. at 586.  A nonmoving party must also "identify with reasonable

16   particularity the evidence that precludes summary judgment," because the duty of the courts is not

17   to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275,

18   1279 (9th Cir. 1996).  If a nonmoving party fails to produce evidence that supports its claim or

19   defense, courts must enter summary judgment in favor of the movant.  *Celotex*, 477 U.S. at 323.

20          If there is a genuine dispute of material fact in an ERISA case, summary judgment is

21   precluded, *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 978 (9th Cir. 1999), and the district court

22   must conduct a bench trial, *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir.

23   1999) (en banc).

24   **III.    DISCUSSION**

25          Plaintiffs moved for partial summary judgment on their claim for benefits under ERISA

26   Section 502(a)(1)(B) and for a finding of liability on their claim for equitable relief under ERISA

27   Section 502(a)(3).  *See* Mot. at i, 24; Reply at 2.  In response, Defendants moved to deny

28   Plaintiffs' motion as premature or defer considering it pending further discovery.  *See* Dkt. No. 74.

7

1    The Court will discuss each motion in turn.

2         **A.    Plaintiffs' Claim for Severance Benefits**

3         Under ERISA Section 502(a)(1)(B), a plan participant may bring a civil lawsuit "to recover

4    benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the

5    plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs contend that by denying their claim for benefits, the

6    Plan Administrator "improperly deprived" them of benefits to which they were contractually

7    entitled "by adding an extra-contractual eligibility condition that is nowhere found in the Plan's

8    language." Mot. at 15. The Court agrees and **GRANTS** summary judgment on this claim.

9         **i.    Standard of Review**

10        As a preliminary matter, the parties dispute the standard of review the Court should apply

11   when reviewing the Plan Administrator's interpretation of the Atmel Plan.

12        "To assess the applicable standard of review, the starting point is the wording of the plan."

13   *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962–63 (9th Cir. 2006). A denial of ERISA

14   benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator

15   or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of

16   the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Stephan v.*

17   *Unum Life Ins. Co. of Am.*, 697 F.3d 917, 923 (9th Cir. 2012) ("ERISA benefit determinations are

18   reviewed de novo, unless the benefit plan provides otherwise."). "If de novo review applies" then

19   the court "proceeds to evaluate whether the plan administrator correctly or incorrectly denied

20   benefits, without reference to whether the administrator operated under a conflict of interest."

21   *Abatie*, 458 F.3d at 963. However, "if the plan *does* confer discretionary authority as a matter of

22   contractual agreement, then the standard of review shifts to abuse of discretion." *Id.* (citing

23   *Firestone*, 489 U.S. at 115). For the lower standard of review to apply, the plan must confer

24   discretion "unambiguously." *Kearney*, 175 F.3d at 1090. Moreover, a conflict of interest

25   (including "the inherent conflict when a plan administrator is also the fiduciary") must be

26   "weigh[ed] . . . as a factor in abuse of discretion review." *Abatie*, 458 F.3d at 968–69.

27        A court is usually confined to the administrative record when reviewing an ERISA claim

28   for abuse of discretion but may consider outside evidence if engaging in de novo review. *See*

8

1  *Abatie*, 458 F.3d at 969–70.  In addition, the court "may, in its discretion, consider evidence

2  outside the administrative record to decide the nature, extent, and effect on the decision-making

3  process of any conflict of interest."  *Id.* at 970.

4      Plaintiffs contend that the denial of benefits is "subject to de novo review because the Plan

5  does not unambiguously grant . . . discretion to construe the Plan language post-merger."  Mot. at

6  13.  Defendants respond that arbitrary and capricious review is required because the Plan's use of

7  the phrase "unreasonable or not to have been made in good faith," AT 4116, "incorporates

8  virtually verbatim the arbitrary and capricious review standard."  Opp. at 14.

9      Ultimately, the Court need not resolve the question of whether the Plan unambiguously

10  grants discretion or whether the Plan's phrasing incorporates the arbitrary and capricious standard.

11  The Plan Administrator's interpretation of the Atmel Plan was so plainly incorrect as to violate

12  any potentially applicable standard of review, whether it be de novo, arbitrary and capricious, or

13  unreasonable and not in good faith.  *Cf. Brown v. S. Cal. IBEW-NECA Tr. Funds*, 588 F.3d 1000,

14  1003 (9th Cir. 2009) (declining to determine standard of review because "result would be the same

15  under either standard of review").  Moreover, the Court need not—and did not—rely on any

16  evidence outside of the Administrative Record to reach this determination.

17      **ii.  Plaintiffs Are Entitled to Severance Benefits Regardless of the Standard of**
          **Review**

18

19      The Court need not look further than the plain language of the Atmel Plan to conclude that

20  Plaintiffs were entitled to severance benefits.  Plaintiffs and Defendants agree that the Atmel

21  Plan's language is clear and compels the result—but they have diametrically opposed views as to

22  what that unambiguous result is.  *See* Mot. at 15; Opp. at 15.  Plaintiffs argue that the text of the

23  Plan does not require that the "ultimate merger partner must be the same entity as the one whose

24  preliminary agreement with Atmel constituted an 'Initial Triggering Event.'"  Mot. at 15.

25  Defendants respond that the "unambiguous terms" of the Plan require that a definitive agreement

26  that "resulted in a change of control" must be entered into prior to November 1, 2015 for the Plan

27  to take effect—and that there was "*no* pre-November 1, 2015 definitive agreement with *anyone*

28  that resulted in a change of control."  Opp. at 15.  In essence, their disagreement boils down to one

9

1    question: must the agreement that constitutes the Initial Triggering Event be the agreement that

2    ultimately results in a Change of Control? *See* Mot. at 16; Opp. at 15.  The Court finds that the

3    language of the Atmel Plan clearly and unequivocally dictates that the answer to this question is

4    no.  Thus, Plaintiffs are entitled to severance benefits and the Plan Administrator's denial of

5    benefits must be reversed regardless of what standard of review is applied.

6            The key portions of the Atmel Plan read as follows:

7            **Term of the Severance Guarantee Benefit Program:**  The U.S.
Severance Guarantee Benefit Program is effective from July 1, 2015

8    and will terminate on November 1, 2015 unless an Initial Triggering
Event (as described below) has occurred prior to November 1, 2015,

9    in which event the U.S. Severance Guarantee Benefit Program will
remain in effect for 18 (eighteen) months following that Initial

10   Triggering Event. . . .

11   **Initial Triggering Event:**  Benefits under the U.S. Severance
Guarantee Benefit Program will become available to eligible
employees only if the Company enters into a definitive agreement (a

12   "Definitive Agreement"), on or before November 1, 2015, that will
result in a Change of Control of the Company. . . .

13

14   **Benefits Conditions:**  After an Initial Triggering Event occurs that
makes available to eligible employees the U.S. Severance Guarantee
Benefit Program, participants will then be entitled to receive cash

15   payments and COBRA benefits if, but only if:

16       (A) A Change of Control actually occurs; and

17       (B) Their employment is terminated without "Cause" by the
Company (or its successor) at any time within 18 months of

18           the execution date of the Definitive Agreement.

19   AT 4115.  In sum, the plain language of the Atmel Plan created three conditions precedent to

20   Plaintiffs' entitlement to severance benefits: (1) an Initial Triggering Event occurred before

21   November 1, 2015; (2) a Change of Control transpired; and (3) Plaintiffs were terminated without

22   cause.  No one disputes that the second and third conditions were satisfied: Atmel was acquired by

23   Microchip and Plaintiffs were terminated without cause.  Thus, all that remains in contention is the

24   first condition and, more specifically, whether the Definitive Agreement that served as the Initial

25   Triggering Event must be the definitive agreement that resulted in the Change of Control.

26           According to the Plan Administrator, the "agreement qualifying as an 'Initial Triggering

27   Event'" must be the one that "ultimately resulted in a 'Change of Control.'"  AR 238.  Defendants

28   read the Plan similarly.  *See* Opp. at 15.  But that is not what the Atmel Plan says.

1    The Plan provides that benefits "will become available to eligible employees only if the

2    Company enters into a definitive agreement . . . , on or before November 1, 2015, that will result

3    in a Change of Control of the Company." AT 4115. This would be the Initial Triggering Event.

4    *Id.* When Dialog agreed on September 19, 2015 to acquire Atmel, *see* AR 2203, that was the

5    Initial Triggering Event because it was a pre-November 1 definitive agreement that would result in

6    a Change of Control. And "the U.S. Severance Guarantee Benefit Program will remain in effect

7    for 18 (eighteen) months following that Initial Triggering Event." AT 4115. Thus, because of the

8    Dialog agreement, the Atmel Plan would remain in effect until approximately March 19, 2017.

9    Once the Initial Triggering Event transpired, Atmel Plan participants were entitled to

10   severance benefits "only if: (A) A Change of Control actually occur[ed]; and (B) Their

11   employment [was] terminated without 'Cause' by the Company (or its successor) at any time

12   within 18 months of the execution date of the Definitive Agreement." AT 4115. Both events

13   occurred. The Atmel Plan did not say that the Change of Control contemplated by the Definitive

14   Agreement which constituted the Initial Triggering Event must be the same Change of Control

15   that "actually occurs." It used the terms "*will* result" and "*a*" Change of Control rather than "*does*

16   result" and "*the*" Change of Control. These terms (and the Court's interpretation) accord with the

17   Atmel Plan's expressed purpose: "to ease the concerns among [Atmel] employees" given the

18   "significant market speculation regarding possible transactions involving the company." AT

19   4117.

20   Were the Court to adopt the Plan Administrator's or Defendants' interpretation of the Plan

21   (which is foreclosed by the plain language), the Plan's stated purpose would not be served.

22   Employees would be entitled to benefits only if the Definitive Agreement that served as the Initial

23   Triggering Event was the same one that resulted in the actual Change of Control. *See* Opp. at 17.

24   But, as Plaintiffs point out, that would mean that employees would not receive severance benefits

25   if, for example, the agreement was re-negotiated with the same merger partner. *See* Mot. at 16

26   n.11. Nor would employees receive severance benefits if (as actually happened) Atmel received

27   and accepted a better offer. This interpretation of the Plan would do nothing to ease concerns

28   among Atmel employees, because it would offer minimal assurances that they would receive

11

1   severe benefits following an acquisition.

2       Defendants assert that Plaintiffs' (and thus the Court's) interpretation of the Atmel Plan is

3   "irrational and unreasonable." Opp. at 17. Defendants seem to think that this "reading eliminates

4   the November 1, 2015 definitive agreement deadline," and assumes that "nothing that happened

5   prior to November 1, 2015 was even relevant." *See id.* Not so. November 1 was the deadline for

6   the Initial Triggering Event: if no Definitive Agreement was reached by that day, the Plan would

7   have expired. Of course, because Atmel entered into a Definitive Agreement with Dialog prior to

8   the November 1 deadline, the Plan's terms called for it to be extended for an additional 18 months.

9       Because the Court finds that the plain language of the Atmel Plan entitles Plaintiffs to

10  severance benefits, the Plan Administrator's denial of benefits is incorrect under any applicable

11  standard of review. Moreover, because the text of the Plan compels the result, the Court need not

12  (and did not) consider any evidence of the Plan Administrator's potential conflict of interest or any

13  evidence outside of the Administrative Record. In sum, the Court **GRANTS** Plaintiffs' motion for

14  summary judgment on their claim for severance benefits under ERISA Section 502(a)(1)(B).

15      **B.    Plaintiffs' Claim for Breach of Fiduciary Duty**

16      Plaintiffs also moved for summary judgment solely as to liability on their claim for

17  equitable relief under ERISA Section 502(a)(3) based on Defendants' breaches of fiduciary duty.

18  *See* Mot. at i, 23–24; Reply at 2. Plaintiffs "intend to pursue [equitable] remedies later." Mot. at

19  24.

20      Under ERISA Section 502(a)(3), a plan participant or beneficiary may bring a civil action

21  "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of

22  the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to

23  enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

24  Appropriate equitable relief under ERISA may include reformation of the terms of the plan,

25  equitable estoppel, or surcharge. *See Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955–58

26  (9th Cir. 2014). Plaintiffs may pursue simultaneous claims under Sections 502(a)(1)(B) and

27  502(a)(3), but they may not obtain double recovery. *See Moyle v. Liberty Mut. Ret. Ben. Plan*, 823

28  F.3d 948, 961 (9th Cir. 2016).

12

1    ERISA requires plan administrators to "discharge [their] duties with respect to a plan

2    solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). They "breach

3    their duties if they mislead plan participants or misrepresent the terms or administration of a plan."

4    *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 744 (9th Cir. 2017) (internal quotation

5    omitted). Given that Plaintiffs were entitled to severance benefits based on the undisputed

6    evidence in the Administrative Record and the plain text of the Atmel Plan, the Plan Administrator

7    breached her duties when she misrepresented the terms of the Plan by denying Plaintiffs' claim for

8    benefits. Thus, the Court **GRANTS** Plaintiffs' motion for summary judgment as to liability for

9    breach of fiduciary duty under Section 502(a)(3).

10         **C.**    **Defendants' Rule 56(d) Motion and Objection to New Evidence**

11    In their Opposition to Plaintiffs' motion for partial summary judgment, Defendants moved

12    under Federal Rule of Civil Procedure 56(d) to deny Plaintiffs' motion as premature or to defer

13    considering it pending additional discovery. *See* Opp. at 7. Defendants also objected to Plaintiffs'

14    submission of new evidence in their Reply. *See* Dkt. No. 77.

15    Rule 56(d) of the Federal Rules of Civil Procedure allows a party to avoid summary

16    judgment if there has not been an opportunity to discover affirmative evidence necessary to

17    oppose the motion. *See Garrett v. City & Cty. of San Francisco*, 818 F.2d 1515, 1518 (9th Cir.

18    1987). To succeed on a Rule 56(d) motion, the moving party must show "(1) that they have set

19    forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the

20    facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary

21    judgment motion." *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

22    Defendants' Rule 56(d) motion fails because they cannot possibly establish the third prong

23    of the test. Defendants contend that summary judgment must be delayed because, for example,

24    they need additional discovery "to test the alleged verbal statements identified in Plaintiffs'

25    declarations." *See* Opp. at 11–12. But the Court did not rely upon or consider any such verbal

26    statements. Rather, this summary judgment order considered only the Administrative Record in

27    holding that the plain text of the Atmel Plan required granting summary judgment for Plaintiffs.

28    Thus, there is no reason to defer consideration of the motion for partial summary judgment

1  because there is no discovery that could be essential (or even relevant) to resisting the motion.

2  Likewise, the Court did not consider the deposition testimony to which Defendants object

3  because it was not contained in the Administrative Record. *See* Dkt. No. 77.

4  **IV.    CONCLUSION**

5  Based on the Administrative Record and the plain text of the Atmel Plan, the Court finds

6  that Plaintiffs were entitled to severance benefits.  The Plan Administrator's rejection of their

7  claim for benefits was erroneous under any standard of review; thus, she violated her fiduciary

8  duty to not misrepresent the terms of the Plan.  Accordingly, the Court **GRANTS** Plaintiffs'

9  motion for partial summary judgment on their claim for benefits under ERISA Section

10  502(a)(1)(B) and for liability on their claim for equitable relief under ERISA Section 502(a)(3).

11  Because the Court relied upon only the Administrative Record, the Court **DENIES** Defendants'

12  Rule 56(d) motion.

13  The parties are **ORDERED** to meet and confer regarding the amounts of pre-judgment

14  interest, attorneys' fees, and costs that may be owed as a result of this ruling.  *See* Mot. at 18 n.12.

15  The parties shall file a short statement by April 19, 2019, informing the Court whether they were

16  able to reach a stipulation as to how much is owed.  If the parties do not report on or before April

17  19 that an agreement has been reached, they shall appear for a case management conference on

18  April 30 at 2:00 p.m. in Oakland, Courtroom 2, 4th Floor to discuss a plan and schedule for

19  promptly resolving any remaining issues.

20  **IT IS SO ORDERED.**

21  Dated:  3/22/2019

22  _____

23  HAYWOOD S. GILLIAM, JR.
United States District Judge

24

25

26

27

28