1
2
3
4
5
6

Michael Rubin (SBN 80618)
Andrew Kushner (SBN 316035)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone:     (415) 421-7151
Facsimile:      (415) 362-8064
Email:     mrubin@altber.com
                akushner@altber.com

7
8
9
10
11
12

Cliff Palefsky (SBN 77683)
Keith Ehrman (SBN 106985)
MCGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
Telephone:     (415) 421-9292
Facsimile:      (415) 403-0202
Email:     cp@mhpsf.com
                keith@mhpsf.com

William B. Reilly (SBN 177550)
LAW OFFICE OF WILLIAM REILLY
86 Molino Avenue
Mill Valley, CA 94941
Telephone:     (415) 225-6215
Facsimile:      (415) 634-2897
Email:     bill@williambreilly.com

13
14

*Attorneys for Plaintiffs*

15
16
17

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

18
19
20
21
22
23
24
25
26
27
28

ROBIN BERMAN, BO KANG,
KHASHAYAR MIRFAKHRAEI, THANG
VAN VU, DONNA VIERA-CASTILLO,
GIRISH RAMESH, PATRICK HANLEY,
ILANA SHTERNSHAIN and MANDY
SCHWARZ,

                    Plaintiffs,

          v.

MICROCHIP TECHNOLOGY
INCORPORATED, a corporation; ATMEL
CORPORATION, a corporation; and ATMEL
CORPORATION U.S. SEVERANCE
GUARANTEE BENEFIT PROGRAM, an
employee benefit plan,

                    Defendants.

Case No. 4:17-CV-1864-HSG


**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES**

Hearing Date:   October 7, 2021
Time:            2:00 p.m.
Courtroom:       2, Floor 4
Judge:           Hon. Haywood S. Gilliam, Jr.

Action Filed:    April 4, 2017
Trial Date:      May 2, 2022

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE**, pursuant to Civil Local Rule 7, that on October 7, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Haywood S. Gilliam, Jr. at the United States Courthouse, 1301 Clay Street, Oakland, CA 94612, plaintiffs will, and hereby do, move pursuant to Federal Rule of Civil Procedure 56 for an order granting plaintiffs partial summary judgment on their claims for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), and for equitable relief under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

Plaintiffs make this motion on the ground that no genuine issue of material fact exists as to plaintiffs' entitlement to severance benefits under the ERISA-governed Atmel Corporation U.S. Severance Guarantee Benefit Program pursuant to 29 U.S.C. §1132(a)(1)(B) or as to plaintiffs' eligibility for equitable relief under 29 U.S.C. §1132(a)(3) based on defendants' breaches of fiduciary duty under ERISA. *See* Dkt. 35 (Ord. re MTD) at 20-21. For these reasons, as further set forth in the accompanying memorandum of points and authorities, this Court should grant partial summary judgment for plaintiffs.

Plaintiffs' motion rests upon this notice of motion and motion, the accompanying memorandum of points and authorities, the Declarations of Keith Ehrman and Cliff Palefsky, the undisputed facts in the administrative record, such oral argument as the Court may hear, and all other filings in this case.

Dated: July 23, 2021                        Respectfully submitted,

                                                         **ALTSHULER BERZON LLP**

                                                         **MCGUINN, HILLSMAN & PALEFSKY**

                                                         **LAW OFFICE OF WILLIAM REILLY**

                                                         By: */s/ Michael Rubin*
                                                                    Michael Rubin

                                                         *Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT .................. i

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION .................................................................................................................1

FACTS ................................................................................................................................3

    A.    The ERISA Severance Plan ......................................................................3

    B.    Atmel's Contemporaneous, Binding Interpretations of the Plan Language ...........4

    C.    The Events that Resulted in Vesting of Severance Benefits...................................7

    D.    Microchip Refuses to Comply with the Plan's Severance Guarantees.................8

    E.    Defendants Wrongfully Denied Plaintiffs' Claims for Plan Benefits..................10

    F.    Plaintiffs Timely Appealed the Denials of the Benefits Claims ...........................11

    G.    Despite Being Unauthorized to Review Her Own Decisions, Plan
             Administrator Petrovic Affirms Her Benefits Denials............................................12

    H.    Procedural History ...............................................................................................12

SUMMARY JUDGMENT STANDARD ...........................................................................13

ARGUMENT .....................................................................................................................13

    I.    Review of Microchip's Plan Administrator's Benefits Denials is
        De Novo and May Only be Based upon the Plan Language and
        Closed Administrative Record..............................................................................13

        A.    De novo review applies to Microchip's interpretation for
              two independent reasons ...........................................................................13

        B.    Even if this Court concludes that abuse of discretion review
              applies, it must "weigh" the impact of Microchip's conflict of
              interest in its analysis. ...............................................................................16

        C.    Review of Microchip's benefits denial must be conducted on a
              closed record ............................................................................................18

    II.    As this Court Previously Held, the Benefits Denials Must Be Reversed
         Under Any Standard of Review...........................................................................19

        A.    The Plan language as a whole, its purposes, the Administrative
              Record, and Atmel's binding pre-merger interpretation dispel
              any ambiguity in the definition of "Definitive Agreement." ....................20

    III.    This Court Should Reaffirm that Defendants' Actions Amounted to
          Breaches of Fiduciary Duties...............................................................................24

    IV.    There Is No Reason to Defer Ruling on this Motion Pending Further
          Discovery ...........................................................................................................25

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abatie v. Alta Health*,
  458 F.3d 955 (9th Cir. 2006) (en banc) ..........................................................................14, 17, 18

*Barker v. Am. Mobil Power Corp.*,
  64 F.3d 1397 (9th Cir. 1995) ............................................................................................18

*Bernstein v. Travelers Ins. Co.*,
  2006 WL 2567875 (N.D. Cal. Sept. 5, 2006) ...................................................................13

*Black & Decker Dis. Plan v. Nord*,
  538 U.S. 822 (2003).........................................................................................................18

*Bogue v. Ampex Corp.*,
  976 F.2d 1319 (9th Cir. 1992) ..........................................................................................14

*Brown v. S. Cal. IBEW-NECA Trust Funds*,
  588 F.3d 1000 (9th Cir. 2009) ..........................................................................................23

*Canseco v. Construction Laborers Pension Trust*,
  93 F.3d 600 (9th Cir. 1996) ..............................................................................................23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................................13

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989).........................................................................................................14

*Guenther v. Lockheed Martin Corp.*,
  646 Fed. App'x 567 (9th Cir. 2016) ..................................................................................24

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
  571 U.S. 99 (2013)...........................................................................................................18

*Kearney v. Standard Ins. Co.*,
  175 F.3d 1084 (9th Cir. 1999) (en banc) ....................................................................14, 15

*King v. Blue Cross & Blue Shield of Ill.*,
  871 F.3d 730 (9th Cir. 2017) ............................................................................................24

*Lujan v. National Wildlife Fed'n*,
  497 U.S. 871 (1990).........................................................................................................13

*McDaniel v. Chevron Corp.*,
  203 F.3d 1099 (9th Cir. 2000) .....................................................................................15, 23

*Metropolitan Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008)..................................................................................16, 17, 18

*Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*,
    46 F.3d 938 (9th Cir. 1995) ...................................................................................19

*Montour v. Hartford Life & Acc. Ins. Co.*,
    588 F.3d 623 (9th Cir. 2009) .............................................................14, 17, 18, 19

*Moyle v. Liberty Mutual Ret. Benefit Plan*,
    823 F.3d 948 (9th Cir. 2016) ...................................................................................14

*Robi v. Five Platters, Inc.*,
    918 F.2d 1439 (9th Cir. 1990) .................................................................................13

*Saffle v. Sierra Pacific Power Co.*,
    85 F.3d 455 (9th Cir. 1996) .....................................................................................23

*Salomaa v. Honda LTD Plan*,
    642 F.3d 666 (9th Cir. 2011) ...........................................................................14, 17

*Sandoval v. Aetna Life & Casualty Ins. Co.*,
    967 F.2d 377 (10th Cir. 1992) .................................................................................19

*Schikore v. BankAmerica Supp. Ret. Plan*,
    269 F.3d 956 (9th Cir. 2001) .............................................................................14, 18

*Shane v. Albertson's Inc.*
    504 F.3d 1166 (9th Cir. 2007) .................................................................................16

*Stephan v. Unum Life Ins. Co. of Am.*,
    697 F.3d 917 (9th Cir. 2012) .............................................................................14, 19

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)...................................................................................................18

**Statutes and Regulations**

29 U.S.C.
    § 1104(a) ...................................................................................................11, 18, 24
    § 1132(a)(1)(B) ................................................................................................ *passim*
    § 1132(g)(1) ...............................................................................................................24
    § 1133 ..................................................................................................................11, 19

29 C.F.R.
    § 2560.503-1(f)(1)......................................................................................................10
    § 2560.503-1(g)(1).................................................................................................11, 13
    § 2560.503-1(h)(2)....................................................................................11, 13, 17, 19
    § 2560.503-1(m)(8).....................................................................................................19

**Rules**

Fed.R.Civ.P.
  Rule 56 .................................................................................................................................13

**INTRODUCTION**

Plaintiffs are nine former employees of defendant Atmel Corporation ("Atmel"), which in July 2015 created the "Atmel Corporation U.S. Severance Guarantee Benefit Program" (the "Plan"), an ERISA plan that guaranteed all United States-based Atmel employees generous severance benefits if they: (1) kept working for Atmel while it searched for an appropriate merger partner; and (2) were later terminated without cause by the new company post-merger. These conditions were fully satisfied. Plaintiffs remained on the job as loyal Atmel employees from July 2015 when the Plan was created, through early April 2016 when Atmel completed its merger with defendant Microchip Technology Inc. ("Microchip") and Microchip fired all nine plaintiffs without cause.

Throughout those nine months of transition and uncertainty, plaintiffs received repeated assurances, orally and in writing, that they were protected by the Plan's severance guarantees and would receive Plan benefits if Microchip terminated them without cause after the merger. *See infra* at 4-7. Once Microchip gained control of the company, though, it reneged on its obligations under ERISA and the Plan by, among other things, announcing as soon as it took control that the Atmel Plan had "automatically expired" seven months earlier in November 2015, and that none of its former Atmel employees (including the nine plaintiffs) were eligible for benefits under that Plan.

In 2019, this Court granted partial summary judgment to plaintiffs on their claims for ERISA benefits and breach of fiduciary duty, concluding that Microchip's interpretation of the Atmel Plan language, and later its Plan Administrator's interpretation, were "so plainly incorrect as to violate any potentially applicable standard of review." Dkt. 95 at 9. The Ninth Circuit reversed, concluding that the phrase "will result in a Change of Control" in the definition of "Initial Triggering Event" was sufficiently ambiguous that this Court, on remand, should conduct further inquiry to determine what the drafters of the Atmel Plan intended. Dkt. 133 at 2.

For the reasons set forth below, reading the Plan as a whole in light of the entire Administrative Record (whose contents comprise the only evidence the Court is permitted to consider in adjudicating a plaintiff's claim for benefits under Section 502(a)(1)(B), *see infra* at 18-

19), only one conclusion is permitted. The Court got it right the first time, as the Plan language read in its entirety and the *uncontradicted* evidence in the Administrative Record clearly establish.[1]

The Plan guaranteed severance benefits upon the occurrence of three sequential events. First, there had to be an "Initial Triggering Event" before November 1, 2015, defined as a "Definitive Agreement" with a prospective merger partner company "that will result in a Change of Control of the Company." AT 4115-19. Upon the occurrence of "an" Initial Triggering Event, the Plan "will remain in effect for 18 (eighteen) months following that Initial Triggering Event (and not expire by its terms on November 1, 2015). *Id.* Second, a "Change of Control" must "actually occur[]" within the 18-month period of the Plan's extended existence. *Id.* Third, the employees seeking severance benefits under the Plan must be terminated without cause within that same 18-month period. *Id.*

Microchip concedes that each of these events occurred, yet it argues that the Plan nonetheless "automatically expired" because Microchip's merger agreement with Atmel (despite unquestionably resulting in a "Change of Control") was not the *same* merger agreement that triggered the 18-month extension of the Plan. As this Court previously concluded, Microchip's benefits denials (which were affirmed by a Plan Administrator who had no authority to make a final determination on plaintiffs' benefits claims) cannot stand, not only because Microchip's construction contradicts the Plan's actual language but also because that construction is irreconcilable with the "Plan's stated purpose"—to encourage Atmel's employees to keep working for the company during the inevitable period of uncertainty when Atmel was seeking to be acquired by another company. Dkt. 95 at 11.

Although the Ninth Circuit held that the Plan language is ambiguous, the intended meaning

---

[1] The Administrative Record consists of the Plan, the documents submitted by plaintiffs to the Plan Administrator in support of their claims and their appeals from the Plan Administrator's denial of those claims, and the Plan Administrator's letters denying those claims and appeals and requesting additional time to respond to those claims and appeals (purportedly to enable her to complete her investigation). The Administrative Record, attached as Exhibit A to the Declaration of Cliff Palefsky, comprises over 6,900 pages Bates Stamped 0001-2756, ATMEL PLAN/BERMAN 0001-4119 (cited below as "AT 0001") and BER 001-034 (cited as "BER 001"). For the Court's convenience, plaintiffs have also submitted a shorter "Summary Judgment Appendix" with key excerpts from the Administrative Record. The Appendix (215 pages) is attached as Exhibit A to the Declaration of Keith Ehrman and is identical to the Appendix submitted in support of plaintiffs' 2018 summary judgment motion. *See* Dkt. 55. In general, the Appendix contains a single "sample" document involving one plaintiff, rather than nearly identical copies for all nine plaintiffs. Documents cited in this brief that are *not* in the Appendix are preceded by *see also*.

of the Plan is clear, because the relevant evidence is undisputed and conclusively demonstrates that (1) the Atmel executives drafted the Plan to be construed as the Court construed it, i.e., so any "Definitive Agreement" entered into before November 1, 2015 would be "an Initial Triggering Event" that extended the life of the Plan for 18 months, whether or not the later "Change of Control" merger was with the same company that signed the triggering Definitive Agreement with Atmel, and (2) separate Plan language made Atmel's pre-merger construction "conclusive and binding on all persons," including on any company that acquired Atmel during that 18-month period, e.g., Microchip. Because the undisputed material facts establish plaintiffs' entitlement to benefits, summary judgment should be granted in favor of plaintiffs.

## FACTS

### A.      The ERISA Severance Plan

On July 9, 2015, amid market speculation about a possible acquisition of Atmel, and in an effort to encourage Atmel employees to continue working despite uncertainties about the company's future, Atmel announced a new severance plan, applicable to all U.S.-based employees (including all nine plaintiffs in this case). AT 4115-19. The key provisions of that ERISA plan were set forth in the cover letter and accompanying Addendum (the "Plan Documents"), which stated in principal part:

> **Term of the Severance Guarantee Benefit Program:** The U.S. Severance Guarantee Benefit Program is effective from July 1, 2015 and will terminate on November 1, 2015 unless an Initial Triggering Event (as described below) has occurred prior to November 1, 2015, in which event the U.S. Severance Guarantee Benefit Program will remain in effect for 18 (eighteen) months following that Initial Triggering Event.
> **Eligibility:** Eligibility is limited to U.S.-based employees of Atmel Corporation as of the date a Change of Control is consummated.
> **Initial Triggering Event:** Benefits under the U.S. Severance Guarantee Benefit Program will become available to eligible employees only if the Company enters into a definitive agreement (a "Definitive Agreement"), on or before November 1, 2015, that will result in a Change of Control of the Company. If a Definitive Agreement is not entered into on or before that date, the U.S. Severance Guarantee Benefit Program described in the letter and this Addendum will automatically expire, unless expressly extended by the Company's Board of Directors.
> **Benefits Conditions:** After an Initial Triggering Event occurs that makes available to eligible employees the U.S. Severance Guarantee Benefit Program, participants will then be entitled to receive cash payments and COBRA benefits if, but only if: (A) A Change of Control actually occurs; and (B) Their employment is terminated without "Cause" by the Company (or its successor) at any time within 18 months of the execution date of the Definitive Agreement.

AT 4115-16.

As this Court held in 2019, "the Atmel Plan created three conditions precedent to Plaintiffs' entitlement to severance benefits: (1) an Initial Triggering Event occurred before November 1, 2015; (2) a Change of Control transpired; and (3) plaintiffs were terminated without cause." Dkt. 95 at 10. Contrary to Microchip's position, there was no fourth condition requiring that the Change of Control involve the same company and the same terms as the Definitive Agreement. As the Court explained, "that is not what the Atmel Plan says." *Id.*

Each of these three conditions was satisfied. As a result, each plaintiff upon termination became entitled to ERISA-protected benefits consisting of: (1) a cash payment of between 25% and 50% of the employee's annual base salary (depending on whether the employee was a director, a professional exempt employee, or a non-exempt employee); (2) paid health insurance premiums for three to six months (again depending on the employee's job category); and (3) a prorated portion of the employee's annual incentive bonus (for director-level and professional exempt employees). *See* 2184-89; *see also* AT 210-15, 1969-74, 1992-97, 2019-24, 2048-53, 2077-82, 2099-2104, 2121-27.

**B.    Atmel's Contemporaneous, Binding Interpretations of the Plan Language**

On September 19, 2015, well before the Plan's November 1, 2015 deadline, Atmel entered into an agreement with Dialog Semiconductor plc ("Dialog"), under which Dialog agreed to acquire Atmel for $4.6 billion in cash and stock. 2184-85, 2202-48. Several months after Atmel entered into its Definitive Agreement with Dialog but before that proposed merger closed, Microchip approached Atmel and made a more attractive offer. 2184-85, 2249-51. Atmel offered Dialog the opportunity to respond by increasing its prior offer, but Dialog declined. *Id.* Atmel thereupon exercised its contractual right to enter into a merger agreement with Microchip, which it did on January 19, 2016. *Id.* Throughout the pre-merger period, from the Plan's July 2015 inception date until the close of the Atmel-Microchip merger on April 4, 2016, Atmel itself was the Plan Administrator and was solely responsible for administering and interpreting the Plan. *See* AT 4116.

Critically, the Plan states that during that pre-merger period, "[a]ny decision,… action, [or] interpretation" by Atmel regarding any term or condition of the Plan or any related document "will be conclusive and binding on all persons," thus preventing any successor company from later

depriving Atmel's employees of the severance benefits that Atmel intended those employees to receive in exchange for their loyalty:

> The [U.S. Severance Guarantee Benefit] Program will be administered and interpreted by the Company [Atmel]. *Any decision made or other action taken* by the Company prior to a Change in Control with respect to the Program, and *any interpretation by the Company prior to a Change in Control of any term or condition of the Program*, or any related document*, will be conclusive and binding on all persons* and be given *the maximum possible deference allowed by law.*

AT 4116 (emphasis added).

The evidence in the Administrative Record shows, without contradiction, that Atmel's most senior executives repeatedly explained to Atmel's employees, including the nine plaintiffs, both before and after entering into its January 19, 2016 merger agreement with Microchip, that those employees would be entitled to the severance benefits guaranteed by the Plan if: (1) they remained with the company until after its merger with Microchip became final, and (2) Microchip thereafter terminated them without cause before the Plan's March 19, 2017 expiration date. AT 210-11, AT 410-13; 1915-18, 1969-70, 1992-93, 2019-20, 2048-49, 2077-78, 2099-2100, 2121-23, 2184-85.

For example, on January 14, 2016, just days before Atmel formally announced it would be merging with Microchip rather than Dialog, Atmel distributed a letter to its employees to reassure them that their severance rights would not be affected by Atmel's choice of merger partners. That letter, signed by Atmel's Senior Vice President of Human Resources, confirmed that "[t]he [July 2015] U.S. Severance Guarantee Program continues to remain in place" and that Atmel was writing them "to remind you of the benefits for which you may be eligible in the event your employment is ... terminated ... in connection with a Change of Control ... *including an acquisition by Dialog or Microchip*." AT 410-13, AT 419; 1915-18, 1924 (emphasis added). As this letter made clear, Atmel—which drafted the Plan to include the language making its own pre-merger constructions "conclusive and binding"—construed the Plan language to mean that Atmel's Definitive Agreement with Dialog in September 2015 extended the life of the Plan until March 19, 2017, thus entitling Atmel employees to Plan benefits if they remained employed until after a change of control and were later terminated without cause by Microchip or any other future merger partner.

The uncontradicted Administrative Record also establishes that Atmel repeatedly confirmed

its binding interpretation before the April 4, 2016 merger close, reaffirming that the Plan remained in effect and would entitle the Atmel employees to severance if they remained in their jobs until after the merger and were subsequently terminated without cause. *See* AT 165-76; 1904-13. For example, Atmel's President and CEO (Steve Laub) and Atmel's Senior Vice President of Human Resources (Suzanne Zoumaras) held multiple meetings with Atmel employees in which they announced that Atmel employees' right to Plan benefits would not be affected if Microchip replaced Dialog, because Atmel had entered into a triggering "Definitive Agreement" in September 2015—a construction that Zoumaras explained had been confirmed by Atmel's executive team. AT 210-11, AT 410-13; 1915-18, 2019-20, 2121-23. Numerous other high-level Atmel executives and managers—including Senior Vice Presidents, Vice Presidents and Directors—made similar representations to Atmel's employees between January and April 2016. *See* AT 210-11, AT 410-13; 1915-18, 1969-70, 1992-93, 2019-20, 2048-49, 2077-78, 2099-2100, 2121-23, 2184-85.[2]

Microchip was well aware of Atmel's pre-merger "conclusive and binding" interpretation of the Plan, and it too communicated to Atmel's employees that they would be eligible for severance benefits under the Plan if they kept working for Atmel through the date of the merger and were later terminated without cause. *See* AT 165-76 (at AT 173), AT 210-11; 1904-13 (at 1906-08). For

_____

[2] This Court cannot consider evidence outside the Administrative Record in adjudicating plaintiffs' claim for benefits. *See infra* at 18-19. If, however, the Court agrees with Microchip that extra-record materials may be considered, the undisputed deposition testimony of the Atmel executives who created and implemented the Plan unequivocally confirms their intent that the Plan would remain in effect following an Initial Triggering Event even if the company that entered into the triggering Definitive Agreement was not the company that later acquired Atmel.

Atmel, through its Compensation Committee, delegated to four of its highest-level executives—CEO Laub, Senior VP of Human Resources Zoumaras, Senior Vice President & Chief Legal Officer Scott Wornow, and CFO and Senior VP Steve Skaggs—the authority to create and implement the Plan. Ehrman Dec. Ex. B (AT 9194-9200, AT 9964-72). Zoumaras, who personally drafted the Plan, confirmed in her deposition that the Plan was "carefully worded to ensure that if there was a superior bid or some other bid," the Plan would remain in effect, and that it was "obvious" that the upcoming merger with Microchip was covered by the Plan. Ehrman Dec., Ex. C (Zoumaras Depo., 7:7-23; 8:18-9:6; 11:18-13:18; 14:5-16:18; 18:5-24:24; 41:4-10). Atmel's CEO Laub, who worked with Zoumaras on creating the Plan, confirmed that the merger agreement with Dialog constituted an "Initial Triggering Event" whether or not Dialog ended up acquiring the company, and that Atmel employees would be entitled to severance regardless of whether Dialog or Microchip acquired Atmel. Ehrman Dec., Ex. D (Laub Depo., 7:1-14:5; 18:6-21; 24:2-16; 28:11-25). These executives also confirmed that they explained this to Atmel employees before the merger. Ehrman Dec., Ex. C (Zoumaras Depo, 23:2-27:24), Ex. D (Laub Depo, 12:18-14:5; 24:2-16).

example, in February 2016 (well *after* Microchip agreed to acquire Atmel), Atmel distributed to its employees a "Frequently Asked Questions" memorandum entitled "Microchip Transaction: Effect on Compensation and Benefits for U.S. Employees," which Microchip had reviewed and approved before its distribution. AT 410-13, AT 421-26; 1915-18, 1926-31, 2184-85, 2190-95. In response to the question, "What happens to my employment and compensatory arrangements with Atmel after the closing?," the memorandum stated: "Microchip has agreed to honor each of your employment and compensatory contracts (including … severance … agreements) with Atmel, or its subsidiaries, that are in effect immediately prior to the closing of the transaction." AT 422.[3]

Senior members of Microchip's finance team (CFO Eric Bjornhold, Director of Finance Phil Kagel, and Vice President of European Finance Nawaz Sharif) confirmed Microchip's severance-pay commitment to the Atmel employees during two meetings that Microchip conducted with Atmel employees on February 29, 2016. During those meetings, the Microchip executives reiterated that Microchip would honor any severance plan in effect prior to the merger. AT 410-13.

Not once before the merger close did Microchip or Atmel take the position that the Plan had "expired" on November 1, 2015 or that it would only continue in effect if Dialog were the acquiring company. *See* AT 165-76 (at AT 173); 1904-13 (at 1906-08). Not once during that period did Microchip even hint to Atmel's employees that it disagreed with Atmel's binding interpretation or that it planned to deny severance benefits to any former Atmel employee it terminated without cause. *Id.* Not until *after* plaintiffs had fully complied with their side of the bargain by continuing to work through the merger did Microchip begin to assert that the Plan had expired and that no former Atmel employees would be entitled to severance benefits upon being fired without cause.

## C.   The Events that Resulted in Vesting of Severance Benefits

Under Plan, the September 2015 merger agreement between Atmel and Dialog constituted a "Definitive Agreement," meaning that Atmel's and Dialog's execution of this agreement was "an

---

[3] Atmel and Microchip also jointly drafted and approved a Proxy Statement regarding the merger, which they filed with SEC in February 2016 and which stated, "Microchip has agreed … to honor and perform all employment or compensatory contracts between Atmel … and any Atmel employees … (including all … severance … change in control and termination contracts disclosed to Microchip … )." 1-11, 198-207.

Initial Triggering Event" that extended the term of the Plan for 18 months, to March 19, 2017.
Atmel's execution of that Definitive Agreement with Dialog therefore satisfied the Plan's *first*
condition for plaintiffs' later entitlement to severance benefits and extended the existence of the Plan
for 18 months.[4]

Subsequently, after Atmel agreed to merge with Microchip rather than Dialog, the Atmel-
Microchip merger closed on April 4, 2016 (*see* 2184-85) and constituted "a Change of Control"
within the plain meaning of the Plan, therefore satisfying the *second* condition for plaintiffs'
entitlement to severance benefits.

Finally, immediately after the merger, Microchip began terminating former Atmel
employees, and terminated all nine plaintiffs without cause between April 4, 2016 and March 19,
2017 (the 18-month cut-off date). AT 210-11, AT 410-13; 1915-18, 1969-70, 1992-93, 2019-20,
2048-49, 2077-78, 2099-2100, 2121-23, 2184-85.[5] These terminations satisfied the Plan's *third* and
final condition for entitlement to severance benefits.

### D.   Microchip Refuses to Comply with the Plan's Severance Guarantees.

Immediately after the merger close, Microchip began informing the Atmel employees whom
it terminated without cause that they would not be paid severance benefits under the Plan. AT 410-
13; 1915-18, 2121-23, 2184-85. As Microchip began firing dozens and then hundreds of former
Atmel employees, it announced in April 2016 that the Plan had "expired" on November 1, 2015
because there had been no qualifying "Definitive Agreement" between Atmel and Microchip, and
that as a result, Microchip and the Plan had no obligation to pay any severance benefits to the
hundreds of employees who had loyally remained with Atmel. *Id. M*icrochip took this position
despite the language of the Plan, despite Atmel's "conclusive and binding" pre-merger Plan

---

[4] Dialog and Atmel commemorated their merger agreement in an "Agreement and Plan of Merger," which they announced in a September 20, 2015 press release and disclosed in SEC filings. 2184-85, 2202-48. Atmel's September 19, 2015 Form 8-K filing began with a section entitled, "Entry into a Material Definitive Agreement," whose explanatory text stated, "Under the terms of the Merger Agreement, the acquisition of Atmel will be accomplished through a merger..." 2212-14.

[5] Microchip eventually terminated over 200 Atmel employees during the 12 months following the merger (who were collectively owed more than $12 million in Plan benefits). *See* Ex. H to Ehrman Decl. (documents produced by Defendants in March 2018 and Bates Stamped, ATMEL PLAN/SCHUMAN 1461–2789).

interpretation, and despite Atmel's and Microchip's repeated assurances to plaintiffs that the Plan's severance benefits would be paid to Atmel employees whom Microchip terminated without cause between the April 4, 2016 merger date and March 19, 2017.[6]

In breach of its fiduciary duties, Microchip then embarked on a cynical campaign to coerce and intimidate its former Atmel employees into waiving their rights to Plan benefits, including by making knowingly false statements about the employees' rights under the Plan and under ERISA and by failing to inform the employees of their statutory right to pursue ERISA benefits claims and to challenge any denial of those claims. AT 410-13; 1915-18, 2121-23, 2184-85.

On April 6, 2016, just two days after the merger closed, Microchip sent a letter to the first wave of terminated Atmel employees, including plaintiffs Berman, Vu, Viera-Castillo, and Mirfakhraei. AT 210-11, AT 217-23; 1992-93, 2006-12, 2019-20, 2035-41, 2048-49, 2062-68. Microchip's April 6 letter offered those employees four to six weeks of severance pay (in contrast to the four to six *months* of salary guaranteed by the Plan) in exchange for their signed release of all claims against Microchip and Atmel. *Id.* Those plaintiffs refused to sign. *Id.*

On or about April 11, 2016, Microchip tried again, sending new letters to its former Atmel employees (including all nine plaintiffs), offering them 50% of the severance payments the Plan would have provided if they would now sign a release of all claims against Microchip and Atmel. AT 210-11, AT 225-30; 1969-70, 1983-90, 1992-93, 2019-20, 2048-49, 2077-78, 2099-2100, 2121-23, 2184-85; *see also* 2014-17, 2043-46, 2070-75, 2091-95, 2113-17, 2135-39, 2196-2201. Again, Microchip falsely stated that the Plan had expired and that any Atmel employee who refused to sign would not receive any severance benefits. *See* AT 410-13; 1915-18, 2184-85. Again, Microchip breached its fiduciary duties by failing to inform those employees of their rights under the Plan and their statutory rights under ERISA to file a claim for benefits and to appeal any claim denial. *See* AT

---

[6] Microchip first announced this position in early April 2016, after the merger but 2-1/2 months *before* it selected Carly Petrovic, Microchip's Director of Human Resources, to be the new Plan Administrator. AT 4113-14; *see also* Ex. E to Ehrman Decl. (Atmel Resp. to Pl's First Set of Interrogs, ¶¶ 1, 4); Ex. F to Ehrman Decl. (Microchip Resp. to Pl's First Set of Interrogs, ¶ 21). Petrovic rubber stamped Microchip's position when she later denied plaintiffs' claims for Plan benefits and their appeals from those denials. *See, e.g.,* 238-41; BER 1-3.

210-11, 1969-70, 1983-90, 1992-93, 2019-20, 2048-49, 2077-78, 2099-2100, 2121-23, 2184-85.

In response to the second batch of letters and Microchip's threats, most of the terminated Atmel employees yielded to Microchip's pressure and misrepresentations and signed the "50%" releases. AT 410-13; 1915-18, 1933-38. (Those are the class members in *Schuman v. Microchip Technology, Inc.*, No. 4:16-CV-05544-HSG). The nine plaintiffs in this case still refused to sign. AT 210-11, 1969-70, 1992-93, 2019-20, 2048-49, 2077-78, 2099-2100, 2121-23, 2184-85.

**E.   Defendants Wrongfully Denied Plaintiffs' Claims for Plan Benefits.**

Microchip terminated each of the plaintiffs between April 4, 2016 and October 1, 2016, without cause and without paying any severance. *Id.* Between May 20, 2016 and October 5, 2016, each plaintiff submitted a timely claim for Plan benefits to the Plan Administrator, supported by extensive documentation, all of which is in the Administrative Record. *See, e.g.,* 1904-13 (claim letter of plaintiff Schwarz); *see also* AT 3352-3637; 1-226, 604-871, 887-1112, 1118-1341, 1349-1595, 1915-2278, 2296-2519, 2527-2687(submissions from other plaintiffs).

Plan Administrator Petrovic denied each plaintiff's claim in late 2016. 238-41; *see also* AT 1894-97, AT 3339-42; 883-86, 1114-17, 1345-48, 1598-1601, 2279-82, 2523-26.[7] Her cursory denial letters simply stated that the Plan had "expired" on November 1, 2015 because the merger agreement between *Dialog* and Atmel did not result in a "Change in Control," so plaintiffs were "not eligible for benefits." *Id.* That was the extent of her explanation. Her denial letters made no reference to plaintiffs' evidence and arguments, such as plaintiffs' showing that Atmel—the Plan's drafter— had made a definitive, pre-merger interpretation of the Plan that entitled plaintiffs to severance benefits under the Plan once Microchip terminated them without cause. Nor did she cite any evidence in the Administrative Record to support her supposed plain-language Plan interpretation.[8]

---

[7] ERISA requires Plan Administrators to respond to each claim within 90 days but permits a 90-day extension if "special circumstances" exist. 29 CFR §2560.503-1(f)(1). Petrovic gave herself an extension based on the representation that she needed "an extension of time" because she was purportedly "obtaining all appropriate documentation." 227; *see also* AT 1917; 872, 1113, 1344, 1597, 2522. But she obtained *no* additional documentation beyond what the plaintiffs submitted. *See infra* at 10 n.8.

[8] The Administrative Record shows *no* effort by the Plan Administrator to investigate plaintiffs' claims (or appeals) or to consider the evidence they submitted. Plaintiffs served the Plan Administrator with a document request in December 2016, seeking production of all documents

ERISA requires Plan Administrators, as fiduciaries, to make benefits decisions solely in the interest of the plan participants and beneficiaries. *See* 29 U.S.C. §1104(a). To fulfill those responsibilities, ERISA fiduciaries must provide a clear and reasoned explanation for any benefits denial, including by addressing the claimant's evidence and arguments. *See* 29 U.S.C. §1133; 29 C.F.R. §2560.503-1(g)(1), (h)(2). Plan Administrator Petrovic did neither.

**F.      Plaintiffs Timely Appealed the Denials of the Benefits Claims.**

Plaintiffs exhausted their administrative remedies by timely appealing the Administrator's adverse benefits determinations in January 2017. *See, e.g.,* AT 165-76 (plaintiff Berman's appeal letter); *see also* AT 177-465, AT 545-862, AT 1203-1502, AT 1594-1893, AT 1971-2270, AT 2350-2649, AT 2695-2994, AT 3039-3338, AT 3638-3937 (other plaintiffs' appeals). Plaintiffs' appeals rested upon evidence demonstrating that the Plan had not "expired" on November 1, 2015 and that plaintiffs were entitled to severance benefits under the Plan language as conclusively interpreted by Atmel. *Id.* Among the points asserted by plaintiffs in their appeals, without rebuttal from Microchip and without any contrary evidence in the Administrative Record, were:

- The Plan did not expire on November 1, 2015. The Plan Administrator's denial letters added a new and improper "condition" to Plan eligibility by stating that to trigger entitlement to Plan benefits, Atmel's "Definitive Agreement" before November 1, 2015 had to be with the company with which Atmel ultimately merged;

- Atmel had foreseen the reasonable possibility that, after entering into a merger agreement but before that merger closed, Atmel might obtain a more attractive merger offer, which is why Atmel drafted the Plan so "an" Initial Triggering Event did not have to be the agreement between Atmel and the same company with which a Change of Control eventually occurred;

- The Plan gave Atmel express authority to make "conclusive and binding" interpretations and decisions with respect to the Plan and its terms before the close of a merger. Before the Microchip merger, Atmel made a "conclusive and binding" interpretation and decision regarding the Plan's "eligibility" language, and took action regarding employees' potential entitlement to benefits by concluding and announcing that Atmel employees who remained

bearing on the claims-review process and on the Administrator's reasons for having denied plaintiffs' claims. AT 469-75. Had any new documents been produced in response to that request, they would have been included in the Administrative Record. However, the only documents produced were: (1) the documents that plaintiffs had themselves submitted in support of their claims; (2) the Administrator's cursory correspondence to plaintiffs' counsel requesting "more time" and denying the claims; and (3) the Plan documents. BER 28-31 (defendants' January 23, 2017 cover letter re document production); *see also* 1-2756 (document production). Microchip asserted that the Plan was the only document "relevant" to the evaluation of plaintiffs' claims and appeals. *See* AT 469-75; BER 28-34; 1904-13. *Thus, **nothing** in the Administrative Record contradicts plaintiffs' uniform evidence confirming their eligibility for benefits.* If any other evidence supported the claims denials, Microchip was required to have produced it and included it in the Administrative Record.

employed until after the merger closed *remained* eligible for Plan benefits regardless of whether "Microchip or Dialog" were the acquiring company; and

- Microchip was aware of the Plan's language and of Atmel's conclusive and binding interpretation of that language before the merger closed and knew and understood that it would be required to pay the benefits guaranteed by the Plan to any former Atmel employee who remained employed through the date of the merger and was later terminated without cause by Microchip before March 19, 2017.

*See, e.g.*, AT 165-76.

### G. Despite Being Unauthorized to Review Her Own Decisions, Plan Administrator Petrovic Affirms Her Benefits Denials.

In June 2016, Microchip designated Sue Flores, a Microchip Senior Manager, to decide any appeals from the Plan Administrator's denial of plaintiffs' benefits claims. AT 4113. Nonetheless, in another clear breach of fiduciary duty, Plan Administrator Petrovic herself ruled upon plaintiffs' appeals from her claims-denial rulings. In a series of identical letters, Petrovic in March 2017 denied each plaintiff's appeal for the same reason she had denied their claims—because Atmel's merger agreement *with Dialog* did not result in a change of control. *See, e.g.*, BER 1-3; *see also* BER 4-27. Petrovic's denial letters did not address, let alone refute, *any* of plaintiffs' evidence or arguments.

### H. Procedural History

In July 2018, plaintiffs moved for summary judgment on their denial-of-benefits claim and for partial summary judgment (as to liability only) on their breach-of-fiduciary duty claim. *See* Dkts. 54-68. This Court granted plaintiffs' summary judgment motion in full. Regarding plaintiffs' denial-of-benefits claim, the Court held that Microchip's "Plan Administrator's interpretation of the Atmel Plan was so plainly incorrect as to violate any potentially applicable standard of review." Dkt. 95 at 9. The Court rejected Microchip's construction of the Plan because "[t]he Atmel Plan did not say that the Change of Control contemplated by the Definitive Agreement which constituted the Initial Triggering Event must be the same Change of Control that 'actually occurs.' It used the terms '*will* result' and '*a*' Change of Control rather than '*does* result' and '*the*' Change of Control." *Id*. at 11 (emphasis in original). This Court further explained that "[w]ere the Court to adopt [Microchip's] interpretation of the Plan (which is foreclosed by the plain language), the Plan's stated purpose would not be served" because Microchip's "interpretation of the Plan would do nothing to ease concerns among Atmel employees, because it would offer minimal assurances that they would

receive benefits following an acquisition." *Id*. at 11-12. The Court also granted summary judgment for plaintiffs on their breach-of-fiduciary-duty claim as to liability and denied Microchip's Rule 56(d) motion to defer any summary judgment ruling until after further discovery. *Id*. at 12-13.

On appeal, the Ninth Circuit reversed and remanded, concluding that the pertinent Plan language was "ambiguous" rather than plain and, for that reason, held that this Court erred "in denying defendants' motion for discovery under Rule 56(d)…." Dkt. 133 at 2. (Defendants have now taken the additional discovery they sought, *see infra* at 25).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party has the initial burden of establishing that the material facts are undisputed. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party sustains that burden, the nonmoving party must identify specific facts, supported by admissible evidence, creating a material dispute as to the elements of the moving party's claims. *See* Fed.R.Civ.P. 56(c). Conclusory allegations in a declaration or affidavit will not suffice. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Where a case "is not fully adjudicated by a motion for summary judgment, the court is empowered to grant summary adjudication as to specific issues if it will narrow the issues for trial." *Bernstein v. Travelers Ins. Co.*, 2006 WL 2567875 at *2 (N.D. Cal. Sept. 5, 2006) (*citing* Fed.R.Civ.P. 56(d)); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441-42 (9th Cir. 1990).

## ARGUMENT

**I.    Review of Microchip's Plan Administrator's Benefits Denials is De Novo and May Only be Based upon the Plan Language and Closed Administrative Record.**

**A.    De novo review applies to Microchip's interpretation for two independent reasons.**

In an ERISA action challenging a Plan Administrator's denial of benefits, the standard of review is de novo "unless the benefit plan expressly gives the administrator or fiduciary

13

discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). When a plan unambiguously grants discretionary authority to the Plan Administrator, the court will ordinarily apply an abuse-of-discretion standard. *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 928-29 (9th Cir. 2012). Under that standard, a benefits decision must be reversed if arbitrary and capricious, violates the Plan's plain language of the Plan, is unsupported by the evidence, or is unreasonable or illogical.[9] However, if the Plan Administrator's decision was potentially influenced by a conflict of interest, the reviewing court must "weigh" the effect of that conflict of interest in determining whether the Administrator abused its discretion. *See e.g.*, *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009); *Abatie v. Alta Health*, 458 F.3d 955, 965 (9th Cir. 2006) (en banc).

The question of what standard of review applies to an ERISA benefits decision is binary: either abuse-of-discretion review applies (if the plan unambiguously grants discretion) or review is de novo (in all circumstances other than where the plan unambiguously grants discretion). There is no intermediate, mid-level standard. *Abatie*, 458 F.3d at 963 (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (en banc) (administrator must show that plan unambiguously gives it discretionary authority in order to obtain judicial deference to administrator's decision); *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1325 (9th Cir. 1992); *Firestone*, 489 U.S. at 115. This is consistent with the established principle that ambiguities in a document are construed against the drafter. *Kearney*, 175 F.3d at 1090.

In this case, the abuse-of-discretion standard unquestionably applies to *Atmel's pre-merger* interpretation of the Plan language, because the Plan states:

> The [U.S. Severance Guarantee Benefit] Program will be administered and interpreted by the Company. *Any decision made or other action taken* by the Company prior to a Change in Control with respect to the Program, and *any interpretation by the Company prior to a Change in Control of any term or*

---

[9] *See Schikore v. BankAmerica Supp. Ret. Plan,* 269 F.3d 956, 961 (9th Cir. 2001) (decision that violates the plain language of the plan is arbitrary and capricious; construction of plan that conflicts with plain language is abuse of discretion); *Moyle v. Liberty Mutual Ret. Benefit Plan,* 823 F.3d 948, 958 (9th Cir. 2016) (decision arbitrary and capricious and abuse of discretion if contravenes plain language); *Salomaa v. Honda LTD Plan,* 642 F.3d 666, 676 (9th Cir. 2011) (abuse of discretion if unreasonable, illogical, or unsupported by the evidence). Under ERISA, the terms "abuse of discretion" review and "arbitrary and capricious" review are interchangeable.

1

*condition of the Program, or any related document*, will be conclusive and binding
on all persons and *be given the maximum possible deference allowed by law.*

2

Following a Change of Control, any decision made or other action taken by the
Company, and any interpretation by the Company of any term or condition of the

3

Program, or any related document that (i) does not affect the benefits payable
under the Program shall not be subject to review unless found to be arbitrary and

4

capricious or (ii) does affect the benefits payable under the Program shall not be
subject to review unless found to be unreasonable or not to have been made in

5

good faith.

6

AT 4116 (emphasis added). That Plan language makes binding and conclusive "any interpretation by

7

the Company prior to a Change in Control of any term or condition of the Program, or any related

8

document," and requires that determination be given "the maximum possible deference allowed by

9

law," thus unambiguously conferring broad discretion upon Atmel to interpret the Plan language

10

before any change in control occurs. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir.

11

2000) (citing cases where similar language established an unambiguous grant of discretion).

12

The *post*-merger interpretations of the Plan by Microchip and later by its Plan Administrator,

13

by contrast, are subject to de novo review because the Plan does not unambiguously grant Microchip

14

or the Plan Administrator discretion to construe the Plan language post-merger. Not only does the

15

Plan make only Atmel's *pre*-merger interpretation "conclusive and binding on all persons," but

16

subsection (ii) of the Plan provides that *after* a change of control, any interpretation of any term or

17

condition of the plan that "affect[s] the benefits payable under the Program shall not be subject to

18

review unless found to be unreasonable and not to have been made in good faith." This statement

19

does not *unambiguously* grant Microchip or its Administrator discretion to construe the Plan

20

language in making post-merger benefits decisions. *Kearney*, 175 F.3d at 1090.

21

In this case, for *pre*-merger interpretations, the standard-of-review language is as deferential

22

as possible, as it gives Atmel "the maximum possible deference allowed by law" and makes any pre-

23

merger interpretation "conclusive and binding on all persons." There is no comparable language for

24

*post*-merger interpretations, meaning the standard of review must be de novo for Microchip's and its

25

post-merger Plan Administrator's benefits denials. That is the only way to reconcile the Plan

26

language providing that any permissible pre-merger construction is "conclusive and binding"

27

(limiting the scope of any post-merger discretion) with the principle that judicial review under

28

ERISA can only be abuse-of-discretion or de novo. The drafters of the Atmel Plan knew how to grant discretion, yet they did not do so for benefits decisions made after the change of control.

Even if the Plan had granted discretion to the Plan Administrator to make post-merger benefits determinations, though, review here would still be de novo because Microchip never authorized Petrovic to review plaintiffs' appeals from her denial-of-benefits decisions. The record demonstrates that Microchip designated Sue Flores, not Carly Petrovic, to review those appeals. Yet Petrovic took it upon herself to deny them. *See supra* at 12. The Plan Administrator's ultra vires appeals denial thus further precludes defendants from obtaining deferential abuse-of-discretion review of those rulings. *See Shane v. Albertson's Inc.* 504 F.3d 1166, 1171 (9th Cir. 2007) (de novo review applies where benefits decision was made by "unauthorized" persons); *id.* ("When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision ... deferential review is not warranted") (quoting *Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001)). Petrovic's unauthorized appeals rulings would therefore have to be reviewed de novo even if the Plan language had provided for discretion for post-merger benefits determinations (which it did not).

### B.  Even if this Court concludes that abuse of discretion review applies, it must "weigh" the impact of Microchip's conflict of interest in its analysis.

Even if there were some basis for applying abuse-of-discretion review, any deference to the Plan Administrator's discretion would have to be limited because of Microchip and Petrovic's considerable conflicts of interest, which skewed their construction of the Plan.

ERISA plan administrators must make their benefits claims decisions with the *beneficiaries'* interests paramount, not the company's, because a Plan Administrator owes a fiduciary duty to those beneficiaries. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (Plan Administrator must "'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan.") (quoting 29 U.S.C. §1104(a)). When a Plan Administrator's decisions may have been influenced by a conflict of interest or other bias, as here, any judicial review of those decisions (if not de novo) must be more searching to take account of that conflict by "adjust[ing] the level of skepticism with which [the court] reviews a potentially biased

plan administrator's explanation … in accordance with the facts and circumstances of the case." *Montour*, 588 F.3d at 629-31; *Abatie*, 458 F.3d at 965-68.

A structural conflict of interest occurs when the same entity that funds an ERISA benefits plan also evaluates claims made against that plan. *See Glenn*, 554 U.S. at 112; *id.* ("every dollar provided in benefits is a dollar spent by … the employer; and every dollar saved … is a dollar in [the employer's] pocket." (quoting *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 144 (3rd Cir. 1987)); *Montour*, 588 F.3d at 630; *Salomaa,* 642 F.3d at 678. Such a structural conflict exists here, because the Plan was self-funded, meaning that Microchip would have to pay millions in severance benefits out of its own pocket if the former Atmel employees' ERISA benefits claims were accepted. *See* AT 4115-19; *see also* Ehrman Dec. Ex. H.

In addition to the conflict resulting from Microchip's direct financial interest in minimizing benefits payments, its Plan Administrator was personally conflicted. Before she assumed the fiduciary role of Plan Administrator, Carly Petrovic was a Director in Microchip's Human Resources Department, the department responsible for the post-merger communications to former Atmel employees stating that the Plan had expired and that those employees would not receive any severance unless they signed written releases of all claims under the Plan. *See* AT 165-76, AT 410-13; 1915-18, 1933-38, 2121-23, 2184-85; *see also* 2197-2201. For these reasons, Petrovic was unable to make fair, unbiased, and non-conflicted decisions concerning those same employees' entitlement to Plan benefits in her fiduciary role as Plan Administrator. *See* 238-41; BER 1-3. That conflict was exacerbated by Petrovic's decision to ignore Microchip's designation of someone else to review plaintiffs' appeals from her denial of their benefits claims, and then to reject plaintiffs' appeals for the same reason she denied their claims originally. *See supra* at 12.

Petrovic's conflict of interest was not just theoretical, as shown by her many actions that were illogical, contrary to the Plan language (on its face and as construed by Atmel before the merger), and in violation of her fiduciary obligation to construe Plan language consistent with the drafter's intent and in furtherance of the Plan beneficiaries' interests. These actions included:

1. Petrovic's failure to conduct a "[f]ull and fair" review, "tak[ing] into account all comments, documents, records, and other information submitted by the claimant...." *See* 29 C.F.R.

§2560.503-1(h)(2)(iv); *see also Black & Decker Dis. Plan v. Nord,* 538 U.S. 822, 834 (2003) ("Plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence ...."); *Glenn,* 554 U.S. at 118 (selective consideration of evidence is basis for setting aside Administrator's decision).

2. Petrovic's dual role as Plan Administrator and as a Director in the Human Resources Department that was responsible for Microchip's false and/or misleading statements about the Atmel employees' rights to pursue benefits under the Plan, their lack of entitlement to Plan benefits, and their purported ineligibility for any benefits unless they released all of their claims against Microchip and the Plan. *See* BER 28-34; AT 410-13, AT 469-75; 1904-18, 2121-23, 2184-85.[10]

3. Petrovic's delay in processing plaintiffs' claims. *See, e.g.*, 227, 238-41.

4. Petrovic's failure to investigate plaintiffs' claims, to address the evidence and arguments plaintiffs asserted, and to produce any documents supporting Microchip's position, thus preventing plaintiffs from obtaining full and fair review of their appeals. *See* AT 410-13, AT 469-75; BER 1-3, BER 28-34; 238-41, 1904-18, 2121-23, 2184-85.

The Court must consider the likely impacts of these conflicts if it reviews any aspect of defendants' benefits denials under an abuse-of-discretion standard, as there is a "high[] likelihood" that these structural and personal conflicts, alone and in combination, "affected the benefits decision." *Glenn*, 554 U.S. at 117.

**C.    Review of Microchip's benefits denial must be conducted on a closed record.**

It is black-letter law that judicial adjudication of claims for wrongful denial of plan benefits under Section 502(a)(1)(B) of ERISA must be based solely on the Administrative Record (subject to exceptions inapplicable here). *Montour*, 588 F.3d at 632 ("Judicial review of an ERISA plan administrator's decision on the merits is limited to the administrative record"); *Abatie*, 458 F.3d at

---

[10] ERISA imposes on fiduciaries a duty to discharge their duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. §1104(a)(1). Clearly, "to participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act solely in the interest of the participants and beneficiaries." *See Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996). Further, a "fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (citation omitted).

970 (same); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 111 (2013) (under

ERISA, "Courts of Appeals have generally limited the record for judicial review to the

administrative record compiled during internal review."); *Sandoval v. Aetna Life & Casualty Ins.

Co.*, 967 F.2d 377, 381 (10th Cir. 1992) ("[A] curtain falls when the fiduciary completes its review"

and a court "must evaluate the record as it was at the time of the decision."). That record includes the

*only* documents Microchip can rely upon to support its Plan Administrator's decision to deny

plaintiffs' claims and appeals or to establish her "compliance with the [required] administrative

processes and safeguards," and the *only* documents this Court may consider in adjudicating

plaintiffs' claims for benefits under Section 503 of ERISA and its implementing regulations, 29

U.S.C. §1133; 29 CFR 2560.503-1(h)(2)(iii), (m)(8)(i)-(ii). *See Montour*, 588 F.3d at 632 n.4 ("In

the ERISA context, the 'administrative record' consists of 'the papers the insurer had when it denied

the claim.'" (quoting *Kearney*, 175 F.3d at 1086).[11]

## II.   As this Court Previously Held, the Benefits Denials Must Be Reversed Under Any Standard of Review.

In 2019, this Court held, in awarding Plan benefits to plaintiffs, that Microchip's

"interpretation of the Atmel Plan was so plainly incorrect as to violate any potentially applicable

standard of review." Dkt. 95 at 9. The touchstone of contract interpretation is effectuating the

drafters' intent. Although the Ninth Circuit disagreed about whether the definition of "Definitive

Agreement" under the Plan was plain on its face, that ruling does not undermine this Court's

ultimate conclusion that Atmel intended the Plan to apply to employees in plaintiffs' circumstances,

because that construction was also fully supported by the Plan language as a whole, the Plan's

---

[11] The only exceptions to the closed-record rule for benefits claims apply to new evidence submitted by *beneficiaries*, not plan administrators. For example, a *beneficiary* may submit new evidence in court if necessary to conduct an "adequate" review of the beneficiary's claim. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (district court on remand could consider new scientific information, not available at the time of the administrative benefits decision, regarding beneficiary's ailment). Similarly, a *beneficiary* may submit new evidence in court that bears on the plan administrator's conflict of interest. *See Stephan v. Unum Life Ins. Co. of America*, 697 F.3d 917, 930 (9th Cir. 2012). Plaintiffs are not aware of any case in which the Ninth Circuit has permitted a *plan administrator* to submit new evidence bearing on the merits of a beneficiary's benefits claim. Nor has Microchip ever identified any exception that would permit it to submit new evidence in defense of its Plan Administrator's denial of plaintiffs' claims for ERISA plan benefits.

purposes, and the uncontradicted Administrative Record evidence.

> **A.**    **The Plan language as a whole, its purposes, the Administrative Record, and Atmel's binding pre-merger interpretation dispel any ambiguity in the definition of "Definitive Agreement."**

The language of the Plan states that the Plan will either expire by its own terms on November 1, 2015 or continue in existence for an additional 18 months if, before that date, Atmel enters into a "Definitive Agreement" with a prospective merger partner "that will result in a Change of Control of the Company." AT 4115. As of November 1, 2015, then, the Plan had either expired or was extended for an additional 18 months following a Definitive Agreement that constituted the Initial Triggering Event. No provision of the Plan permits it to, as Microchip asserts, be extended prior to November 1, 2015 and then *unextended* based on subsequent events. Whether a Triggering Event occurs (extending the life of the Plan) and whether the conditions for eligibility for Plan benefits are satisfied (a change in control followed by terminations without cause) are two independent inquiries.

To determine whether an Initial Triggering Event occurred before the Plan expired, there are only two relevant questions: (1) whether Atmel entered into an agreement with a prospective merger partner before November 1, 2015; and (2) if so, whether the terms of that merger agreement provide that, upon closing, Atmel will experience "a Change of Control," i.e., that it will be the acquired, rather than the acquiring, company under the terms of that agreement.

Nothing in the Plan's language requires the entity that entered into a "Definitive Agreement" with Atmel before November 1, 2015 (Dialog) to be the *same* entity that later became a party to the change of control. If an "Initial Triggering Event" occurs, the life of the Plan is extended for 18 months. During that period, there may be a separate inquiry into whether the Plan's "Benefits Conditions" were timely satisfied (i.e., whether, within that period, "A Change of Control actually occurs" and the claimant is subsequently terminated without cause). Microchip's construction of the Plan collapses these two distinct inquiries into a single extra-textual requirement that the same Definitive Agreement that triggers the Plan must also eventually result in a Change of Control. As this Court concluded, that illogical construction would add "an extra-contractual eligibility condition that is nowhere found in the Plan's language." Dkt. 95 at 8.

Thus, whether the Court applies a de novo standard of review in conducting these inquiries

1    (as it should, for the reasons explained *supra* at 13-16) or an abuse-of-discretion standard, it must

2    reject the Plan Administrator's denial of severance benefits to plaintiffs.[12]

3         Microchip's construction of the Plan is also impossible to reconcile with the drafters' intent,

4    which, as with any severance plan offered by a company that has announced an intent to be acquired,

5    was to encourage employees to remain on the job until a merger partner could be found and the

6    acquisition completed. This purpose would be completely undermined by a construction under

7    which the Plan "expired" on November 1, 2015 (more than five months before the Microchip merger

8    closed) or on January 16, 2016 (two-and-a-half months before the close, when Microchip replaced

9    Dialog as the preferred merger partner).

10        Microchip concedes that the Dialog merger agreement was a "Definitive Agreement"

11   providing for "a Change of Control," *see* Dkt. 74 at 4, but it identifies no Plan language that would

12   permit the Dialog agreement to somehow cease being an "Initial Triggering Event" after the fact.

13   Under Microchip's reading, the Plan would only be extended for an 18-month period if Atmel

14   entered into an initial merger agreement before November 1, 2015 that "*does in fact* later result in

15   *the* Change of Control anticipated by that specific agreement." Microchip's speculative, future-

16   event-triggered construction would make it impossible for any Plan beneficiary to know whether the

17   Plan continued to exist after November 1, 2015 and would therefore eliminate any incentive for

18   those employees to keep working for Atmel once Atmel received a better merger offer (or agreed to

19   modified terms of a previous offer). Common sense and reason thus fully support plaintiffs' (and

20   Atmel's pre-merger) construction, because otherwise plaintiffs and other Atmel employees would

21   have had no severance-pay based economic incentive to keep working for Atmel after Microchip

22

23   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
      [12] Microchip seems to interpret the Plan as requiring not only that the merger partner that signed
      the Definitive Agreement be the same company that ultimately obtains control, but also that *the*
24   *specific agreement* that satisfies the Initial Triggering Event must be the *same* as the ultimate
      agreement that results in a change of control. *See* 238-41; BER 1-3. That interpretation highlights the
25   absurdity of Microchip's position. Under this interpretation, employees would not be entitled to
      benefits if, for example, Dialog had entered into a Definitive Agreement before November 1, 2015 to
26   purchase Atmel for $50 million but then renegotiated the terms of the merger and executed a
      successor agreement after November 1 to purchase the company for $48 million instead. Such an
27   interpretation all but eviscerates the certainty that a severance program like the Plan is created to
      overcome among employees worried about their employment future who might otherwise seek new
28   positions before the uncertainty about a potential merger is resolved.

replaced Dialog as a potential merger company. Tellingly, Microchip has never offered *any* logical reason why Atmel would have created a severance plan that ceased to exist long before any covered employee would have been entitled to any benefits.

Crucially, *all* of the evidence in the Administrative Record (the only evidence upon which this Court can rely in construing the Plan) confirms that plaintiffs' construction of the drafters' intent is the only permissible construction. As plaintiffs have explained, the Atmel executives who drafted the Plan and thus were most familiar with its terms repeatedly explained to Atmel employees that the Plan remained in effect whether Dialog or Microchip ultimately acquired the company. *See supra* at 4-7. Atmel's highest-level executives, including its CEO, CFO, and Senior Vice President of Human Relations, consistently confirmed to Atmel employees' right to Plan benefits would not be affected if Microchip replaced Dialog, because Atmel had entered into the required "Definitive Agreement" in September 2015, before the November 1, 2015 deadline for an Initial Triggering Event. *Id.* This contemporaneous evidence of the Plan drafters' intent, as explained by *the very people who drafted the plan*, resolves any remaining ambiguity. *See id*.

Not a single piece of evidence in the Administrative Record contradicts this uniform evidence of the Plan drafters' intent or creates a material factual dispute. If any such contradictory evidence existed, Microchip had ample opportunity to identify it and include it in the Administrative Record. After all, Microchip acquired Atmel *before* plaintiffs filed their benefits claims, and it had access to all of Atmel's records and executives (before firing those executives after the merger). Yet, despite plaintiffs' demands, Microchip included in the Administrative Record only the Plan itself and the Plan Administrator's correspondence with plaintiffs' counsel, none of which supports Microchip's construction. *See supra* at 10 n.8.

Under ordinary principles of ERISA plan construction, the uncontradicted Administrative Record evidence is sufficient to establish the Plan drafters' intent and thus to resolve any ambiguity in the Plan language in plaintiffs' favor. But if any doubt remains, it must be resolved by the language in the Plan that make's Atmel's pre-merger constructions conclusive and binding—language that Atmel included to avoid future disputes over the meaning of the Plan language with a successor corporation that tried to avoid paying severance under the Plan as construed by Atmel.

1   As noted above, the Plan permits Atmel to issue conclusive and binding interpretations of

2   any of its terms or conditions before the close of a change-of-control merger. *Supra* at 5. Atmel

3   made such a conclusive and binding interpretation by confirming that the Plan remained in effect

4   regardless of whether Microchip or Dialog acquired Atmel, and that Atmel's employees would be

5   entitled to Plan benefits if the newly merged company terminated those employees between the

6   change-of-control date and March 19, 2017, the date the Plan expired. *Supra* at 4-7.

7   Because Atmel as the Plan drafter gave itself conclusive authority to construe the Plan

8   language as it did, Atmel's construction of that language is controlling, and Microchip's post-merger

9   Plan Administrator had no choice but to abide by that construction. Thus, even if that Plan

10  Administrator's decisions were subject to abuse-of-discretion rather than de novo review (which

11  they are not), those decisions had to comply with Atmel's pre-merger construction and must be

12  reversed because they rejected that construction instead of accepting it. *Cf. McDaniel*, 203 F.3d at

13  1113 ("A consistent pattern of interpretation is 'significant evidence' that the plan administrator

14  acted reasonably in interpreting ambiguous plan language.").

15          *          *          *

16  A Plan Administrator abuses its discretion if it construes Plan language to impose an

17  additional requirement for eligibility not appearing in the terms of the Plan. *See e.g.*, *Brown v. S.*

18  *Cal. IBEW-NECA Trust Funds*, 588 F.3d 1000, 1003-04 (9th Cir. 2009); *Canseco v. Construction*

19  *Laborers Pension Trust,* 93 F.3d 600, 609 (9th Cir. 1996); *Saffle v. Sierra Pacific Power Co.,* 85

20  F.3d 455, 459-60 (9th Cir. 1996). The Plan language as a whole, its purposes, and the uncontradicted

21  Administrative Record evidence demonstrate that nothing in the Plan requires that, to qualify as a

22  Definitive Agreement, a merger agreement must be with the same outside company that later takes

23  control. Once Atmel signed its agreement with Dialog, it bound its successor to pay severance

24  benefits under the Plan upon a later change of control—whether that change of control was with

25  Dialog or a different merger partner—if the merged company began laying off Atmel employees

26  without cause before March 19, 2017. The Plan Administrator's denial of benefits, which was based

27

28

on a Plan condition that does not exist, must therefore be rejected.[13]

**III.    This Court Should Reaffirm that Defendants' Actions Amounted to a Breaches of Fiduciary Duties.**

Section 404(a) of ERISA, 29 U.S.C. §1104(a), requires fiduciaries, including Plan Administrators, to discharge their duties solely in the interest of the plan participants and beneficiaries. Fiduciaries are obliged "to convey compete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information" and they "breach their duties if they mislead plan participants or misrepresent the terms or administration of a plan." *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 744 (9th Cir. 2017) (*quoting Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995)). In granting summary judgment to plaintiffs on their claim for benefits in 2019, this Court also granted summary judgment as to liability on plaintiffs' claim for breach of fiduciary duty, reasoning that "the Plan Administrator breached her duties when she misrepresented the terms of the Plan by denying Plaintiffs' claim for benefits." Dkt. 95 at 12-13. If this Court holds now, as it did two years ago, that "the Plan Administrator breached her duties when she misrepresented the terms of the Plan," Dkt. 95 at 12, it should again grant summary judgment for plaintiffs on the breach of fiduciary duty claim (as to liability). Moreover, Microchip committed additional breaches of fiduciary duty in reviewing plaintiffs' claims and appeals, including by not investigating plaintiffs' evidence and by having Plan Administrator Petrovic review the appeals from her own claims denials even though she was not authorized to do so.[14] A ruling that Microchip breached its fiduciary duties would enable plaintiffs

---

[13] Under ERISA, defendants' failure to pay these required Plan benefits entitles plaintiffs to restitution of the unpaid amounts plus pre-judgment interest, attorneys' fees, and costs, 29 U.S.C. §§1132(a)(1)(B), 1132(g)(1). *See* Dkt. 35 at 17-20. Because the amounts of interest, fees, and costs are continuing to accrue, plaintiffs suggest that if the Court grants this motion for partial summary judgment, the parties should meet and confer over those amounts and then either stipulate to those amounts or to present any remaining dispute to the Court for adjudication (as the parties did two years ago when the Court granted plaintiffs' prior motion for summary judgment).

[14] Defendants' discovery responses confirm that Petrovic did not conduct the investigation that her fiduciary obligation required. Defendants concede that Petrovic was the only person who "participated in, or [was] involved in," the decision to deny plaintiffs' claims and appeals, and that the Plan document was the *only* document that "support[s] or provide[s] evidence for" Petrovic's decisions. Ex. F to Ehrman Decl. (Microchip Resp. to Pl's First Set of Interrogs ¶ 3); Ex. G to Ehrman Decl. (Microchip Resp. to Pl's Req. for Prod. ¶ 31); *see also Guenther v. Lockheed Martin*

later, if they chose, to pursue an award of "monetary 'compensation' for a loss resulting from [defendants'] breach of [fiduciary] duty, or to prevent [defendants'] unjust enrichment." Dkt. 35 at 20-21 (*quoting CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011), *and citing Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014)).

**IV.      There Is No Reason to Defer Ruling on this Motion Pending Further Discovery.**

Microchip argued in opposing plaintiffs' 2018 summary judgment motion that the motion should be held in abeyance while Microchip takes additional discovery. Microchip has now taken all the discovery that could possibly affect this motion (and then some), including two sets of interrogatories, requests for production of documents, requests for admission, and the depositions of all nine plaintiffs (and many others). Thus, although Microchip is not entitled to rely on any evidence outside the Administrative Record (under Ninth Circuit precedent establishing that judicial review of a fiduciary's denial of a claim for benefits under Section 502(a)(1)(B) of ERISA is limited to the plan language and the closed administrative record, *see supra* at 18-19), Microchip can no longer claim that it lacked a full and fair opportunity to conduct whatever discovery it wanted.[15]

<u>**CONCLUSION**</u>

For the foregoing reasons, plaintiffs request that the Court grant partial summary judgment for plaintiffs and against defendants.

---

*Corp.*, 646 Fed. App'x 567, 570 (9th Cir. 2016) (courts may consider extra-record evidence in adjudicating ERISA breach of fiduciary duty claims).

[15] Plaintiffs submitted their previous summary judgment motion on July 2, 2018. *Berman* Dkt. 54. Defendants filed their Rule 56(d) motion and opposition on July 30, 2018. *Berman* Dkt. 74. Plaintiffs filed a combined reply/opposition on August 13, 2018, and defendants filed a reply in support of their Rule 56(d) motion on August 20. *Berman* Dkts. 76, 78. Thus, the summary judgment record upon which the Ninth Circuit ruled was complete by August 20, 2018. *After that date,* Microchip conducted extensive discovery, including by serving requests for production and interrogatories on all plaintiffs on July 24 and 25, 2018 (to which plaintiffs responded in the summer and fall of 2018 (*see Berman* Dkt. 72)), additional interrogatories and requests for admission in May 2021 (to which plaintiffs responded last month), and by taking the depositions of *all* plaintiffs (with the final plaintiff deposed in June 2021). The parties also deposed Suzanne Zoumaras, the drafter of the Plan (whom Microchip deposed in July 2018, *before* filing its Rule 56(d) motion (*see* Dkt. 74-1 at 3)), Atmel's former CEO Steve Laub (deposed in February 2019), Plan Administrator Petrovic (deposed in December 2018), Microchip's Senior VP of Human Resources Lauren Carr (deposed in June 2020), and Microchip's CEO Steve Sanghi (deposed in June 2020). Ehrman Dec.  ¶¶10-11.

Dated: July 23, 2021                    Respectfully submitted,

                                        **ALTSHULER BERZON LLP**
                                        MICHAEL RUBIN
                                        ANDREW KUSHNER

                                        **MCGUINN, HILLSMAN & PALEFSKY**
                                        CLIFF PALEFSKY
                                        KEITH EHRMAN

                                        **LAW OFFICE OF WILLIAM REILLY**
                                        WILLIAM REILLY

                                        By: */s/ Michael Rubin*
                                               Michael Rubin

                                        *Attorneys for Plaintiffs*