Michael Rubin (SBN 80618)
Matthew Murray (SBN 271461)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone:    (415) 421-7151
Facsimile:    (415) 362-8064
Email:        mrubin@altber.com
              mmurray@altber.com

Cliff Palefsky (SBN 77683)              William B. Reilly (SBN 177550)
Keith Ehrman (SBN 106985)               LAW OFFICE OF WILLIAM REILLY
MCGUINN, HILLSMAN & PALEFSKY            86 Molino Avenue
535 Pacific Avenue                      Mill Valley, CA 94941
San Francisco, CA 94133                 Telephone:    (415) 225-6215
Telephone: (415) 421-9292               Facsimile:    (415) 634-2897
Facsimile: (415) 403-0202               Email:        bill@williambreilly.com
Email:      cp@mhpsf.com
            keith@mhpsf.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ROBIN BERMAN, BO KANG, KHASHAYAR MIRFAKHRAEI, THANG VAN VU, DONNA VIERA-CASTILLO, GIRISH RAMESH, PATRICK HANLEY, ILANA SHTERNSHAIN and MANDY SCHWARZ,<br><br>        Plaintiffs,<br><br>    v.<br><br>MICROCHIP TECHNOLOGY INCORPORATED, a corporation; ATMEL CORPORATION, a corporation; and ATMEL CORPORATION U.S. SEVERANCE GUARANTEE BENEFIT PROGRAM, an employee benefit plan,<br><br>        Defendants | Case No. 4:17-CV-1864-HSG<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  May 18, 2023<br>Time:        2:00 p.m.<br>Courtroom:   2, Floor 4<br>Judge:      Hon. Haywood S. Gilliam, Jr.<br><br>Action Filed:  April 4, 2017 |

## NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 18, 2023 at 2:00 pm, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., Courtroom 2, 4th Floor, of the above-captioned Court, located at the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, plaintiffs will, and hereby do, move this Court to award plaintiffs' counsel $1.5 million in attorneys' fees and litigation expenses (plus a reasonable additional amount for subsequent "fees on fees") pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).[1]

This motion is made on the grounds that the nine individual plaintiffs are the prevailing party in this action, that the requested attorneys' fees award is fair, reasonable, and appropriate based on the results obtained and plaintiffs' counsel's lodestar, and that the litigation expenses were reasonably and actually incurred and are of the same type as are customarily billed to fee-paying clients.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the supporting declarations of Keith Ehrman, Michael Rubin, William B. Reilly, Richard Pearl, and Daniel Feinberg; the files and records in this matter; any opposition or reply briefs or declarations; and such argument as may be heard on this matter.

Dated: March 2, 2023                    Respectfully submitted,

**ALTSHULER BERZON LLP**
MICHAEL RUBIN
MATTHEW MURRAY

**MCGUINN, HILLSMAN & PALEFSKY**
CLIFF PALEFSKY
KEITH EHRMAN

**LAW OFFICE OF WILLIAM REILLY**
WILLIAM REILLY

By:     /s/Michael Rubin
                Michael Rubin
                *Attorneys for Plaintiffs*

---

[1] The amounts listed above reflect plaintiffs' counsel's hours and expenses through February 23, 2023. Plaintiffs will update those amounts in their reply brief.

1

## <u>TABLE OF CONTENTS</u>

2

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES

3

AND EXPENSES ................................................................................................ i

4

TABLE OF AUTHORITIES ............................................................................. iii

5

INTRODUCTION .............................................................................................. 1

6

BACKGROUND ................................................................................................. 3

7

8

      A.     Plaintiffs' Counsel Devoted Substantial Time and Resources to this Case on a Pure Contingency Basis, Despite the Risks Involved. ................................. 3

9

ARGUMENT ..................................................................................................... 10

10

      A.     Plaintiffs Are Entitled to an Award of Attorneys' Fees. ....................... 10

11

      B.     The Amount of Attorneys' Fees and Costs Sought Is Reasonable ......................... 1

12

13

            1.     Plaintiffs' Counsel's Lodestar Hours Are Reasonable ............................. 11

14

            2.     Plaintiffs' Counsel's Lodestar Rates are Reasonable ................................ 17

15

      C.     Plaintiffs' Counsel Are Entitled to Recover Their Reasonable Litigation Costs and Expenses. ............................................................................ 20

16

      D.     Plaintiffs' Counsel Are Entitled to Recover their Fees on Fees. .......................... 20

17

CONCLUSION .................................................................................................. 21

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOM; MPA ISO MOT. FOR ATTORNEYS' FEES, Case No. 4:17-cv-1864-HSG

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*In re Aqua Metals, Inc. Sec. Lit.*,
5    No. 17-CV-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ............................17, 20

6   *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
     963 F.Supp.2d 950 (N.D. Cal. 2013) ......................................................................................20
7

8   *In re Bluetooth Headset Prods. Liab. Litig.*,
     654 F.3d 935 (9th Cir. 2011) ...................................................................................................11

9
    *Blum v. Stenson*,
10    465 U.S. 886 (1984).................................................................................................................17

11  *Chalmers v. City of Los Angeles*,
     796 F.2d 1205 (9th Cir. 1986) .................................................................................................10
12

13  *Chess v. Volkswagen Grp. of Am., Inc.*,
     No. 17-CV-07287-HSG, 2022 WL 4133300 (N.D. Cal. Sept. 12, 2022)..........................17, 18

14  *Harris v. Marhoefer*,
15    24 F.3d 16 (9th Cir. 1994) .......................................................................................................20

16  *Hefler v. Wells Fargo & Co.*,
     No. 16-CV-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...........................................19
17

18  *Hensley v. Eckerhart*,
     461 U.S. 424 (1983).................................................................................................................14

19
    *In re Immune Response Sec. Litig.*,
20    497 F.Supp.2d 1166 (S.D. Cal. 2007)......................................................................................20

21  *Kang v. Wells Fargo Bank, N.A.*,
     No. 17-CV-06220-BLF, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ....................................18
22

23  *Missouri v. Jenkins*,
     491 U.S. 274 (1989).................................................................................................................18

24  *Prison Legal News v. Schwarzenegger*,
25    608 F.3d 446 (9th Cir. 2010) ...................................................................................................18

26  *Schwarz v. Sec'y of Health & Human Servs.*,
     73 F.3d 895 (9th Cir. 1995) .....................................................................................................14

27

28

iii

*Smith v. CMTA-IAM Pension Trust,*
    746 F.2d 587 (9th Cir. 1984) ............................................................. 10

*Thompson v. Gomez,*
    45 F.3d 1365 (9th Cir. 1995) ............................................................ 20

*United Steelworkers v. Phelps Dodge Corp.,*
    896 F.2d 403 (9th Cir. 1990) ............................................................ 17

*Van Gerwen v. Guarantee Mut. Life Co.,*
    214 F.3d 1041 (9th Cir. 2000) ...................................................... 10, 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
    No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. March 17, 2017) ................................. 19

*Welch v. Metropolitan Life Ins. Co.,*
    480 F.3d 942 (9th Cir. 2007) ............................................................ 10

*Wit v. United Behav. Health,*
    578 F.Supp.3d 1060 (N.D. Cal. 2022) ...................................................... 18

**Federal Statutes**

29 U.S.C.
    § 1132(g)(1) .......................................................................... 2, 10

# INTRODUCTION

On January 10, 2023, after nearly six years of litigation (making this the oldest case on the Court's docket) and just three weeks before the scheduled January 31, 2023 Pre-Trial Conference, the parties settled all nine plaintiffs' claims against defendants Microchip Technology, Inc. et al. ("Microchip") for a total of $851,853.67 plus statutory attorneys' fees and expenses in an amount to be determined by the Court.

To call this settlement an extraordinary success for plaintiffs would be an understatement. Each of the nine plaintiffs received 100% of the total value of his or her claim for unpaid ERISA severance payments *plus* pre-judgment interest of 4.69%, running from the date of each plaintiff's termination without cause by Microchip in the spring or summer of 2016. Put another way, not only were all nine plaintiffs made completely whole by this settlement, but they ended up recovering more than 135 cents on the dollar for each of their claims *without having to pay a penny in attorneys' fees themselves* – a truly remarkable result.[2]

This result would not have been possible without the exceptional litigation skills and unsurpassed commitment to justice of plaintiffs' litigation team, comprising attorneys from two law firms specializing in complex employment litigation (Altshuler Berzon LLP and McGuinn Hillsman & Palefsky) and ERISA specialist Bill Reilly from the Law Offices of William Reilly – a stellar team of advocates who allocated responsibility among themselves in accordance with their respective skills, experience, and specialized expertise. For almost seven years, dating back to plaintiffs' counsel's first communications with plaintiffs Robin Berman et al., these attorneys tirelessly and effectively worked to vindicate plaintiffs' statutory rights under ERISA, through the claims administration process, in this Court, in the Ninth Circuit, and again in this Court.

Based on the total number of hours devoted to these efforts, calculated using counsel's current 2023 rates, plaintiffs' lodestar is in excess of $1.7 million. On top of that, plaintiffs should be entitled to a multiplier of at least 1.3, given the extraordinary success they achieved, the contingent risk of non-success, and other relevant factors, for a total award of nearly $2.2 million plus expenses. For purpose of

---

[2] The federal post-judgment interest rate at the time of the first judgment in this action (later reversed by the Ninth Circuit) was 1.63%. The current rate, as of the date of filing, is 4.97%.

this fee petition, however, and in the hope of avoiding (or at least substantially limiting) the further delay, expense, and judicial burden of extended fees litigation, plaintiffs are seeking a total award for fees and expenses of just $1.5 million for their three law firms' nearly seven years of unpaid work leading to this extraordinary settlement, with no multiplier, with substantial billing judgment reductions, and with hourly rates at 2022 levels rather than current 2023 hourly rates. As plaintiffs have informed defendants Microchip et al., if further briefing on this fee application is required, plaintiffs will also request in conjunction with their reply brief an additional amount for the "fees on fees" incurred after February 23, 2023.

The parties' settlement agreement, attached as Exhibit A to the Declaration of Keith Ehrman (Ehrman Decl.), stipulates that plaintiffs' counsel are entitled to statutory fees and expenses under ERISA. Ehrman Decl., Ex. A ¶2 ("Defendants will not dispute, with respect to that motion, that Plaintiffs are entitled to reasonable attorneys' fees, costs, and expenses pursuant to ERISA …."). Consequently, the only question before the Court is the reasonable amount of those fees and expenses pursuant to 29 U.S.C. §1132(g)(1) ("In any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").

As the Court will recall, plaintiffs submitted a fee request in the fall of 2019 after initially prevailing on summary judgment, based on what were then 1,201.53 documented hours of effort. *See* Dkt. 122. Because Microchip had appealed this Court's ruling to the Ninth Circuit, the parties agreed to suspend briefing on that fee motion after Microchip filed its opposition brief. Most of the arguments in that opposition brief were meritless. *See infra* at 12-17. Nonetheless, plaintiffs' counsel have undertaken a complete review of their 2019 submission and, in a good-faith effort to resolve this dispute, have made additional reductions to eliminate any possible dispute over the reasonableness of the time expended. *See* Ehrman Decl. ¶¶54-61. Thus, plaintiffs' current fee request has reduced the original pre-November 8, 2019 time from 1,201.53 hours to 1,021.45 hours (a reduction of 180.8 hours), while adding 710.85 hours for counsel's successful litigation efforts for the time period from November 9, 2019, to February 23, 2023. The reasons for those pre-November 2019 reductions, and plaintiffs' responses to defendants' previous challenges to the pre-November 2019 time entries, are set forth in detail below, and are

explained and documented in the Ehrman Declaration ¶¶59-67 and in the consolidated time records spreadsheet attached as Exhibit B to that declaration. In total, plaintiffs now seek compensation for 1,732.30 hours of work over the past seven years, at 2022 hourly rates, with no multiplier. Although the resulting lodestar is $1,562,286 plus expenses, plaintiffs' requested award is just $1.5 million.

## BACKGROUND

### A. Plaintiffs' Counsel Devoted Substantial Time and Resources to this Case on a Pure Contingency Basis, Despite the Risks Involved.

Plaintiffs' counsel litigated this complex, nine-plaintiff ERISA case efficiently and effectively. Yet, largely as a result of defendants' unyielding and obstreperous litigation strategies, plaintiffs were forced to devote more than 2,000 hours to this case over the past seven years. Ehrman Decl. ¶59-61, 68-69, 87; Ehrman Decl. Ex. B. All of that time was reasonably and appropriately spent, although plaintiffs' counsel have reduced that time considerably in the exercise of billing judgment, for purposes of this fee application. *Id.* ¶¶87-88; Declaration of Michael Rubin (Rubin Decl.) ¶¶13, 19-21.

Before filing this lawsuit, plaintiffs' counsel diligently investigated the facts, including by interviewing the nine plaintiffs and other non-party witnesses and reviewing documents from plaintiffs and other former Atmel employees and executives. Ehrman Decl. ¶6. Based on that investigation, plaintiffs' counsel learned that, in the days immediately after Microchip's acquisition of Atmel on April 4, 2016, Microchip had begun terminating many of the former Atmel employees (including several of the plaintiffs) but had refused to pay them the substantial severance benefits that had been promised to them under the Atmel Severance Plan (which guaranteed severance to all covered employees who remained in their Atmel jobs through the date of any change-in-control merger if they were subsequently terminated without cause by the acquiring company). Ehrman Decl. ¶7; *see* Dkt. 95 at 2-3.

Instead of paying the agreed-upon severance to plaintiffs (when their need for economic relief was the greatest, having been fired without cause despite loyally continuing to work for Atmel until after the merger closed), Microchip wrongfully asserted that the Plan had "expired" in November 2015. Dkt. 95 at 4-5. Microchip's CEO Steve Sanghi made this decision several months *before* the merger close, but defendants deliberately did not inform plaintiffs of their plan to deny those guaranteed benefits until a series of post-merger meetings, *after* plaintiffs had complied with their part of the bargain by loyally

sticking by Atmel until the merger was completed. From the date Microchip fired each plaintiff without cause in 2016 until mid-January 2023, when this case settled, Microchip refused to pay plaintiffs any of the severance benefits it was required to pay them under the Atmel Plan. *See* Ehrman Decl. ¶¶7-13, 44-46.

In May 2016, five of the terminated plaintiffs filed administrative claims, as required to pursue an ERISA benefits claim. Dkt. 95 at 4-5.[3] All of them attached to their claims letters considerable evidentiary support justifying their entitlement to severance. *See, e.g.*, Dkt. 54 at 9:4-9; Dkt. 56 at 5-165. Plaintiffs' counsel had compiled this material as the factual and documentary evidence that would form the basis for the *Berman* lawsuit that plaintiffs would eventually file in this court. Ehrman Decl. ¶¶6-9.

During the claims process, Microchip began a pattern of bad-faith, delaying, and obstructionist conduct that would continue throughout this litigation. For example, on August 15, 2016, with ERISA's statutory 90-day period for responding to claims about to expire, Plan Administrator Carly Petrovic wrote to plaintiffs that "special circumstances" required an "additional" 90 days to respond to plaintiffs' claim – the circumstance being her supposed need "to gather all appropriate documentation." *See, e.g.*, Dkt. 54 at 9 n.7; Dkt. 56 at 26. In fact, Petrovic admitted at her later deposition that she never looked for, or at, *any* documents other than those submitted with plaintiffs' original claim letters. Dkt. 100 at 10 n.5; Ehrman Decl. ¶10. Petrovic also admitted that she had not conducted *any* investigation into the merits of plaintiffs' claims or their declarations, which established that, prior to the merger, the drafters of the Atmel Plan had made a "conclusive and binding" construction of that Plan that completely supported (and required Microchip to support) plaintiffs' construction. *Id.* Instead, Petrovic simply read plaintiffs' claim submissions and then made her "determination" – which plaintiffs learned through discovery years later was the position that Microchip's CEO had reached months *before* the merger closed and that Petrovic's supervisor, Lauren Carr, had communicated to Petrovic before she even began reviewing plaintiffs' claims. Dkt. 177 at 11-12.  Plaintiffs also learned during discovery that Petrovic's denial letters had been drafted by Microchip's counsel and had been sent to Microchip's CEO for review *before* being sent to Petrovic for issuance to plaintiffs. Dkt. 165 at 21.

---

[3] The other four *Berman* plaintiffs were terminated between May and July 2016, and thus filed their administrative claims slightly later. Dkt. 95 at 4-5.

In late November 2016, after waiting almost the full statutory maximum 180 days for claims where "special circumstances" exist, Microchip denied all nine claims on the purported ground that the Plan had expired the previous November. Dkt. 54 at 9:5-17; Dkt. 95 at 4-5; Ehrman Decl. ¶11.

In December 2016, plaintiffs again demanded that the Plan Administrator produce the documents that plaintiffs had originally requested in May 2016. *See* Dkt. 54 at 10 n.8. In January 2017, the Plan Administrator produced the purported "administrative file" (which consisted of essentially nothing but the plaintiffs' own claims submissions and the November claim denial letters), but again refused to produce numerous highly relevant documents that plaintiffs had requested. *Id.*

In January 2017, all claimants appealed the denials of their claims for ERISA severance pay. Dkt. 54 at 9:24-10:18. Their appeals reasserted their original arguments (which the Plan Administrator had ignored in her denial letters) and again fully documented the basis for their claims. *Id.*; Ehrman Decl. ¶13. Even though Microchip had appointed a *different* individual to review plaintiffs' appeals, Petrovic personally denied each of those appeals, using the same brief boilerplate language drafted by Microchip's counsel that she had used in denying plaintiffs' earlier claims. Dkt. 145 at 11-12; *see also* Dkt. 177 at 9-11. Once again, Petrovic ignored (and did not even address) plaintiffs' evidence and arguments, including the evidence establishing that Atmel's senior executives had made a binding and conclusive pre-merger interpretation of the Plan language that confirmed plaintiffs' entitlement to Plan benefits. Dkt. 145 at 11-12; Ehrman Decl. ¶13.

On April 4, 2017, after completing Microchip's administrative exhaustion process, plaintiffs filed this federal court lawsuit. Dkt. 1. Microchip immediately moved to dismiss all claims. Dkt. 9. On February 6, 2018, this Court issued an order denying Microchip's motion in substantial part, allowing the case to proceed on plaintiffs' principal claims. Dkt. 35; *see* Ehrman Decl. ¶14.[4]

After the Court held its initial Case Management Conference in December 2017, plaintiffs served initial disclosures and formal written discovery (interrogatories and requests for production). Ehrman Decl. ¶15. Microchip refused to produce many of the requested documents; refused to answer all of plaintiffs' interrogatories; refused to provide a privilege log; and tried to stop plaintiffs from contacting

---

[4] The Court dismissed with prejudice only plaintiffs' requests for certain types of relief that were duplicative of other types of relief sought. *See* Dkt. 35 at 25-26.

and noticing the deposition of a key witness (the former Atmel executive who had been the person mainly responsible for drafting and interpreting the Plan). *Id.* ¶16. Microchip's obstructionist conduct required plaintiffs to engage in various "meet and confer" efforts and then to file in May 2018 multiple discovery motions with Magistrate Judge Laporte. *Id.*; *see also* Dkts. 43, 46, 48, 50, 51. In June 2018, Magistrate Judge Laporte ruled in plaintiffs' favor on essentially every discovery issue, thereby permitting plaintiffs to conduct extensive discovery beyond the administrative record. Dkt. 53; *see* Ehrman Decl. ¶16.[5]

Microchip served interrogatories and document requests on all nine plaintiffs in July 2018. Ehrman Decl. ¶18. Each plaintiff fully complied with these discovery requests, providing complete interrogatory answers and producing all of his or her responsive documents in August 2018. *Id.*[6] Following that production, Microchip noticed and took the depositions of eight of the *Berman* plaintiffs in November 2018. *Id.* ¶22. (Microchip later took the depositions of the ninth plaintiff as well. *Id.* ¶38.) Plaintiffs took the depositions of Plan Administrator Petrovic, the two former Atmel executives who had primary responsibility for drafting the Plan and communicating its meaning to the employees, and Microchip's CEO and head of HR. *Id.* ¶¶22, 33, 38.[7]

On July 2, 2018, plaintiffs filed a motion for partial summary judgment on their claims for unpaid severance benefits and a determination as to liability on their breach of fiduciary duty claim. Dkt.

---

[5] These discovery issues affected both the *Berman* and *Schuman* cases (and indeed, Magistrate Judge Laporte's order includes both case captions), which is why the time spent by plaintiffs' counsel on these issues is listed as "joint" on the spreadsheet attached to the Ehrman declaration, i.e., only 50% of the time is allocated to the *Berman* case. Ehrman Decl. ¶16.  Plaintiffs subsequently had to file additional discovery motions with Magistrate Judge Laporte because, for example, defendants still refused to provide a complete privilege log. *See id.* ¶17; Dkt. 93, 94.

[6] In contrast to defendants' discovery conduct that required plaintiffs to engage in repeated "meet and confers" and resulted in multiple motions to the Magistrate Judge, Microchip did not need to seek court intervention to obtain the discovery it sought of plaintiffs. *See* Ehrman Decl. ¶¶18, 38, 71.

[7] Plaintiffs have allocated the time spent on plaintiffs' depositions of Microchip and Atmel witnesses jointly between the *Berman* and *Schuman* cases, because the testimony of these witnesses was relevant and useful to both cases. Ehrman Decl. ¶23. Time spent on the depositions of the nine *Berman* plaintiffs was allocated entirely to the *Berman* case, just as the time spent for defendants' depositions of the two named class action plaintiffs (Peter Schuman and William Coplin) will be allocated entirely to the *Schuman* case if the plaintiffs prevail in that case. *Id*

54.[8] Microchip disputed the Plan drafters' construction of their own Plan language and their explanation of its underlying purposes and asserted that more discovery was needed before the Court could properly determine the Plan's meaning. Dkt. 74 at 11-16; Ehrman Decl. ¶21.

On March 22, 2019, this Court granted plaintiffs' motion for partial summary judgment, ruling that plaintiffs were entitled to the severance benefits that Atmel had promised and that Microchip had breached its fiduciary duties in the course of denying their claims and appeals. Dkt. 95.[9] Shortly thereafter, this Court ordered the parties to appear at a Case Management Conference where it urged the parties to "achieve a timely resolution of this matter." Dkt. 97.

On April 19, 2019, at plaintiffs' urging, the parties agreed on the severance and COBRA amounts that plaintiffs would be entitled to receive under the Court's partial summary judgment order ($629,061.36), but plaintiffs could not obtain Microchip's agreement on any other issues that might end the litigation. Dkt. 96; Ehrman Decl. ¶27. As defendants wrote in the parties' Joint Statement, "because Defendants do not believe it will be possible to reach a settlement of this case while the *Schuman* case remains pending, Defendants believe a settlement conference at this juncture in the *Berman* case would be premature." Dkt. 96.

To avoid additional evidentiary hearings and to bring the litigation to an efficient conclusion, plaintiffs sought summary judgment on May 24, 2019 on the two remaining issues: the appropriate relief for plaintiffs' breach of fiduciary duty claim and pre-judgment interest (which was within the discretion of the Court, at a time when the federal post-judgment interest rate was a mere 2.39%.) Dkt. 99; Ehrman Decl. ¶28. The Court denied the motion due to the lack of individualized evidence (Dkt. 112), and

---

[8] This motion was particularly time-consuming. In addition to the complex legal issues involved, the factual record used to provide evidentiary support for the motion was voluminous, and citations to the evidentiary record were required for each of the nine plaintiffs. Ehrman Decl. ¶¶20, 75. Plaintiffs' supporting brief included approximately 280 separate citations to pages in the Administrative Record and other supporting evidence, and these citations collectively referred to thousands of different pages of evidence. In total, plaintiffs submitted over 8,000 pages of documents in support of their motion. *Id.*; *see* Dkts. 55-67.

[9] The Court held that "[t]he Plan Administrator's interpretation of the Atmel Plan was so plainly incorrect as to violate any potentially applicable standard of review, whether it be de novo, arbitrary and capricious, or unreasonable and not in good faith." Dkt. 95 at 9. The Court also found that "the Plan Administrator breached her duties when she misrepresented the terms of the Plan by denying Plaintiffs' claim for benefits." *Id.* at 13.

plaintiffs chose not to pursue further relief (to avoid time-consuming individual adjudications for each plaintiff), even though the Court had specifically found in favor of plaintiffs on their cause of action for breach of fiduciary duty. Dkt. 95 at 12-13; Dkt. 117; Ehrman Decl. ¶¶28, 29. To expedite final resolution, plaintiffs instead asked the Court to enter judgment for each plaintiff in the stipulated amount of their unpaid benefits, and asked for pre-judgment interest at whatever rate the Court felt was appropriate. Dkt. 117; Ehrman Decl. ¶29. On October 18, 2019, the Court entered judgment in the principal amount of $624,061.36, plus pre-judgment interest at 1.63% (the one year T-bill rate as of that week). Dkt. 119. The Court also set a briefing schedule for plaintiffs' motion for statutory attorneys' fees and expenses – although briefing on that motion was subsequently suspended, in light of the pendency of Microchip's appeal from the Court's judgment. *Id*.; Ehrman Decl. ¶¶29-32.

The parties then turned their attention to the Ninth Circuit appeal, which defendants had filed on November 15, 2019. Dkt. 121. After extensive briefing and argument, the Ninth Circuit on March 2, 2021, issued an unpublished Memorandum Disposition, which reversed the Court's March 2019 summary judgment ruling and remanded for further proceedings, concluding that certain Plan language was ambiguous and that defendants should be permitted to conduct additional discovery. Dkt. 133; Ehrman Decl. ¶¶34-35.

Following remand, the Court allowed defendants to take additional discovery, including the deposition of the ninth plaintiff and further interrogatories and requests for admission, and set a schedule for summary judgment cross-motions and a trial date of May 2, 2022. Dkts. 137, 140.  In July 2021, plaintiffs filed a motion for partial summary judgment, asking the Court to once again find that the plaintiffs were entitled to their full severance benefits and that defendants had breached their fiduciary duties. Dkts. 145-158. That motion for summary judgment included nearly 300 separate citations to the Administrative Record and to additional evidence obtained during discovery, and was supported by thousands of pages of evidentiary material. Ehrman Decl. ¶39. Defendants in turn filed a cross-motion, also with extensive record citations. Dkt. 163. While those motions were pending, Microchip filed yet another motion for partial summary judgment, this time directed at plaintiffs' claim for equitable relief, Dkt. 171, which plaintiffs successfully struck as an improper "second" summary judgment motion. Dkts. 172-173; *see* Ehrman Decl. ¶40.

On July 29, 2022, the Court issued an order denying both parties' 2021 cross-motions for summary judgment, concluding that there remained a "dispute of fact" regarding the interpretation of the Plan language. Dkt. 177. The Court stated that it would hold a bench trial and that the standard of review would be *de novo*, concluding that the Plan Administrator's decision to deny benefits would be given no deference for several reasons, including that: (1) Carly Petrovic had no authority to decide the appeals, *id.* at 9-11, and (2) the Plan gave full discretion to Atmel to make "conclusive and binding" interpretations and decisions regarding the Plan and its language prior to the merger but did not give the successor company (Microchip) such discretion after the merger, and "the benefits offered under the Plan would be illusory if the Company after the merger could simply reinterpret the Plan to deny benefits," *id.* at 4-9.  The Court also found that because defendants and the Plan Administrator had structural and personal conflicts of interest, even if the standard of review had been "abuse of discretion" the Court would have engaged in "more exacting scrutiny" of the administrator's decisions. *Id.* at 11-12.; Ehrman Decl. ¶42.The Court thus rejected defendants' principal defense – that an abuse-of-discretion standard applied and that it could never be an abuse of discretion to deny benefits under a contract that included an ambiguous coverage term.

Throughout the fall of 2022, plaintiffs' counsel engaged in preliminary trial preparation, including by preparing Stipulated Facts pursuant to the Court's trial requirements; selecting and preparing evidence from the Administrative Record and from discovery for use at trial; and arranging for testimony from several of Atmel's senior executives who had been involved in drafting the Severance Plan, as well as testimony from other potential witnesses. Ehrman Decl. ¶43. After extended negotiations between counsel, the parties reached a tentative settlement in December 2022, and executed their final agreement on January 10, 2023. *Id.* ¶44 & Ex. A.

The Settlement Agreement required defendants to pay each plaintiff one hundred percent of their severance and COBRA benefits under the Atmel Plan, plus pre-judgment interest at the rate of 4.69% compounded annually that would run from the date of each plaintiff's termination in 2016 through December 15, 2022. *Id.* ¶45 & Ex A. The total settlement amount to be paid to the nine plaintiffs was $851,853.67, comprising $629,061.36 in severance and COBRA benefits (the same amount the Court had awarded plaintiffs in its October 18, 2019 judgment after the parties corrected a clerical error) plus

interest of $222,792.31, which was substantially more in interest than the Court had awarded in its October 18, 2019 judgment (as the Court had used a pre-judgment interest rate of 1.63%, Dkt. 119). Ehrman Decl. ¶45. Defendants paid all plaintiffs in full in mid-January 2023. *Id* ¶46.

On December 27, 2022, plaintiffs submitted a seven-page, single-spaced fee demand letter to defendants, responding to each of the arguments defendants had asserted in response to plaintiffs' November 2019 fee application, accompanied by a consolidated spreadsheet of all time devoted to this case since the prior fee application. *Id.* ¶48. Defendants did not respond until February 7, 2023, but the parties' positions were far apart. Further attempts to negotiate the fees issues were unsuccessful, requiring the filing of this motion. *Id.* ¶52.

## ARGUMENT

### A.  Plaintiffs Are Entitled to an Award of Attorneys' Fees.

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1). Under Ninth Circuit precedent, "[t]his section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under §1132 to enforce his rights under his plan, should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotations omitted). This standard furthers ERISA's broad remedial purpose "to protect employee rights and to secure effective access to federal courts." *Id.* Defendants have stipulated that plaintiffs are entitled to statutory fees and expenses under Section 1132(g)(1). *See supra* at 2.

### B.  The Amount of Attorneys' Fees and Costs Sought Is Reasonable.

To determine the amount of attorneys' fees awarded under ERISA, courts use a "two-step hybrid lodestar/multiplier approach." *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945 (9th Cir. 2007). To establish the lodestar, courts multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000). In addition to setting the number of hours, the court must determine a reasonable hourly rate, "considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). The court may also adjust the lodestar using a multiplier

1   based on facts not subsumed in the initial lodestar calculation. *See Van Gerwen,* 214 F.3d at 1045; *In re*

2   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (multiplier factors include

3   the benefits obtained, whether the results achieved were exceptional, the complexity and novelty of the

4   issues, risks of litigation and non-payment, reasonableness of hours, and customary fees and rates for

5   similar cases). Here, although plaintiffs' counsel believe they would be entitled to a multiplier of at least

6   1.3, plaintiffs are not seeking a multiplier award. However, if the Court is inclined for any reason to

7   reduce plaintiffs' fee-and-expense award below the requested $1.5 million, plaintiffs request that the

8   Court award a multiplier for excellent results obtained, contingent risk of non-success, and the other

9   applicable factors, to bring the fee award back up to that amount.

10   **1. Plaintiffs' Counsel's Lodestar Hours Are Reasonable.**

11   The declarations filed in support of this motion establish that the hours plaintiffs' counsel

12   expended bringing this litigation to a successful conclusion were more than reasonable. Plaintiffs'

13   counsel have devoted more than 2,000 hours to pursuing plaintiffs' claims. Ehrman Decl. ¶¶59-61, 68-

14   69, 87 & Ex. B. As reflected above and in the accompanying declarations of counsel, particularly in the

15   "long-form" Ehrman declaration, this time was spent on many tasks that were critical to vindicating the

16   nine plaintiffs' right to severance benefits under the Atmel Plan, including: (1) conducting pre-filing

17   investigation, both legal and factual; (2) propounding and responding to written discovery, including

18   responding to separate requests for production of documents and interrogatories directed at each of the

19   plaintiffs, drafting initial disclosures, reviewing voluminous documents produced in discovery, and

20   engaging in discovery meet and confer efforts and discovery disputes; (3) taking five depositions and

21   defending the nine depositions that Microchip took of the plaintiffs before and after the Ninth Circuit

22   appeal; (4) preparing and successfully arguing an opposition to Microchip's motion to dismiss; (5)

23   preparing and successfully arguing plaintiffs' motion for summary judgment and other motions; (6) case

24   management, including preparing for case management conferences and drafting case management

25   statements; (7) briefing and arguing the Ninth Circuit appeal; (8) conducting post-remand discovery and

26   briefing cross-motions for summary judgment, (9) preparing for trial, and (10) communicating with the

27   nine plaintiffs. *Id.* ¶¶5-56, 70-79.

28

The time plaintiffs' counsel spent on those tasks was necessary to overcome the unyielding opposition of Microchip, which aggressively defended against plaintiffs' claims at every turn and required plaintiffs' counsel to expend many additional hours litigating this case. Microchip was represented throughout this case by at least a half-dozen attorneys from four different offices of the national law firm of Ogletree, Deakins, Nash, Smoak, Stewart, P.C. (as shown by the court filings in this case and *Schuman*). *See, e.g.,* Dkt. 36, 80, 86, 128; *Schuman* Dkt. 165; Ehrman Decl. ¶83. Microchip was also represented by defense attorneys at Wilson Sonsini, which represented Microchip during plaintiffs' administrative claims process. Ehrman Decl. ¶¶19, 24. Although defendants *never* had to move to compel any discovery from plaintiffs in more than six years of litigation, *id.* ¶¶18, 38, 71, plaintiffs were repeatedly required to seek discovery orders from Magistrate Judge Laporte to obtain defendants' compliance with its discovery obligations, and only once failed to obtain the discovery plaintiffs had sought to compel, *id.* ¶¶16, 17, 72.

In preparing this fee application, plaintiffs' counsel exercised billing judgment as they would for a fee-paying client (and then some), reducing hours to eliminate redundancies, inefficiencies, and other time not appropriately charged to a paying client. *See, e.g.*, *id.* ¶¶87-88; Rubin Decl. ¶¶13, 19-21; Reilly Decl. ¶¶6-7. In total, plaintiffs have eliminated **more than 250 hours** from their time records in the exercise of such billing judgment. Ehrman Decl. ¶¶59, 60, 61, 88. Given the numerous tasks required and results obtained, the hours of work performed by plaintiffs' counsel (which have been reduced in the exercise of billing judgment) are more than reasonable.

In response to plaintiffs' November 2019 fee application, Microchip raised several challenges to plaintiffs' requested hours. Dkt. 128. Because plaintiffs did not have the opportunity to file a reply brief in support of that request, *see* Dkt. 129, and because Microchip has suggested that it intends to raise those same challenges to the current request, we briefly address each such challenge below.

First, defendants objected to plaintiffs seeking fees for any time spent on what defendants characterized as the "ERISA administrative claim process." Defendants essentially objected to every hour of time spent by plaintiffs' counsel before filing this lawsuit in April 2017. But of course, much of that time was spent in conventional (and ultimately, highly effective) investigation into the facts and law, and only a portion was directly and exclusively devoted to the actual "administrative claim

12

process." Nonetheless, for purposes of the present fee application and in the further exercise of billing judgment, plaintiffs have deleted **102 hours** from the time requested in our prior application for work performed in 2016 and early 2017, including time spent preparing and submitting plaintiffs' administrative claims and appeals, which required drafting declarations and compiling the documentary evidence used for the claim letters and appeals (all of which were extensively relied upon and cited in plaintiff's summary judgment motions),  researching the administrative claims process, and communicating with defendants' counsel and the Plan Administrator regarding the administrative claim process. Ehrman Decl. ¶¶59, 60.

Second, defendants contended that some of the hours listed on plaintiffs' consolidated spreadsheet were either erroneous, duplicate, or more appropriately allocated in whole or in part to the *Schuman* litigation. Plaintiffs' counsel have carefully reviewed every time entry from the beginning of the investigative process to the present (over 2,600 time entries) to eliminate all possible mistaken, duplicate, or misallocated entries, while paying special (but not exclusive) attention to the entries defendants had flagged. In a few instances, defendants were correct. In most, they were not. Plaintiffs are fully satisfied that each entry in the consolidated time sheets attached to the Ehrman Declaration is properly and accurately billed to *Berman* (or 50% to *Berman*, for the "joint" entries). In the course of that review, plaintiffs' counsel chose to exercise even greater billing judgment than had been exercised before, including eliminating time that could arguably be considered "start up" time for attorneys, work by multiple attorneys on the same issue, etc. As a result of that process, plaintiffs eliminated an additional **70 hours** from the original consolidated spreadsheet, as well as eliminating many additional hours recorded *after* November 2019. *Id.* ¶¶59, 61.

Third, defendants objected to the **seven** hours plaintiffs' counsel spent in the summer of 2018 pertaining to a "Motion to Strike" that, as defendant noted, was never filed. The brief amount of time spent on that motion was fully compensable, as plaintiffs had researched and drafted that motion to support the position that the Court should strike certain inadmissible evidence offered by defendants in connection with defendants' Opposition to Plaintiffs' Motion for Summary Judgment. After completing a preliminary draft of that motion, plaintiffs decided it would be more efficient to present those arguments in the body of the Reply Brief rather than in a stand-alone motion to strike, which would have

1   required additional rounds of briefing. Dkt. 76 at 4. The time spent researching and drafting the "motion

2   to strike" was entirely proper and clearly related to our successful prosecution of this action. Ehrman

3   Decl. ¶62.

4        Fourth, defendants objected to the time spent by plaintiffs' counsel obtaining proper privilege

5   logs from defendants (and from the Wilson Sonsini attorneys) and for counsel's efforts to obtain an *in*

6   *camera* review of a sampling of 12 of the 111 disputed documents on these privilege logs to determine

7   whether they should have been produced under the "fiduciary exception." Ehrman Decl. ¶¶25, 63.

8   Defendants initially refused to provide *any* privilege logs. Then, they failed to provide complete

9   privilege logs. That obstructionism required plaintiffs to file multiple motions with Magistrate Judge

10  Laporte to compel defendants to produce a proper privilege log. *Id.*; Dkts. 43, 53, 93, 94. The privilege

11  logs that defendants and Wilson Sonsini finally produced still had many deficiencies, which required

12  several meet-and-confer discussions to address. Ehrman Decl. ¶¶24, 63. Eventually, defendants and

13  Wilson Sonsini provided revised privileged logs in 2019 and produced additional documents that should

14  not have been withheld in the first place. *Id.* Although it also appeared likely that many documents on

15  the privilege log should have been produced under the "fiduciary exception" doctrine, there was no way

16  to evaluate this without examining the individual documents one by one. Rather than having Magistrate

17  Judge Laporte undertake the laborious task of reviewing more than 100 suspect documents, the parties

18  and Wilson Sonsini agreed to have her review *in camera* a small "sample" set of 12 documents from the

19  privilege log. Ehrman Decl. ¶25; Dkts. 107-110. After the parties submitted their joint letter brief

20  concerning the "fiduciary exception," Magistrate Judge LaPorte retired and Magistrate Judge Hixson

21  succeeded her. After Magistrate Judge Hixson reviewed the 12 "sample" documents, he concluded that

22  the fiduciary exception did not apply to them, although he noted that the documents did not entirely fall

23  at either end of the spectrum. Dkt. 114. The roughly two dozen hours that plaintiffs spent on the

24  "motion" for *in camera* review were reasonably and appropriately spent under the governing *Hensley*

25  "relatedness" standard. Ehrman Decl. ¶63; *see Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *Schwarz*

26  *v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995).

27        Fifth, defendants objected to the time plaintiffs spent in 2019 litigating issues concerning the

28  right under ERISA to seek pre-judgment interest and an equitable surcharge award after the Court had

14

granted plaintiffs' motion for partial summary judgment in March 2019. As the Court will recall, it had granted plaintiffs' motion on plaintiffs' claim for benefits *and* plaintiffs' claim for breach of fiduciary duty. Dkt. 95. Plaintiffs were therefore entitled under ERISA to seek pre-judgment interest on their benefits award and an equitable surcharge award as a remedy for defendants' breach of fiduciary duty. As plaintiffs pointed out (and as the Court agreed), ERISA vests trial judges with discretion to award pre-judgment interest at a rate appropriate to the circumstances, including by awarding an interest rate higher than the default statutory rate (especially where, as was the case at the time, the statutory rate was extremely low). Dkt. 100 at 6-13; Dkt. 112 at 5-6. Plaintiffs could have prolonged this litigation (and significantly increased the attorney fees sought) by pursuing nine individual mini-trials regarding interest and equitable surcharge (which would have required detailed presentation of evidence concerning each plaintiffs' additional damages, including their investment strategies and results). In an effort to minimize litigation costs and demands – on the parties as well as the Court – plaintiffs decided instead to bring a single, narrowly targeted summary judgment motion, based on undisputed facts, to request pre-judgment interest at a rate higher than the default rate for all nine plaintiffs, either as pre-judgment interest or as an equitable surcharge remedy, either of which would have been permissible under ERISA case law. Ehrman Decl. ¶28. The Court eventually denied the motion on the ground that it required individualized plaintiff-by-plaintiff evidence of additional damages. Dkt. 112. That is, the Court concluded that before it could increase the pre-judgment interest rate and award the type of equitable surcharge sought, it would need concrete and specific individual evidence of each plaintiff's harm. *Id.* While plaintiffs could have responded by presenting such evidence, again they chose to minimize the costs and burdens of litigation by not pursuing nine separate individual mini-trials. Rather, plaintiffs decided to ask the Court simply to enter judgment and award plaintiffs whatever interest rate the Court felt was appropriate under the circumstances. Ehrman Decl. ¶¶29, 64. Plaintiffs' decision not to pursue nine mini-trials thus *saved* the parties and the Court substantial time and expense. *Id.* There is no valid basis for reducing plaintiffs' hours on this issue. And of course, in the settlement, plaintiffs have now obtained a far higher rate of annual interest (4.69%) than the Court awarded when it entered judgment for plaintiffs in October 2019 (1.63%). Dkt. 119; Ehrman Decl. ¶¶44, 45 & Ex. A.

Sixth, defendants objected that plaintiffs spent "too much time" compiling and citing the Administrative Record when preparing plaintiffs' 2018 summary judgment motion. Plaintiffs' counsel have reviewed their time records to reassess this objection and cannot identify any meaningful amount of time in 2018 spent "compiling" the Administrative Record. While counsel did spend some time identifying, compiling, and preparing the documentary support required for the 280 evidentiary citations included in plaintiffs' summary judgment papers, Dkt. 54, that effort was completely appropriate. The documentary support for that motion was culled from more than 10,000 pages of documents produced in this action and attached more than 8,000 pages of evidentiary support to plaintiffs' successful 2018 summary judgment motion. Dkts. 54-67. None of that was "excess" time and there is no valid basis for reducing any of those hours. *See* Ehrman Decl. ¶65.

Seventh, defendants broadly objected to every time entry that involved any reference to "discovery" on the spurious ground that under plaintiffs' plain-meaning construction of the Atmel Plan, no discovery could possibly be relevant to this case. That assertion was wrong and illogical at the time, and it is even more clearly wrong now. Even though plaintiffs sought to prevail based on the Administrative Record alone, plaintiffs' counsel acted reasonably in also preparing for trial and summary judgment based on defendants' theory of the case. Besides, most of the discovery in this case was initiated by defendants, not plaintiffs, because defendants took nine depositions and propounded multiple sets of interrogatories, a document request, and a set of requests for admission to each plaintiff. Ehrman Decl. ¶66. Moreover, both parties used discovery excerpts in their 2018 and 2021 summary judgment motions, including deposition excerpts, interrogatory answers, and documents produced during discovery that were not part of the Administrative Record. *Id.* Indeed, the Ninth Circuit reversed this Court's 2019 summary judgment ruling in part on the ground that the parties should take even *more* discovery, Dkt. 133, and this Court itself later ruled that a trial would be required to hear evidence and witnesses outside the Administrative Record, Dkt. 177 at 13-16; Dkt. 179. The only part of the discovery process that was one-sided were the motions to compel, each of which plaintiffs filed and each of which was successful (except for Magistrate Judge Hixson's final ruling about the fiduciary exception) because of defendants' persistent pattern of not complying with timely, proper, and entirely reasonable discovery requests. *See* Ehrman Decl. ¶66.

Early in this litigation, defendants tried to block plaintiffs' discovery requests by making the same argument: that plaintiffs should not be entitled to any discovery outside the Administrative Record. Dkts. 43, 46, 51, 93. Magistrate Judge Laporte disagreed, ruling in favor of plaintiffs on every discovery motion, and holding that plaintiffs were permitted to take full discovery in this action. Dkts. 53, 94; Ehrman Decl. ¶67. The law is clear, moreover, that plaintiffs in an ERISA case always have the right to take discovery outside the Administrative Record pertaining to issues such as breach of fiduciary duty and conflict of interest, both of which were applicable here. Dkt. 43 at 5-6. In sum, there is no basis for plaintiffs to reduce their hours for the time they spent on discovery matters.

### 2. Plaintiffs' Counsel's Lodestar Rates are Reasonable.

The lodestar should be calculated using hourly rates that are "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). It is well established that "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

As this Court has recently explained:

> "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*. (citation omitted). And typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990). "[O]ther evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Off. of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

*Chess v. Volkswagen Grp. of Am., Inc*., No. 17-CV-07287-HSG, 2022 WL 4133300, at *8 (N.D. Cal. Sept. 12, 2022); *see also In re Aqua Metals, Inc. Sec. Lit.*, No. 17-CV-07142-HSG, 2022 WL 612804, at *8 (N.D. Cal. Mar. 2, 2022). In this case, plaintiffs' requested rates are fully supported by the declarations of plaintiffs' counsel Michael Rubin, Keith Ehrman, and William Reilly; by the declaration of frequently cited attorneys' fees expert Richard Pearl, the author of California's leading treatise on statutory attorneys' fees; and by the declaration of ERISA practitioner Daniel Feinberg. The rates

17

requested by Altshuler Berzon LLP are the rates the firm actually charged to, and were paid by, commercial clients paying on an hourly basis in 2022. Rubin Decl. ¶¶23, 25-26.

Courts typically apply each attorneys' *current* rate for all hours of work regardless of when performed to account for the delay in payment resulting from the years it took to litigate the case. *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453-54 (9th Cir. 2010). Plaintiffs are thus entitled to be compensated at counsel's current 2023 rates, because this case settled in 2023 and the fees issues are being litigated in 2023. In general, law firms in the Bay Area and nationwide increased their hourly rates between 9-10% from 2022 to 2023, to reflect changed market conditions and the unusually high inflation rate in 2022. Rubin Decl. ¶¶23-24; Declaration of Richard Pearl (Pearl Decl.) ¶¶9, 18 & Ex. B; Declaration of Daniel Feinberg (Feinberg Decl.) ¶9. However, to minimize the need for extended fee litigation and in the interest of fairness, plaintiffs' fee request is based on their older 2022 hourly rates – which effectively reduced plaintiffs' actual current lodestar by a substantial percentage. Rubin Decl. ¶¶23, 26.

Plaintiffs' counsel's experience, reputation, and ability – detailed in the accompanying declarations – fully justify the requested hourly rates. Ehrman Decl. ¶¶1-4, 80-82; Rubin Decl. ¶¶3-12; Reilly Decl. ¶¶2-4. These rates are commensurate with those prevailing for attorneys with comparable skill and experience litigating complex employment and ERISA actions. Ehrman Decl. ¶86; Rubin Decl. ¶¶23-24; Reilly Decl. ¶10; Pearl Decl. ¶¶9, 16; Feinberg Decl. ¶17. Moreover, those rates, or their historical equivalents, have been paid to plaintiffs' counsel by paying clients, and have repeatedly been approved by other courts. *See, e.g.,* Ehrman Decl. ¶86 (attorney Palefsky charged and was paid at an hourly rate of $1,000 in 2017 and 2019); Rubin Decl. ¶¶23, 25-26 (attesting that these are the rates charged by his firm to commercial clients and listing recent cases in which courts have approved counsel's current commercial market rates); *see also Kang v. Wells Fargo Bank, N.A.*, No. 17-CV-06220-BLF, 2021 WL 5826230, at *17 (N.D. Cal. Dec. 8, 2021) (approving Altshuler Berzon LLP 2021 rates); *Wit v. United Behav. Health*, 578 F.Supp.3d 1060, 1075, 1078-80 (N.D. Cal. 2022) (approving fees in ERISA case based on 2020 rates for partners with more than 24 years' experience ranging from $1,040 to $1,145 per hour); *Chess*, 2022 WL 4133300, at *9 (approving rates "rang[ing] from $1,100 for partners with over 30 years of experience to $550-800 for associates with multiple years of experience,"

and citing *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, at *5 (N.D. Cal. June 22, 2020) (approving hourly rates of $950 to $1,025 for partners, $450 to $900 for other attorneys, and $225 to $275 for legal assistants) and *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig*., No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. March 17, 2017) (approving 2017 rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Hefler v. Wells Fargo & Co*., No. 16-CV-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving 2018 rates ranging from $650 to $1,250 for partners or senior counsel, and $400 to $650 for associates). Those rates are also fully supported by the expert declaration of Richard Pearl at ¶9 and by the declaration of Daniel Feinberg at ¶17. Those rates are also considerably *lower than* counsel's current 2023 rates. *See* Pearl Decl. ¶9 & Ex. B (attaching survey results showing that commercial firms that submitted 2023 hour rates to courts in early January reported an increase in top partner billing rates of nearly 10% on average and top associate rates of 9% from 2022 rates); Rubin Decl. ¶23.

Based on the reduced number of hours claimed by plaintiffs (as stated above) and the reduced 2022 (rather than 2023) rates requested, plaintiffs' counsel's lodestar (including the "fees on fees" time addressed *infra* at 20-21) is $1,562,286, calculated as follows:

| Attorney | Year | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Michael Rubin | 1977 | $1,225 | 354.80 | $434,630 |
| Cliff Palefsky | 1977 | $1,100 | 165.12 | $181,632 |
| Keith Ehrman | 1981 | $800 | 596.10 | $476,880 |
| William Reilly | 1994 | $900 | 258.88 | $232,992 |
| Ravi Rajendra | 2008 | $840 | 11.75 | $9,870 |
| Matthew Murray | 2009 | $925 | 70 | $64,750 |
| Connie Chan | 2010 | $810 | 16.20 | $13,122 |
| Andrew Kushner | 2015 | $675 | 188.20 | $127,035 |
| Altshuler Berzon Paralegals (including Law Clerks) | N/A | $300 | 71.25 | $21,375 |

## C. Plaintiffs' Counsel Are Entitled to Recover Their Reasonable Litigation Costs and Expenses.

Plaintiffs' counsel are also entitled to recover the $11,653.82 in litigation expenses they reasonably incurred (although that amount is included within the requested $1.5 million total, *see supra*

at 2-3). *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys should recover reasonable out of pocket costs of the type ordinarily billed to paying clients); *Aqua Metals*, 2022 WL 612804, at *9. The expenses for which plaintiffs' counsel seek reimbursement are detailed in the supporting declarations of counsel and are again allocated as between 100% of the *Berman* expenses and 50% of the joint expenses. Ehrman Decl. ¶90; Rubin Decl. ¶27; Reilly Decl. ¶11. As set forth therein, all of these costs were necessary to the prosecution of this litigation and were the sort of expenses normally billed to paying clients. Accordingly, they are fully reimbursable. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177-78 (S.D. Cal. 2007).

**D.  Plaintiffs' Counsel Are Entitled to Recover their Fees on Fees.**

Under ERISA, as under most federal and state fee-shifting statutes, prevailing plaintiffs are also entitled to recover from defendants their "fees on fees," the fees and expenses reasonably incurred in litigating the parties' dispute over fee eligibility and what constitutes a reasonable fee. *Thompson v. Gomez*, 45 F.3d 1365, 1367 (9th Cir. 1995); *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 963 F.Supp.2d 950, 981-82 (N.D. Cal. 2013).

In this case, despite good-faith efforts by plaintiffs' counsel, the parties were not able to negotiate a mutually acceptable fee amount, necessitating this filing. In plaintiffs' first fee application in 2019, which provided the starting point for the present motion, plaintiffs' counsel devoted 59 hours to preparing the motion and supporting documentation, analyzing defendants' opposition, outlining their reply, and preparing the stipulation to hold further fee matters in abeyance pending the Ninth Circuit's decision. Plaintiffs' counsel have devoted considerable additional time since November 2022 to analyzing fees-related issues, responding to defendants' previous objections (including by reviewing more than 2,600 time entries), preparing a seven-page, single-spaced demand letter and detailed spreadsheet, Ehrman Decl. Ex. B, attempting to negotiate a fees resolution with defendants, and preparing this motion. In the exercise of billing judgment, and because of efficiencies obtained by briefing some of the same issues twice, plaintiffs have reduced the total number of fees-on-fees hours (including from the first filing) by dozens of hours, leaving a new total of 93.2 fees-on-fees hours up through February 23, 2023. Ehrman Decl. ¶69. Plaintiffs are also offering defendants one more

opportunity to settle; and if they do not, plaintiffs will include the additional fees-on-fees hours incurred since February 23 along with the reply brief and declarations.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' counsel respectfully request an award of $1.5 million in statutory attorneys' fees and expenses, plus such additional fees on fees as may be incurred after February 23, 2023.

Dated: March 2, 2023                    Respectfully submitted,

                                        **ALTSHULER BERZON LLP**
                                        MICHAEL RUBIN
                                        MATTHEW MURRAY

                                        **MCGUINN, HILLSMAN & PALEFSKY**
                                        CLIFF PALEFSKY
                                        KEITH EHRMAN

                                        **LAW OFFICE OF WILLIAM REILLY**
                                        WILLIAM REILLY

                            By:      */s/Michael Rubin*
                                        Michael Rubin

                                        *Attorneys for Plaintiffs*

21